**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
Telephone: (973) 596-4821
Facsimile: (973) 639-6219
E-mail: Pduffy@gibbonslaw.com
David N. Crapo, Esq.
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com

Special Counsel for the Plaintiffs, the Official Committee of
Unsecured Creditors of the Bankruptcy Estate of
The Great Atlantic & Pacific Tea Company, Inc., *et al*., and
The Great Atlantic & Pacific Tea Company, Inc., *et al*.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al*.,[1] | Case No. 15-23007 (RDD) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: 2008 Broadway, Inc. (0986); The Great Atlantic & Pacific Tea Company, Inc. (0974); A&P Live Better, LLC (0799); A&P Real Property, LLC (0973); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Borman's, Inc. (9761); Delaware County Dairies, Inc. (7090); Food Basics, Inc. (1210); Kwik Save Inc. (8636); McLean Avenue Plaza Corp. (5227); Montvale Holdings, Inc. (6664); Montvale-Para Holdings, Inc. (2947); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge LLC (5965); Shopwell, Inc.(3304); Super Fresh Food Markets, Inc. (2491); The Old Wine Emporium of Westport, Inc. (0724); Tradewell Foods of Conn., Inc. (5748); and Waldbaum, Inc. (8599). The international subsidiaries of The Great Atlantic & Pacific Tea Company, Inc. are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 19 Spear Road, Suite 310, Ramsey, New Jersey 07446.

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, on behalf of the
bankruptcy estate of THE GREAT ATLANTIC &
PACIFIC TEA COMPANY, INC., *et al*., and THE
GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC. *et al*.

          Plaintiffs,

       v.

PEPSICO, INC; BOTTLING GROUP, LLC (d/b/a
PEPSI BEVERAGES COMPANY and f/d/b/a
THE PEPSI BOTTLING GROUP); FRITO-LAY
NORTH AMERICA, INC.; PEPSI-COLA
METROPOLITAN BOTTLING COMPANY,
INC.; PEPSI-COLA HASBROUCK HEIGHTS;
PEPSI-COLA BOTTLING COMPANY;
QUAKER SALES AND DISTRIBUTION, INC.;
MULLER QUAKER DAIRY, LLC; STACY'S
PITA CHIP COMPANY, INC.; PEPSI
BOTTLING GROUP, NJ; PEPSI USA; and
PEPSI-COLA BOTTLING PENNSAUK,

         Defendants.

Adv. Proc. No. 18-_____ (RDD)

## ADVERSARY COMPLAINT

Plaintiffs The Official Committee of Unsecured Creditors, on behalf of the bankruptcy

estate of The Great Atlantic & Pacific Tea Company, Inc. and its affiliated debtors, and The

Great Atlantic & Pacific Tea Company, Inc. and its affiliated debtors   (collectively, "GAPT" or

"Debtors"),   (the Committee   and GAPT being, hereafter, collectively, "Plaintiffs"), by their

undersigned attorneys, hereby bring the following Complaint against defendants Pepsico, Inc.

("PepsiCo"); Frito-Lay North America, Inc. ("Frito-Lay"); Bottling Group, LLC (d/b/a Pepsi

Beverages Company and f/d/b/a The Pepsi Bottling Group) ("Bottling Group"); Quaker Sales

and  Distribution,  Inc.  ("Quaker/Tropicana/Gatorade");  Muller  Quaker  Dairy,  LLC  ("Muller

2

Quaker")' Pepsi-Cola Metropolitan Bottling Company, Inc. ("Pepsi Metro"); Stacy's Pita Chip

Company, Inc. ("Stacy's"), Pepsi Bottling Group, NJ ("Pepsi Group"), Pepsi USA, Pepsi-Cola

Hasbrouck Heights ("Pepsi Hasbrouck"); Pepsi-Cola Bottling Company ("Pepsi Bottling"); and

Pepsi-Cola Bottling Pennsauk ("Pepsi Pennsauk") (collectively, "Defendants"), and avers as

follows:

## PRELIMINARY STATEMENT

1.      GAPT has been a venerable supermarket grocery store chain in the United States,

with stores located throughout much of the United States, including in the States of New York and

New Jersey.  By April of 2015, the Debtors were facing substantial financial distress.    That

distress gave way to bankruptcy filings by the Debtors.

2.      As their bankruptcy filings approached the Debtors continued operations.  They

continued to purchase goods from Defendants PepsiCo, Bottling Group, Frito-Lay, Pepsi Metro,

Pepsi Hasbrouck, Pepsi Bottling and Pepsi Pennsauk (collectively, "Preference Defendants")—as

they had done in the past.  Apparently sensing the financial distress in which the Debtors found

themselves, however, and contrary to the policies underlying the Bankruptcy Code, the Preference

Defendants pressed for quicker and quicker payment for goods by GAPT, tightening credit terms at

least twice during the run-up to the GAPT bankruptcy filings.  The Preference Defendants' tactics

worked; they received quicker, indeed preferential, payments from GAPT.  By this Adversary

Proceeding, the Committee now seeks to recover those preferential payments on behalf of the

GAPT bankruptcy estate.

3.      For many years, GAPT participated in promotions conducted by Defendants

PepsiCo; Pepsi USA; Bottling Group, Frito-Lay, Quaker/Tropicana/Gatorade, Pepsi Metro,

2600722.1   032596-97802

Stacy's, Pepsi Hasbrouck, Pepsi Bottling; Pepsi Group and Muller Quaker (collectively, "Promotion Defendants"). Those promotions continued during the run-up to the GAPT bankruptcy filing and after the filing until the last of the GAPT stores were closed. Notwithstanding continued participation in those Promotions even after the bankruptcy filing and the commencement of a post-filing store-closing process, the Promotion Defendants have failed to pay GAPT the sum of $7,416,804.92 (less any offsets or credits to which they show themselves entitled) they owe with respect to Promotions. By this adversary proceeding, GAPT now also seeks to recover the payments to which its participation in the Promotions entitles it.

## PARTIES

4.      Plaintiff The Great Atlantic & Pacific Tea Company, Inc. is a Maryland corporation with its principal offices located at 19 Spear Road, Suite 310, Ramsey, New Jersey 07446.

5.      On July 24, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors ("Committee"), pursuant to § 1102 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.) ("Bankruptcy Code"). The Committee consists of (1) 1199SEIU Health Care Employees Pension Fund, (ii) Basser-Kaufman, Inc. (iii) C&S Wholesale Grocers, Inc., (iv) CBA Industries, Inc., (v) McKesson Corporation, (vi) Pension Benefit Guaranty Corporation, and (vii) United Food and Commercial Workers International Union.

6.      Pursuant to its Order (A) Approving Global Settlement Agreement and (B) Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 105 and 363(c)(2) (ECF No. 2868) ("Settlement Order"), the Court granted authority for the Committee to prosecute

2600722.1   032596-97802

avoidance actions on behalf of the Debtors' estate, with settlement authority to be determined by the Committee, Debtors and Lenders (collectively, "Review Parties").  Settlement Order, at § 5.[2]

7.      Defendant PepsiCo is a corporation organized and existing under the laws of the State of North Carolina with a principal place of business at 700 Anderson Hill Road in Purchase New York.

8.      On information and belief, Defendant Pepsi USA has a principal place of business at 700 Anderson Hill Road in Purchase New York and is either a division or operating unit of Defendant PepsiCo or is a trade name under which Defendant PepsiCo operates.

9.      Defendant Bottling Group is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 1 Pepsi Way in Somers, NY.

10.     Defendant Quaker/Tropicana/Gatorade is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 555 West Monroe Street in Chicago, Illinois.

11.     Defendant Muller Quaker is or was a joint venture between Defendant Pepsico and Theo Muller Group that had a principal place of business at 5140 Ag Park Drive West, Batavia, New York.  On information and belief, Muller Quaker was dissolved in December of 2015.

12.     On information and belief, Defendant Stacy's Pita Chip Co., Inc. ("Stacy's) is a corporation organized and existing under the Laws of the Commonwealth of Massachusetts with a principal place of business at 663 North Street in Randolph, Massachusetts.

---

[2] Terms defined herein shall have the meaning ascribed to them in the Global Settlement Agreement.

2600722.1   032596-97802

13.     Defendant Frito-Lay is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 77 Legacy Drive in Plano, Texas.

14.     On information and belief, Defendant Pepsi Metro is either a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 1 Pepsi Way, Somers, New York, or, alternatively, on information and belief, a division or operating unit of either Defendant PepsiCo or Defendant Bottling Group, with a principal place of business at 700 Anderson Hill road in Purchase New York.

15.     On information and belief, Defendant Pepsi Hasbrouck is a division or operating location of either Defendant PepsiCo, Defendant Bottling Group or Defendant Pepsi Metro. Defendant Pepsi Hasbrouck has a principal place of business located at 77 Anderson Hill Road in Purchase, New York.

16.     On information and belief, Defendant Pepsi Bottling is a division or operating location of either Defendant PepsiCo, Defendant Bottling Group or Defendant Pepsi Metro. Defendant Pepsi Bottling has a principal place of business located at 77 Anderson Hill Road in Purchase, New York and operates a place of business at 15 Melanie Lane in East Hanover, New Jersey.

17.     On information and belief Defendant Pepsi Group is a division or operating location of either Defendant PepsiCo, Defendant Bottling Group or Defendant Pepsi Metro.  Also on information and belief, Defendant Pepsi Group has a principal place of business located at 77 Anderson Hill Road in Purchase, New York and operates a place of business at 15 Melanie Lane in East Hanover, New Jersey.

6

18.     On information and belief, Defendant Pepsi Pennsauk is a division or operating location of either Defendant PepsiCo, Defendant Bottling Group or Defendant Pepsi Metro. On information and belief, Defendant Pepsi Pennsauk has a principal place of business located 8275 US Route 130 in Pennsauken, New Jersey and another place of business at 77 Anderson Hill Road in Purchase, New York.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

20.     As to the First through Tenth Causes of Action and the Forty-First Cause of Action set forth below, this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

21.     As to the Eleventh through Fortieth Causes of Action set forth below, this adversary proceeding is a core proceeding at least as to claims arising from post-petition Promotions.

22.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

23.     As to the First through Tenth Causes of Action set forth below, the statutory predicates for the relief requested herein are sections 547 and 550 of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*) ("Bankruptcy Code").

24.     As to the Eleventh through Forty-First Causes of Action set forth below, GAPT requests relief under the common law of express and implied contract, unjust enrichment and promissory estoppel.

25.     This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), sections 547 and 550 of the Bankruptcy

2600722.1   032596-97802

Code, and the common law of express and implied contract, unjust enrichment and promissory estoppel.

**FACTS**

A.    **Case Background.**

26.    On July 19, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

27.    The Debtors' Chapter 11 Cases are jointly administered under Case No. 15-23007 (RDD).

B.    **Facts Generally Relevant to the Preference Counts of this Complaint**

28.    GAPT is one of the nation's oldest retailers.  GAPT's primary retail operations consisted of supermarkets operated under a variety of trade names, or "banners" including A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, The Food Emporium, Best Cellars and A&P Liquors.

29.    During the ninety days immediately preceding the Petition Date ("Preference Period"), GAPT  made payments to the Preference Defendants for goods and/or services previously provided to the Debtors pursuant to invoices or statements submitted by the Preference Defendants to GAPT (collectively, "Transfers").

30.    The Transfers were made to or for the benefit of the Preference Defendants in at least the amounts set forth below:

8

| Entity | Preference Payments |
| --- | --- |
| Frito Lay | $13,376,141 |
| Pepsi Hasbrouck | $4,930,368 |
| Pepsi Metro | $911,738 |
| Pepsi Bottling | $103,920 |
| Pepsi Pennsauk | $30,303 |
| **TOTAL:** | **$19,352,470** |

31.     The aggregate amount of the Transfers is not less than $19,352,470, and the Preference Defendants, subject to any defenses, offsets or credits to which the Preference Defendants show themselves entitled.

32.     The Debtors making the Transfers were insolvent at the time each of the Transfers was made.

33.     As of the Petition Date, a liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code would not have generated sufficient proceeds to satisfy the secured claims against the Debtors.  Consequently, receipt of the Transfers allowed the Preference Defendants to receive a distribution greater than they would have received pursuant to the priorities set forth for a Chapter 7 liquidation of the Debtors' estates if the Transfers had not been made.

34.     During the Preference Period, commencing on or about May 4, 2015, the Preference Defendants took aggressive collection actions with respect to the Debtors, particularly by tightening credit terms.  Between May 4, 2015 and the Petition Date, each of the Preference Defendants tightened the Debtors' credit terms on at least two occasions.

35.     Initially, the Preference Defendants reduced the Debtors' credit terms from 26 days to between 12 and 15 days.  Between May 15, 2015 and June 25, 2015, the Preference Defendants advised the Defendants of their intent to further reduce credit terms.  By June 25, 2015, all of the Preference Defendants had reduced the Debtors' credit terms to 5 days.

9

36.     The tightening of the Debtors' credit terms had its intended effect.  Between May 4, 2015 and the Petition Date, the average time between the date of invoice and payment decreased significantly.  With the exception of a few outlier invoices and one case in which credit terms reverted to 26 days, the decrease was universally progressive.

37.     The Debtors made certain payments during the Preference Period to clear up older invoices.  The payments that cleared up older invoices were made in response either to actual pressure by the Preference Defendants or pressure to pay felt by the Debtors based on the tightening of credit terms.

38.     Indeed, the Preference Defendants were more aggressive in their collection activities during the Preference Period than many of the Debtors' remaining creditors.

39.     By letters dated December 14, 2016, the Committee sent advance demand letters to each of Defendants Frito-Lay, Pepsi Metro, Pepsi Hasbrouck, Pepsi Bottling and Pepsi Pennsauk inviting an exchange of information regarding any potential defenses.  The parties were unable to reach any resolution of the validity of the expenses.

**C.     Facts Generally Relevant to the Debtors' Accounts Receivable or Promotional Claims against the Promotion Defendants.**

40.     At various times GAPT entered into agreements (collectively, "Promotional Agreements") with one or more of the  Promotion  Defendants pursuant to which the Promotion Defendant counter-party or counter-parties would run promotions (collectively, "Promotions") at GAPT's  stores.

41.     On information and belief, any Promotional Agreements between GAPT and any of the Promotion Defendants that had been signed by GAPT  had expired by the end of 2010.

2600722.1   032596-97802

42.     Even after the expiration of the written Promotional Agreements referenced above, the Promotion Defendants continued to run Promotions at GAPT's stores between December 24, 2010 and the date the last of the GAPT stores were closed in 2015.

43.     In particular, Defendant Frito-Lay, which had developed new products, continued to actively run Promotions at the GAPT stores until the final stores were closed.  Indeed, GAPT's post-petition claims against Defendant Frito-Lay that arise out of Promotions approximate $3.1 million and constitute the largest portion of GAPT's claims arising out of post-petition Promotions.

44.     During the years from 2011 through 2016, the Promotion Defendants  made payments aggregating approximately $211,597,000 to GAPT for participating in Promotions as follows:

      a.   2011:  $46,170,000

      b.   2012:  $50,494,000

      c.   2013:  $44,764,000

      d.   2014:  $44,384,000

      e.   2015:  $25,732,000

      f.   2016:  $53,000

45.     From and after December 24, 2010, Promotion transactions between GAPT and the Promotion Defendants were evidenced and memorialized by Deal Sheets, Deal Histories, Invoices and Account Reports (collectively, "Transaction Documents").

46.     At all times following December 24, 2010, Promotions were initiated by the applicable Promotion Defendant. The initiating Promotion Defendant  made an offer electronically to GAPT through a third party, Demandtec, to run a Promotion.  GAPT would decide whether to accept the offer.  If GAPT accepted the offer, it would do so electronically and Demandtec would

11

record the time and date of offer and acceptance on the applicable Deal Sheet.  The offer and acceptance were authenticated via electronic signatures on the applicable Deal Sheets.

47.    The Transaction Documents set forth the basis for calculating the amount GAPT would be paid for participating in the Promotion.  Within a week or month after the completion of a Promotion, GAPT would invoice the applicable Promotion Defendant for the Promotion.

48.    The Promotions contemplated and required GAPT personnel to take certain actions, including: (i) store set-up; (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with the applicable Promotion Defendant to deliver sufficient product to fill shelves and endcaps.

49.    The Promotions also contemplated and required GAPT to incur certain out-of-pocket expenses, including:  (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) the loss of margin resulting from discounting prices in connection with a Promotion.

50.    The Promotions also contemplated and required GAPT to bear the initial expense of providing the customer with the benefit of a Promotion.    If a reduction in price was required, GAPT would reduce the price charged.  The Transaction Documents provided for the applicable Promotion Defendant to reimburse GAPT for the price reduction.

51.    At no time before December, 2015, did any of the Promotion Defendants advise GAPT that they would not pay for Promotions.

52.    At no time before January, 2016 did any of the Promotion Defendants advise GAPT that they did not consider themselves obligated to pay for any completed Promotions.

53.    The Promotion Defendants continued to pay for Promotions they ran at GAPT's stores as late as January 28, 2016.  In many cases Promotions were paid for by offsetting GAPT's

12

claims arising out of Promotion against their payables to the applicable Promotion Defendant. By way of example, Defendant Frito-Lay made its last "payment" for a Promotion through such an offset, in the amount of $115,235.00 on November 19, 2015.

54.     Between them, the Promotion Defendants currently owe GAPT the aggregate sum of $7,416,804.92 for Promotions conducted at GAPT's stores, most of which were conducted in 2014 and 2015.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Avoidance of Preferential Transfers—11 U.S.C. § 547—As to Defendant Frito-Lay)

55.     The allegations of Paragraphs 1 through 54 are incorporated herein by reference with the same force and effect as if set forth in full below.

56.     During the Preference Period, GAPT made Transfers to Defendant Frito-Lay in an amount not less than $13,376,141.

57.     Each of the Transfers to Defendant Frito-Lay constituted a transfer of property of GAPT.

58.     Each of the Transfers to Defendant Frito-Lay was made to or for the benefit of Defendant Frito-Lay.

59.     Defendant Frito-Lay was a creditor of GAPT within the meaning of 11 U.S.C. § 110(10) at the time of each of the Transfers made to Defendant Frito-Lay were made or, alternatively, received the Transfers to it for the benefit of a creditor or creditors of GAPT.

60.     Each of the Transfers to Defendant Frito-Lay was made on account of an antecedent debt owed by GAPT to Defendant Frito-Lay before the Transfer was made.

13

61.    Each of the Transfers to Defendant Frito-Lay was made while the GAPT Debtor making the Transfer was insolvent.  Pursuant to 11 U.S.C. § 547(f), all of the GAPT Debtors are deemed to have been insolvent throughout the Preference Period.

62.    Each of the Transfers to Defendant Frito-Lay enabled Defendant Frito-Lay to receive more than Defendant Frito-Lay would have received if (i) the Transfers to Defendant Frito-Lay had not been made, and (ii) Defendant Frito-Lay received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

63.    The Transfers to Defendant Frito-Lay were made in response to aggressive collection methods taken by Defendant Frito-Lay.

64.    As of the date hereof, Defendant Frito-Lay has not returned to GAPT any of the Transfers it received from GAPT during the Preference Period.

65.    The Committee is entitled to an order and judgment under 11 U.S.C. § 547 on behalf of GAPT avoiding the Transfers made to Defendant Frito-Lay during the Preference Period.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Recovery of Property—11 U.S.C. § 550—As to Defendant Frito-Lay)

66.    The allegations of Paragraphs 1 through 65 are incorporated herein by reference with the same force and effect as if set forth in full below

67.    Pursuant to 11 U.S.C. § 550(a), the extent that a Transfer is avoided under 11 U.S.C. § 547, the Committee may recover for the benefit of the GAPT bankruptcy estate, the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

14

2600722.1   032596-97802

68.     Defendant Frito-Lay is either (a) the initial transferee of the Transfers made to it during the Preference Period, (b) the entity for whose benefit said Transfers were made, or (c) an immediate or mediate transferee of the original transferee.

69.     Subject to Defendant Frito-Lay's potential defenses, the Committee is entitled to recover on behalf  of GAPT the value of the Transfers made to Defendant Frito-Lay during the Preference Period pursuant to 11 U.S.C. § 550(a).

## AS AND FOR A THIRD CAUSE OF ACTION

### (Avoidance of Preferential Transfers—11 U.S.C. § 547—As to Defendants Pepsi Metro, PepsiCo and Bottling Group)

70.     The allegations of Paragraphs 1 through 69 are incorporated herein by reference with the same force and effect as if set forth in full below.

71.     During the Preference Period, GAPT made Transfers to Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) in an amount not less than $911,738.00.

72.     Each of the Transfers to Defendant Pepsi Metro constituted a transfer of property of GAPT.

73.     Each of the Transfers to Defendant Pepsi Metro was made to or for the benefit of Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group).

74.     Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) was a creditor of GAPT within the meaning of 11 U.S.C. § 110(10) at the time of each of the Transfers made to Defendant Pepsi Metro were made or, alternatively, received the Transfers to it for the benefit of a creditor or creditors of GAPT.

15

75.     Each of the Transfers to Defendant Pepsi Metro was made on account of an antecedent debt owed by GAPT to Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) before the Transfer was made.

76.     Each of the Transfers to Defendant Pepsi Metro was made while the GAPT Debtor making the Transfer was insolvent.  Pursuant to 11 U.S.C. § 547(f), all of the GAPT Debtors are deemed to have been insolvent throughout the Preference Period.

77.     Each of the Transfers to Defendant Pepsi Metro enabled Defendant Pepsi Metro to receive more than Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) would have received if (i) the Transfers to Pepsi Metro had not been made, and (ii) Defendant Pepsi Metro received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

78.     The Transfers to Defendant Pepsi Metro were made in response to aggressive collection methods taken by Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group).

79.     As of the date hereof, neither Defendant Pepsi Metro nor any other party has returned to GAPT any of the Transfers it received from GAPT during the Preference Period.

80.     The Committee is entitled to an order and judgment on behalf of GAPT under 11 U.S.C. § 547 avoiding the Transfers made to Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) during the Preference Period.

2600722.1   032596-97802

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Recovery of Property—11 U.S.C. § 550—As to Defendants Pepsi Metro, PepsiCo and Bottling Group)

81.     The allegations of Paragraphs 1 through 80 are incorporated herein by reference with the same force and effect as if set forth in full below

82.     Pursuant to 11 U.S.C. § 550(a), the extent that a Transfer is avoided under 11 U.S.C. § 547, the Committee may recover for the benefit of the GAPT bankruptcy estate, the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

83.     Defendant Pepsi Metro (and, therefore, on information and belief, to either or both of Defendants PepsiCo and Bottling Group) is either (a) the initial transferee of the Transfers made to it during the Preference Period, (b) the entity for whose benefit said Transfers were made, or (c) an immediate or mediate transferee of the original transferee.

84.     Subject to Defendant Pepsi Metro's potential defenses, GAPT is entitled to recover from Defendant Pepsi Metro (and, therefore, on information and belief, from either or both of Defendants Pepsico and Bottling Group) on behalf of GAPT the value of the Transfers made to Defendant Pepsi Metro during the Preference Period pursuant to 11 U.S.C. § 550(a).

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Avoidance of Preferential Transfers—11 U.S.C. § 547— As to Defendants Pepsi Hasbrouck, PepsiCo, Pepsi Metro and Bottling Group)

85.     The allegations of Paragraphs 1 through 84 are incorporated herein by reference with the same force and effect as if set forth in full below.

2600722.1   032596-97802

86.     On information and belief, Pepsi Hasbrouck is not a separate legal entity but a division or operating location of either Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group.   Accordingly, any of the Transfers made by the Debtors to Defendant Pepsi Hasbrouck during the Preference Period constitute Transfers to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group.

87.     During the Preference Period, GAPT made Transfers to Defendant Pepsi Hasbrouck and, therefore, also to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group in an amount not less than $4,930,368.00.

88.     Each of the Transfers to Defendant Pepsi Hasbrouck (and, therefore, also to any or all of Defendants Pepsi Metro, PepsiCo or Bottling Group) constituted a transfer of property of GAPT.

89.     Each of the Transfers to Defendant Pepsi Hasbrouck was made to or for the benefit of Defendant Pepsi Hasbrouck and, therefore, to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group.

90.     Defendant Pepsi Hasbrouck (and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) was a creditor of GAPT within the meaning of 11 U.S.C. § 110(10) at the time of each of the Transfers made to Defendant Pepsi Hasbrouck were made or, alternatively, received the Transfers to it for the benefit of a creditor or creditors of GAPT.

91.     Each of the Transfers to Defendant Pepsi Hasbrouck was made on account of an antecedent debt owed by GAPT to Defendant Pepsi Hasbrouck (and, therefore to any or all of

18

Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) before the Transfer was made.

92.     Each of the Transfers to Defendant Pepsi Hasbrouck was made while the GAPT Debtor making the Transfer was insolvent.  Pursuant to 11 U.S.C. § 547(f), all of the GAPT Debtors are deemed to have been insolvent throughout the Preference Period.

93.     Each of the Transfers to Defendant Pepsi Hasbrouck enabled Defendant Pepsi Hasbrouck, and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group, to receive more than they would have received if (i) the Transfers to Pepsi Hasbrouck had not been made, and (ii) Defendant Pepsi Hasbrouck received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

94.     The Transfers to Defendant Pepsi Hasbrouck were made in response to aggressive collection methods take by Defendant Pepsi Hasbrouck (and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group).

95.     As of the date hereof, neither Defendant Pepsi Hasbrouck nor any other person or entity has returned to GAPT any of the Transfers made to Pepsi Hasbrouck during the Preference Period.

96.     The Committee is entitled to an order and judgment on behalf of GAPT under 11 U.S.C. § 547 avoiding the Transfers made to Defendant Pepsi Hasbrouck (and, therefore, to any or all of Defendants Pepsi Metro, PepsiCo and Bottling Group) during the Preference Period.

2600722.1   032596-97802

## AS AND FOR A SIXTH CAUSE OF ACTION

**(Recovery of Property—11 U.S.C. § 550—
As to Defendants Pepsi Hasbrouck, PepsiCo, Pepsi Metro and Bottling Group)**

97.     The allegations of Paragraphs 1 through 96 are incorporated herein by reference with the same force and effect as if set forth in full below.

98.     Pursuant to 11 U.S.C. § 550(a), the extent that a Transfer is avoided under 11 U.S.C. § 547, the Committee may recover for the benefit of the GAPT bankruptcy estate, the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

99.     Defendant Pepsi Hasbrouck and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group are either (a) the initial transferees of the Transfers made to Defendant Pepsi Hasbrouck during the Preference Period, (b) the entities for whose benefit said Transfers were made, or (c) an immediate or mediate transferees of the original transferee.

100.     Subject to the potential defenses to which Defendants Pepsi Hasbrouck, Pepsi Metro, PepsiCo and Bottling Group are entitled, the Committee is entitled to recover on behalf of GAPT the value of the Transfers made to Pepsi Hasbrouck (and, therefore, to any or all of Defendants Pepsi Metro, PepsiCo and Defendant Bottling Group) during the Preference Period pursuant to 11 U.S.C. § 550(a).

2600722.1   032596-97802

## AS AND FOR A SEVENTH CAUSE OF ACTION

**(Avoidance of Preferential Transfers—11 U.S.C. § 547—
As to Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group)**

101.    The allegations of Paragraphs 1 through 100 are incorporated herein by reference with the same force and effect as if set forth in full below.

102.    On information and belief, Pepsi Bottling is not a separate legal entity but a division or operating location of either Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group.  Accordingly, any of the Transfers made by the Debtors to Defendant Pepsi Bottling during the Preference Period constitute Transfers to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group.

103.    During the Preference Period, GAPT made Transfers to Defendant Pepsi Bottling and, therefore, to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group in an amount not less than $103,920.00.

104.    Each of the Transfers to Defendant Pepsi Bottling constituted a transfer of property of GAPT.

105.    Each of the Transfers to Defendant Pepsi Bottling was made to or for the benefit of Defendant Pepsi Bottling and either or both of Defendant Pepsi Metro and Defendant Bottling Group.

106.    Defendant Pepsi Bottling (and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) was a creditor of GAPT within the meaning of 11 U.S.C. § 110(10) at the time of each of the Transfers made to Defendant Pepsi Bottling were made or, alternatively, received the Transfers to it for the benefit of a creditor or creditors of GAPT.

21

107.    Each of the Transfers to Defendant Pepsi Bottling was made on account of an antecedent debt owed by GAPT to Defendant Pepsi Bottling (and, therefore, to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) before the Transfer was made.

108.    Each of the Transfers to Defendant Pepsi Bottling was made while the GAPT Debtor making the Transfer was insolvent.   Pursuant to 11 U.S.C. § 547(f), all of the GAPT Debtors are deemed to have been insolvent throughout the Preference Period.

109.    Each of the Transfers to Defendant Pepsi Bottling enabled Defendant Pepsi Bottling, and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group, to receive more than they would have received if (i) the Transfers to Pepsi Bottling had not been made, and (ii) Defendant Pepsi Bottling received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

110.    The Transfers to Defendant Pepsi Bottling were made in response to aggressive collection methods take by Defendant Pepsi Bottling (and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group).

111.    As of the date hereof, neither Defendant Pepsi Bottling nor any other person or entity has returned to GAPT any of the Transfers made to Pepsi Bottling during the Preference Period.

112.    The Committee is entitled to an order and judgment under 11 U.S.C. § 547 on behalf of GAPT avoiding the Transfers made to Defendant Pepsi Bottling during the Preference Period.

2600722.1   032596-97802

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**(Recovery of Property—11 U.S.C. § 550—**
**As to Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group)**

113.    The allegations of Paragraphs 1 through 112 are incorporated herein by reference with the same force and effect as if set forth in full below

114.    Pursuant to 11 U.S.C. § 550(a), the extent that a Transfer is avoided under 11 U.S.C. § 547, the Committee may recover for the benefit of the GAPT bankruptcy estate, the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

115.    Defendant Pepsi Bottling and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group are either (a) the initial transferees of the Transfers made to Defendant Pepsi Bottling during the Preference Period, (b) the entities for whose benefit said Transfers were made, or (c) an immediate or mediate transferees of the original transferee.

116.    Subject to the potential defenses to which Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group are entitled, the Committee is entitled to recover on behalf of GAPT the value of the Transfers made to Pepsi Bottling (and, therefore, to any or all of Defendants Pepsi Metro, PepsiCo and Bottling Group)  during the Preference Period pursuant to 11 U.S.C. § 550(a).

2600722.1   032596-97802

## AS AND FOR A NINTH CAUSE OF ACTION

**(Avoidance of Preferential Transfers—11 U.S.C. § 547—
As to Defendants Pepsi Pennsauk, PepsiCo Pepsi Metro and Bottling Group)**

117.    The allegations of Paragraphs 1 through 116 are incorporated herein by reference with the same force and effect as if set forth in full below.

118.    On information and belief, Pepsi Pennsauk is not a separate legal entity but a division or operating location of either Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group.    Accordingly, any of the Transfers made by the Debtors to Defendant Pepsi Pennsauk during the Preference Period constitute Transfers to any or all of Defendant Pepsi Metro, Defendant PepsiCo  and Defendant Bottling Group.

119.    During the Preference Period, GAPT made Transfers to Defendant Pepsi Pennsauk and, therefore, to either Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group in an amount not less than $30,303.00.

120.    Each of the Transfers to Defendant Pepsi Pennsauk constituted a transfer of property of GAPT.

121.    Each of the Transfers to Defendant Pepsi Pennsauk was made to or for the benefit of Defendant Pepsi Pennsauk and any or all of Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group.

122.    Defendant Pepsi Pennsauk (and, therefore, any or all of Defendant Bottling Group, Defendant PepsiCo and Defendant Pepsi Metro) was a creditor of GAPT within the meaning of 11 U.S.C. § 110(10) at the time of each of the Transfers made to Defendant Pepsi Pennsauk were made or, alternatively, received the Transfers to it for the benefit of a creditor or creditors of GAPT.

24

2600722.1   032596-97802

123.    Each of the Transfers to Defendant Pepsi Pennsauk was made on account of an antecedent debt owed by GAPT to Defendant Pepsi Pennsauk (and, therefore to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) before the Transfer was made.

124.    Each of the Transfers to Defendant Pepsi Pennsauk was made while the GAPT debtor making the Transfer was insolvent.    Pursuant to 11 U.S.C. § 547(f), all of the GAPT Debtors are deemed to have been insolvent throughout the Preference Period.

125.    Each of the Transfers to Defendant Pepsi Pennsauk enabled Defendant Pepsi Pennsauk, and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo or Defendant Bottling Group, to receive more than they would have received if (i) the Transfers to Defendant Pepsi Pennsauk had not been made, and (ii) Defendant Pepsi Pennsauk received payment on account of the debt paid by each of the Transfers to the extent provided by the Bankruptcy Code.

126.    The Transfers to Defendant Pepsi Pennsauk were made in response to aggressive collection methods taken by Defendant Pepsi Pennsauk (and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group).

127.    As of the date hereof, neither Defendant Pepsi Pennsauk nor any other person or entity has returned to GAPT any of the Transfers made to Pepsi Pennsauk during the Preference Period.

128.    The Committee is entitled to an order and judgment under 11 U.S.C. § 547 on behalf of GAPT avoiding the Transfers made to Defendant Pepsi Pennsauk during the Preference Period.

2600722.1    032596-97802

## AS AND FOR A TENTH CAUSE OF ACTION

### (Recovery of Property—11 U.S.C. § 550—
### As to Defendants Pepsi Pennsauk, Pepsico, Pepsi Metro and Bottling Group)

129.    The allegations of Paragraphs 1 through 128 are incorporated herein by reference with the same force and effect as if set forth in full below

130.    Pursuant to 11 U.S.C. § 550(a), the extent that a Transfer is avoided under 11 U.S.C. § 547, the Committee may recover for the benefit of the GAPT Debtors' bankruptcy estate, the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

131.    Defendant Pepsi Pennsauk and, therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group are either (a) the initial transferees of the Transfers made to Defendant Pepsi Pennsauk during the Preference Period, (b) the entities for whose benefit said Transfers were made, or (c) an immediate or mediate transferees of the original transferee.

132.    Subject to the potential defenses to which Defendants Pepsi Pennsauk, Defendant PepsiCo, Pepsi Metro and Bottling Group are entitled, the Committee is entitled to recover on behalf of GAPT the value of the Transfers made to Pepsi Pennsauk (and, therefore, to any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling) during the Preference Period pursuant to 11 U.S.C. § 550(a).

2600722.1   032596-97802

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Frito-Lay)

133.    The allegations of Paragraphs 1 through 132 are incorporated herein by reference with the same force and effect as if set forth in full below.

134.    Between December 24, 2010 and November 25, 2015, Defendant Frito-Lay initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.    GAPT accepted the offers resulting in Promotion Transactions.    The agreement of GAPT and Defendant Frito-Lay to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Frito-Lay at GAPT's stores.

135.    In connection with each Promotion conducted by Defendant Frito-Lay at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Frito-Lay to deliver sufficient product to fill shelves and endcaps.

136.    In connection with each Promotion conducted by Defendant Frito-Lay at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

27

2600722.1   032596-97802

137.    In connection with each Promotion Transaction between GAPT and Defendant Frito-Lay, Defendant Frito-Lay agreed to pay GAPT certain consideration as set forth in the Transaction Documents.   Among other things, Defendant Frito-Lay agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

138.    Between December 24, 2010 and November 19, 2015, Defendant Frito-Lay paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

139.    In many instances, Defendant Frito-Lay paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Frito-Lay.  The last such offset occurred on November 19, 2015.

140.    Defendant Frito-Lay has not, however, paid GAPT for all Promotions conducted by Defendant Frito-Lay at GAPT's stores

141.    As of the date of this Complaint, there is due and owing from Defendant Frito-Lay the sum of $3,119,439.21, less any credits or offsets to which Defendant Frito-Lay shows itself entitled, in connection with Promotions conducted by Defendant Frito-Lay at GAPT's stores.

142.    GAPT is entitled to recover the sum of $3,119,439.21, less any credits to which Defendant Frito-Lay shows itself entitled, from Defendant Frito-Lay in connection with those Promotions.

## **ALTERNATIVELY, AS AND FOR A TWELFTH CAUSE OF ACTION**

### **(Unjust Enrichment—Defendant Frito-Lay)**

143.    The allegations of Paragraphs 1 through 142 are incorporated herein by reference with the same force and effect as if set forth in full below.

28

2600722.1   032596-97802

144.    Between December 24, 2010 and November 25, 2015, Defendant Frito-Lay conducted numerous Promotions at GAPT's stores.

145.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Frito-Lay at GAPT's stores.

146.    Defendant Frito-Lay benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

147.    Defendant Frito-Lay is indebted to GAPT in the amount of $3,119,439.21, less any credits to which Defendant Frito-Lay shows itself entitled, in connection with Promotions Defendant Frito-Lay conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

## ALTERNATIVELY, AS AND FOR A THIRTEENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Frito Lay)

148.    The allegations of Paragraphs 1 through 147 are incorporated herein by reference with the same force and effect as if set forth in full below.

149.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Frito-Lay expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

150.    Relying on Defendant Frito-Lay's promise to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

151.    GAPT's reliance on Defendant Frito-Lay's promises to pay for Promotions was reasonable, particularly in light of Defendant Frito-Lay's history of paying for Promotions it conducted at GAPT's stores.

2600722.1   032596-97802

152.   GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Frito-Lay at GAPT's stores in reliance on Defendant Frito-Lay's promise to pay for the Promotions and is, entitled to recover $3,119,439.21, less any credits to which Defendant Frito-Lay shows itself entitled, from Defendant Frito-Lay.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group)

153.   The allegations of Paragraphs 1 through 152 are incorporated herein by reference with the same force and effect as if set forth in full below.

154.   Between December 24, 2010 and November 25, 2015, Defendant Pepsi Bottling initiated Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.  GAPT accepted the offers resulting in Promotion Transactions.  The agreement of GAPT and Defendant Pepsi Bottling to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized by the Transaction Documents applicable to Promotions conducted by Defendant Pepsi Bottling at GAPT's stores.

155.   In connection with each Promotion conducted by Defendant Pepsi Bottling  at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Pepsi Bottling to deliver sufficient product to fill shelves and endcaps.

2600722.1   032596-97802

156.    In connection with each Promotion conducted by Defendant Pepsi Bottling at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

157.    In connection with each Promotion Transaction between GAPT and Defendant Pepsi Bottling, Defendant Bottling Group (and, therefore any or all of Defendants PepsiCo, Pepsi Metro or Bottling Group) agreed to pay GAPT certain consideration as set forth in the Transaction Documents.    Among other things, Defendant Pepsi Bottling agreed to reimburse GAPT for any price reductions by GAPT in connection with a Promotion.

158.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Bottling paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

159.    In many instances, Defendant Pepsi Bottling paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Pepsi Bottling.

160.    Defendant Pepsi Bottling has not, however, paid GAPT for all Promotions conducted by Defendant Pepsi Bottling at GAPT's stores.

161.    As of the date of this Complaint, there is due and owing from Defendant Pepsi Bottling (and, therefore, any or all of Defendants PepsiCo, Pepsi Metro and Bottling Group) the sum of $7,079.00, less any credits to which Defendant Pepsi Bottling shows itself entitled, in connection with Promotions conducted by Defendant Pepsi Bottling at GAPT's stores.

31

162.    GAPT is entitled to recover the sum of $7,079.00, less any credits to which Defendant Pepsi Bottling shows itself entitled, from Defendant Pepsi Bottling (and, therefore, any or all of Defendants PepsiCo, Pepsi Metro or Bottling Group) in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A FIFTEENTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group)

163.    The allegations of Paragraphs 1 through 162 are incorporated herein by reference with the same force and effect as if set forth in full below.

164.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Bottling conducted numerous Promotions at GAPT's stores.

165.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Pepsi Bottling at GAPT's stores.

166.    Defendant Pepsi Bottling benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

167.    Defendant Pepsi Bottling (and, therefore any or all of Defendants PepsiCo, Bottling Group and Pepsi Metro)is indebted to GAPT in the amount of $7,079.00, less any credits to which Defendant Pepsi Bottling shows itself entitled, in connection with Promotions Defendant Pepsi Bottling conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

2600722.1   032596-97802

## **ALTERNATIVELY, AS AND FOR A SIXTEENTH CAUSE OF ACTION**

### **(Promissory Estoppel—Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group)**

168.    The allegations of Paragraphs 1 through 167 are incorporated herein by reference with the same force and effect as if set forth in full below.

169.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Pepsi Bottling (and, therefore, any or all of Defendants PepsiCo, Pepsi Metro and Bottling Group) expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

170.    Relying on Defendant Pepsi Bottling's promise to pay in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

171.    GAPT's reliance on Defendant Pepsi Bottling's promises to pay for Promotions was reasonable, particularly in light of Defendant Pepsi Bottling's history of paying for Promotions it conducted at GAPT's stores.

172.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Pepsi Bottling at GAPT's stores and in reliance on Defendant Pepsi Bottling's promise to pay for Promotions and is, therefore, entitled to recover $7,079.00 less any credits to which Defendant Pepsi Bottling shows itself entitled, from Defendant Pepsi Bottling and any or all of Defendants PepsiCo, Pepsi Metro or Bottling Group.

2600722.1   032596-97802

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendants Quaker/Tropicana/Gatorade)

173.    The allegations of Paragraphs 1 through 172 are incorporated herein by reference with the same force and effect as if set forth in full below.

174.    Between December 24, 2010 and November 25, 2015, Defendant Quaker/Tropicana/Gatorade initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.  GAPT accepted the offers resulting in Promotion Transactions.    The agreement of GAPT and Defendant Quaker/Tropicana/Gatorade to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to the Promotions conducted by Defendant Quaker/Tropicana/Gatorade at GAPT's stores.

175.    In    connection    with    each    Promotion    conducted    by    Defendants Quaker/Tropicana/Gatorade at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Quaker/Tropicana/Gatorade to deliver sufficient product to fill shelves and endcaps.

176.    In    connection    with    each    Promotion    conducted    by    Defendant Quaker/Tropicana/Gatorade at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

2600722.1    032596-97802

177.    In connection with each Promotion Transaction between GAPT and Defendant Quaker/Tropicana/Gatorade, Defendant Quaker/Tropicana/Gatorade agreed to pay GAPT certain consideration as set forth in the Transaction Documents.    Among other things, Defendant Quaker/Tropicana/Gatorade agreed to reimburse GAPT for any price reductions by GAPT in connection with a Promotion.

178.    Between December 24, 2010 and January 28, 2016, Defendant Quaker/Tropicana/Gatorade paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

179.    In many instances, Defendant Quaker/Tropicana/Gatorade paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Quaker/Tropicana/Gatorade.

180.    Defendant Quaker/Tropicana/Gatorade has not, however, fully paid GAPT the amounts due for all Promotions conducted by Defendant Quaker/Tropicana/Gatorade at GAPT's stores.

181.    As of the date of this Complaint, there is due and owing from Defendant Quaker/Tropicana/Gatorade the sum of $3,029,238.23, less any credits to which Defendant Frito-Lay shows itself entitled, in connection with Promotions conducted by Defendant Quaker/Tropicana/Gatorade at GAPT's stores.

182.    GAPT is entitled to recover the sum of $3,029,238.23, less any credits to which Defendant Quaker/Tropicana/Gatorade shows itself entitled, from Defendant Quaker/Tropicana/Gatorade in connection with those Promotions.

2600722.1  032596-97802

## ALTERNATIVELY, AS AND FOR AN EIGHTEENTH CAUSE OF ACTION

### (Unjust Enrichment—Defendant Quaker/Tropicana/Gatorade)

183.    The allegations of Paragraphs 1 through 182 are incorporated herein by reference with the same force and effect as if set forth in full below.

184.    Between December 24, 2010 and November 25, 2015, Defendant Quaker/Tropicana/Gatorade conducted numerous Promotions at GAPT's stores.

185.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Quaker/Tropicana/Gatorade at GAPT's stores.

186.    Defendant Quaker/Tropicana/Gatorade benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

187.    Defendant Quaker/Tropicana/Gatorade is indebted to GAPT in the amount of $3,029,238.23, less any credits to which Defendant Quaker/Tropicana/Gatorade shows itself entitled, in connection with Promotions Defendant Quaker/Tropicana/Gatorade conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

## ALTERNATIVELY, AS AND FOR A NINETEENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Quaker/Tropicana/Gatorade)

188.    The allegations of Paragraphs 1 through 187 are incorporated herein by reference with the same force and effect as if set forth in full below.

189.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Quaker/Tropicana/Gatorade expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

36

2600722.1   032596-97802

190.    Relying on the promises by Defendant Quaker/Tropicana/Gatorade to pay in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

191.    GAPT's reliance on the promises by Defendant Quaker/Tropicana/Gatorade' promises to pay for Promotions was reasonable, particularly in light of the history of Defendant Quaker/Tropicana/Gatorade paying for Promotions they conducted at GAPT's stores.

192.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Quaker/Tropicana/Gatorade at GAPT's stores and in reliance on the promises of Defendant Quaker/Tropicana/Gatorade to pay for Promotions and is, therefore, entitled to recover $3,029,238.23, less any credits to which Defendant Quaker/Tropicana/Gatorade shows itself entitled from Defendant Quaker/Tropicana/Gatorade.

## AS AND FOR A TWENTIETH  CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Stacy's)

193.    The allegations of Paragraphs 1 through 192 are incorporated herein by reference with the same force and effect as if set forth in full below.

194.    Between December 24, 2010 and November 25, 2015, Defendant Stacy's initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.  GAPT accepted the offers resulting in Promotion Transactions.  The agreement of GAPT and Defendant Stacy's to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Stacy's at GAPT's stores.

37

195.    In connection with each Promotion conducted by Defendant Stacy's at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Stacy's to deliver sufficient product to fill shelves and endcaps.

196.    In connection with each Promotion conducted by Defendant Stacy's at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

197.    In connection with each Promotion Transaction between GAPT and Defendant Stacy's, Defendant Stacy's agreed to pay GAPT certain consideration as set forth in the Transaction Documents.   Among other things, Defendant Stacy's agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

198.    Between December 24, 2010 and January 28, 2016, Defendant Stacy's paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

199.    In many instances, Defendant Stacy's paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Stacy's.

200.    Defendant Stacy's has not, however, paid GAPT for all Promotions conducted by Defendant Stacy's at GAPT's stores.

2600722.1   032596-97802

201.    As of the date of this Complaint, there is due and owing from Defendant Stacy's the sum of $20,487.48, less any credits or offsets to which Defendant Stacey's shows itself entitled, in connection with Promotions conducted by Defendant Stacy's at GAPT's stores.

202.    GAPT is entitled to recover the sum of $20,487.48, less any credits to which Defendant Stacy's shows itself entitled, from Defendant Stacy's in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A TWENTY-FIRST CAUSE OF ACTION

### (Unjust Enrichment—Defendant Stacy's)

203.    The allegations of Paragraphs 1 through 202 are incorporated herein by reference with the same force and effect as if set forth in full below.

204.    Between December 24, 2010 and November 25, 2015, Defendant Stacy's conducted numerous Promotions at GAPT's stores.

205.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Stacy's at GAPT's stores.

206.    Defendant Stacy's benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

207.    Defendant Stacy's is indebted to GAPT in the amount of $20,487.48, less any credits to which Defendant Stacy's shows itself entitled, in connection with Promotions Defendant Stacy's conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

## ALTERNATIVELY, AS AND FOR A TWENTY-SECOND CAUSE OF ACTION

### (Promissory Estoppel—Defendant Stacy's)

2600722.1   032596-97802

208.    The allegations of Paragraphs 1 through 207 are incorporated herein by reference with the same force and effect as if set forth in full below.

209.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Stacy's expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

210.    Relying on the promise of Defendant Stacy's to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

211.    GAPT's reliance on the promise of Defendant Stacy's to pay for Promotions was reasonable, particularly in light of the history of Defendant Stacy's paying for Promotions it conducted at GAPT's stores.

212.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Stacy's at GAPT's stores in reliance on Defendant Stacy's promise to pay for the Promotions and is, entitled to recover $20,487.48, less any credits to which Defendant Stacy's shows itself entitled, from Defendant Stacy's.

## AS AND FOR A TWENTY-THIRD   CAUSE OF ACTION

**(Breach of Express and Implied Contract—Defendants Muller Quaker and Pepsico)**

213.    The allegations of Paragraphs 1 through 212 are incorporated herein by reference with the same force and effect as if set forth in full below.

214.    Between December 24, 2010 and November 25, 2015, Defendant Muller Quaker initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.   GAPT accepted the offers resulting in Promotion

40

Transactions.   The agreement of GAPT and Defendant Muller Quaker to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Muller Quaker at GAPT's stores.

215.    In connection with each Promotion conducted by Defendant Muller Quaker at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Muller Quaker to deliver sufficient product to fill shelves and endcaps.

216.    In connection with each Promotion conducted by Defendant Muller Quaker at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

217.    In connection with each Promotion Transaction between GAPT and Defendant Muller Quaker agreed to pay GAPT certain consideration as set forth in the Transaction Documents.   Among other things, Defendant Muller Quaker agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

218.    Between December 24, 2010 and January 28, 2016, Defendant Muller Quaker paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

2600722.1   032596-97802

219. In many instances, Defendant Muller Quaker paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Muller Quaker.

220. Defendant Muller Quaker has not, however, paid GAPT for all Promotions conducted by Defendant Muller Quaker at GAPT's stores

221. As of the date of this Complaint, there is due and owing from Defendant Muller Quaker (and, therefore, Defendant PepsiCo, as a member of the joint venture by which Muller Quaker was formed) the sum of $34,912.04, less any credits or offsets to which Defendant Muller Quaker shows itself entitled, in connection with Promotions conducted by Defendant Muller Quaker at GAPT's stores.

222. GAPT is entitled to recover the sum of $34,912.04, less any credits to which Defendant Muller Quaker shows itself entitled, from Defendant Muller Quaker (and, therefore, Defendant PepsiCo) in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Muller Quaker and PepsiCo)

223. The allegations of Paragraphs 1 through 222 are incorporated herein by reference with the same force and effect as if set forth in full below.

224. Between December 24, 2010 and November 25, 2015, Defendant Muller Quaker conducted numerous Promotions at GAPT's stores.

225. GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Muller Quaker at GAPT's stores.

42

2600722.1   032596-97802

226.     Defendant Muller Quaker benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

227.     Defendant Muller Quaker (and, therefore, Defendant PepsiCo) is indebted to GAPT in the amount of $34,912.04, less any credits to which Defendant Muller Quaker shows itself entitled, in connection with Promotions Defendant Muller Quaker conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

## ALTERNATIVELY, AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION

### (Promissory Estoppel—Defendants Muller Quaker and PepsiCo)

228.     The allegations of Paragraphs 1 through 227 are incorporated herein by reference with the same force and effect as if set forth in full below.

229.     In connection with each of the Promotions it conducted at GAPT's stores, Defendant Muller Quaker expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

230.     Relying on Defendant Muller Quaker's promise to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

231.     GAPT's reliance on Defendant Muller Quaker's promises to pay for Promotions was reasonable, particularly in light of Defendant Muller Quaker's history of paying for Promotions it conducted at GAPT's stores.

232.     GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Muller Quaker at GAPT's stores in reliance on Defendant Muller Quaker's promise to

43

pay for the Promotions and is, entitled to recover $34,912.04, less any credits to which Defendant

Muller Quaker shows itself entitled, from Defendants Muller Quaker and Pepsico.


## AS AND FOR A TWENTY-SIXTH CAUSE OF ACTION

**(Breach of Express and Implied Contract—Defendants Pepsi Metro, Pepsico and
Bottling Group)**

233.    The allegations of Paragraphs 1 through 232 are incorporated herein by reference

with the same force and effect as if set forth in full below.

234.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Metro

initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT

through Demandtec via a Deal Sheet.    GAPT accepted the offers resulting in Promotion

Transactions.    The agreement of GAPT and Defendant Pepsi Metro to enter into Promotion

Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is

memorialized in the Transaction Documents applicable to Promotions conducted by Defendant

Pepsi Metro at GAPT's stores.

235.    In connection with each Promotion conducted by Defendant Pepsi Metro at

GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii)

arranging for advertising; (iii) ensuring that sufficient product was stocked at each store

participating in the Promotion; and (iv) arranging with Defendant Pepsi Metro to deliver sufficient

product to fill shelves and endcaps.

236.    In connection with each Promotion conducted by Defendant Pepsi Metro at

GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii)

2600722.1   032596-97802

expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

237.    In connection with each Promotion Transaction between GAPT and Defendant Pepsi Metro, Defendant Pepsi Metro (and, therefore, either or both of Defendants PepsiCo and Bottling Group) agreed to pay GAPT certain consideration as set forth in the Transaction Documents.    Among other things, Defendant Pepsi Metro agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

238.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Metro paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for reductions in connection with Promotions.

239.    In many instances, Defendant Pepsi Metro paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Pepsi Metro.

240.    Defendant Pepsi Metro has not, however, paid GAPT for all Promotions conducted by Defendant Pepsi Metro at GAPT's stores

241.    As of the date of this Complaint, there is due and owing from Defendant Pepsi Metro, and, therefore, Defendants PepsiCo and Bottling Group, the sum of $146,447.00, less any credits or offsets to which Defendant Pepsi Metro shows itself entitled, in connection with Promotions conducted by Defendant Pepsi Metro at GAPT's stores.

242.    GAPT is entitled to recover the sum of $146,447.00, less any credits to which Defendant Pepsi Metro shows itself entitled, from Defendants Pepsi Metro, PepsiCo and Bottling Group in connection with those Promotions.

45

### ALTERNATIVELY, AS AND FOR A TWENTY-SEVENTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Pepsi Metro, PepsiCo and Bottling Group)

243.     The allegations of Paragraphs 1 through 242 are incorporated herein by reference with the same force and effect as if set forth in full below.

244.     Between December 24, 2010 and November 25, 2015, Defendant Pepsi Metro conducted numerous Promotions at GAPT's stores.

245.     GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Pepsi Metro at GAPT's stores.

246.     Defendant Pepsi Metro,and therefore, Defendants PepsiCo and Bottling Group, benefited from the Promotions Pepsi Metro conducted at GAPT's stores, but have not paid GAPT for all of the Promotions Pepsi Metro conducted at GAPT's stores.

247.     Defendant Pepsi Metro and, therefore Defendants PepsiCo and Bottling Group is indebted to GAPT in the amount of $146,447.00, less any credits to which Defendant Pepsi Metro shows itself entitled, in connection with Promotions Defendant Pepsi Metro conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

### ALTERNATIVELY, AS AND FOR A TWENTY-EIGHTH CAUSE OF ACTION

### (Promissory Estoppel—Defendants Pepsi Metro, Pepsico and Bottling Group)

248.     The allegations of Paragraphs 1 through 247 are incorporated herein by reference with the same force and effect as if set forth in full below.

2600722.1   032596-97802

249.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Pepsi Metro and, therefore, Defendants PepsiCo and Bottling Group, expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

250.    Relying on Defendant Pepsi Metro's promise to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

251.    GAPT's reliance on Defendant Pepsi Metro's promises to pay for Promotions was reasonable, particularly in light of Defendant Pepsi Metro's history of paying for Promotions it conducted at GAPT's stores.

252.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Pepsi Metro at GAPT's stores in reliance on Defendant Pepsi Metro's promise to pay for the Promotions and is, entitled to recover $146,447.00, less any credits to which Defendant Pepsi Metro shows itself entitled, from Defendants Pepsi Metro, PepsiCo and Bottling Group.

## AS AND FOR A TWENTY-NINTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendants Pepsi Hasbrouck, Pepsico, Bottling Group and Pepsi Metro)

253.    The allegations of Paragraphs 1 through 252 are incorporated herein by reference with the same force and effect as if set forth in full below.

254.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Hasbrouck initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.    GAPT accepted the offers resulting in Promotion Transactions.    The agreement of GAPT and Defendant Pepsi Hasbrouck to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is

47

memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores.

255.    In connection with each Promotion conducted by Defendant Pepsi Hasbrouck at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Pepsi Hasbrouck to deliver sufficient product to fill shelves and endcaps.

256.    In connection with each Promotion conducted by Defendant Pepsi Hasbrouck at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

257.    In connection with each Promotion Transaction between GAPT and Defendant Pepsi Hasbrouck, Defendant Pepsi Hasbrouck (and therefore, any or all of Defendant Pepsi Metro, Defendant PepsiCo and Defendant Bottling Group) agreed to pay GAPT certain consideration as set forth in the Transaction Documents.   Among other things, Defendant Pepsi Hasbrouck agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

258.    Between December 24, 2010 and January 28, 2016, Defendant Pepsi Hasbrouck paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for reductions in connection with Promotions.

259.    In many instances, Defendant Pepsi Hasbrouck paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Pepsi Hasbrouck.

48

260.    Defendant Pepsi Hasbrouck has not, however, paid GAPT for all Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores

261.    As of the date of this Complaint, there is due and owing from Defendant Pepsi Hasbrouck (and, therefore, any or all of Defendant Bottling Group, Defendant PepsiCo and Defendant Pepsi Metro) the sum of $819,991.96, less any credits or offsets to which Defendant Pepsi Hasbrouck shows itself entitled, in connection with Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores.

262.    GAPT is entitled to recover the sum of $819,991.96, less any credits to which Defendant Pepsi Hasbrouck shows itself entitled, from Defendant Pepsi Hasbrouck (and, therefore, any or all of Defendants Pepsi Metro, Bottling Group or PepsiCo) in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A THIRTIETH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Pepsi Hasbrouck, PepsiCo, Bottling Group and Pepsi Metro)

263.    The allegations of Paragraphs 1 through 262 are incorporated herein by reference with the same force and effect as if set forth in full below.

264.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Hasbrouck conducted numerous Promotions at GAPT's stores.

265.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores.

266.    Defendant Pepsi Hasbrouck benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

2600722.1   032596-97802

267.    Defendant Pepsi Hasbrouck (and, therefore, any or all of Defendants Bottling Group, PepsiCo and Pepsi Metro is indebted to GAPT in the amount of $819,991.96, less any credits to which Defendant Pepsi Hasbrouck shows itself entitled, in connection with Promotions Defendant Pepsi Hasbrouck conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

### **ALTERNATIVELY, AS AND FOR A THIRTY-FIRST CAUSE OF ACTION**

**(Promissory Estoppel—Defendants Pepsi Hasbrouck, PepsiCo, Bottling Group and Pepsi Metro)**

268.    The allegations of Paragraphs 1 through 267 are incorporated herein by reference with the same force and effect as if set forth in full below.

269.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Pepsi Hasbrouck (and, therefore, either or both of Defendants Bottling Group and Pepsi Metro) expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

270.    Relying on Defendant Pepsi Hasbrouck's promise to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

271.    GAPT's reliance on Defendant Pepsi Hasbrouck's promises to pay for Promotions was reasonable, particularly in light of Defendant Pepsi Hasbrouck's history of paying for Promotions it conducted at GAPT's stores.

272.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores in reliance on Defendant Pepsi Hasbrouck's promise to pay for the Promotions and is, entitled to recover $819,991.96, less any credits to which

50

2600722.1   032596-97802

Defendant Pepsi Hasbrouck shows itself entitled, from Defendant Hasbrouck and, therefore, from either or both of Defendants PepsiCo, Bottling Group and Pepsi Metro.

## AS AND FOR A THIRTY-SECOND CAUSE OF ACTION

**(Breach of Express and Implied Contract—Defendants PepsiCo, Pepsi Group, Bottling Group and Pepsi Metro)**

273.     The allegations of Paragraphs 1 through 272 are incorporated herein by reference with the same force and effect as if set forth in full below.

274.     Between December 24, 2010 and November 25, 2015, Defendant Pepsi Group initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.   GAPT accepted the offers resulting in Promotion Transactions.   The agreement of GAPT and Defendant Pepsi Group to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Pepsi Group at GAPT's stores.

275.     In connection with each Promotion conducted by Defendant Pepsi  Pepsi Group at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Pepsi Group to deliver sufficient product to fill shelves and endcaps.

276.     In connection with each Promotion conducted by Defendant Pepsi Group at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

51

277.     In connection with each Promotion Transaction between GAPT and Defendant Pepsi Group, Defendant Pepsi Group (and, therefore, any or all of Defendants PepsiCo, Bottling Group and Pepsi Metro) agreed to pay GAPT certain consideration as set forth in the Transaction Documents.   Among other things, Defendant Pepsi Group agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

278.     Between December 24, 2010 and January 28, 2016, Defendant  Pepsi Group paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

279.     In many instances, Defendant Pepsi Group paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Pepsi Group.

280.     Defendant Pepsi Group has not, however, paid GAPT for all Promotions conducted by Defendant Pepsi Group at GAPT's stores

281.     As of the date of this Complaint, there is due and owing from Defendant Pepsi Group (and, therefore, any or all of Defendants PepsiCo, Bottling Group and Pepsi Metro) the sum of $97,229.00.00, less any credits or offsets to which Defendant Pepsi Group shows  itself entitled, in connection with Promotions conducted by Defendant Pepsi Group at GAPT's stores.

282.     GAPT is entitled to recover the sum of $97,229.00, less any credits to which Defendant Pepsi Group shows itself entitled, from Defendant Pepsi Group (and, therefore, from Defendants PepsiCo, Pepsi Group, Bottling Group and Pepsi Metro) in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A THIRTY-THIRD CAUSE OF ACTION

### (Unjust Enrichment—Defendants PepsiCo , Pepsi Group, Bottling Group and Pepsi Metro)

52

283.    The allegations of Paragraphs 1 through 282 are incorporated herein by reference with the same force and effect as if set forth in full below.

284.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi Group conducted numerous Promotions at GAPT's stores.

285.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Pepsi Group at GAPT's stores.

286.    Defendant Pepsi Group benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

287.    Defendant Pepsi Group (and, therefore, Defendants PepsiCo, Bottling Group and Pepsi Metro) are indebted to GAPT in the amount of $97,229.00, less any credits to which Defendant Pepsi Group shows itself entitled, in connection with Promotions Defendant Pepsi Group conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

## ALTERNATIVELY, AS AND FOR A THIRTY-FOURTH CAUSE OF ACTION

**(Promissory Estoppel—Defendants PepsiCo , Pepsi Group, Bottling Group and Pepsi Metro)**

288.    The allegations of Paragraphs 1 through 287 are incorporated herein by reference with the same force and effect as if set forth in full below.

289.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Pepsi Group expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

290.    Relying on the promises of Defendant Pepsi Group to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

2600722.1   032596-97802

291.    GAPT's reliance on the promises of Defendant Pepsi Group to pay for Promotions was reasonable, particularly in light of its history of paying for Promotions it conducted at GAPT's stores.

292.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Pepsi Group at GAPT's stores in reliance on the promises of Defendant Pepsi Group to pay for the Promotions and is, entitled to recover $97,229.00, less any credits to which Defendant Pepsi Group shows itself entitled, from Defendant Group and, therefore, any or all of Defendants PepsiCo, Pepsi Metro and Bottling Group.

## AS AND FOR A THIRTY-FIFTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Pepsi USA and PepsiCo)

293.    The allegations of Paragraphs 1 through 292 are incorporated herein by reference with the same force and effect as if set forth in full below.

294.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi USA initiated numerous Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.  GAPT accepted the offers resulting in Promotion Transactions.  The agreement of GAPT and Defendant Pepsi USA to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized in the Transaction Documents applicable to Promotions conducted by Defendant Pepsi USA at GAPT's stores.

295.    In connection with each Promotion conducted by Defendant Pepsi USA at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for

54

advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Pepsi USA to deliver sufficient product to fill shelves and endcaps.

296.    In connection with each Promotion conducted by Defendant Pepsi USA at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

297.    In connection with each Promotion Transaction between GAPT and Defendant Pepsi USA, Defendant Pepsi USA agreed to pay GAPT certain consideration as set forth in the Transaction Documents.    Among other things, Defendant Pepsi USA agreed to reimburse GAPT any price reductions by GAPT in connection with a Promotion.

298.    Between December 24, 2010 and January 28, 2016, Defendant Pepsi USA paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for reductions in connection with Promotions.

299.    In many instances, Defendant Pepsi USA paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Pepsi USA.

300.    Defendant Pepsi USA has not, however, paid GAPT for all Promotions conducted by Defendant Pepsi Hasbrouck at GAPT's stores

301.    As of the date of this Complaint, there is due and owing from Defendant Pepsi USA (and, therefore, Defendant PepsiCo) the sum of $138,204.00, less any credits or offsets to which

2600722.1   032596-97802

Defendant Pepsi USA shows itself entitled, in connection with Promotions conducted by Defendant Pepsi USA at GAPT's stores.

302.    GAPT is entitled to recover the sum of $138,204.00, less any credits to which Defendant Pepsi USA shows itself entitled, from Defendant Pepsi USA (and, therefore, Defendant Pepsico) in connection with those Promotions.

## ALTERNATIVELY, AS AND FOR A THIRTY-SIXTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Pepsi USA and Pepsico)

303.    The allegations of Paragraphs 1 through 302 are incorporated herein by reference with the same force and effect as if set forth in full below.

304.    Between December 24, 2010 and November 25, 2015, Defendant Pepsi USA conducted numerous Promotions at GAPT's stores.

305.    GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Pepsi USA at GAPT's stores.

306.    Defendant Pepsi USA benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

307.    Defendant Pepsi USA (and, therefore, Defendant Pepsico) is indebted to GAPT in the amount of $138,204.00, less any credits to which Defendant Pepsi USA shows itself entitled, in connection with Promotions Defendant Pepsi USA conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

2600722.1   032596-97802

## ALTERNATIVELY, AS AND FOR A THIRTY-SEVENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Pepsi USA and Pepsico)

308.    The allegations of Paragraphs 1 through 307 are incorporated herein by reference with the same force and effect as if set forth in full below.

309.    In connection with each of the Promotions it conducted at GAPT's stores, Defendant Pepsi USA expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

310.    Relying on Defendant Pepsi USA's promise to pay, in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

311.    GAPT's reliance on Defendant Pepsi USA's promises to pay for Promotions was reasonable, particularly in light of Defendant Pepsi USA's history of paying for Promotions it conducted at GAPT's stores.

312.    GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by Defendant Pepsi USA at GAPT's stores in reliance on Defendant Pepsi USA's promise to pay for the Promotions and is, entitled to recover $138,204.00, less any credits to which Defendant Pepsi USA shows itself entitled, from Defendant Pepsi USA and, therefore, from Defendant PepsiCo.

2600722.1   032596-97802

## AS AND FOR A THIRTY-EIGHTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendants Bottling Group and PepsiCo)

313.     The allegations of Paragraphs 1 through 312 are incorporated herein by reference with the same force and effect as if set forth in full below.

314.     Between December 24, 2010 and November 25, 2015, Defendant Bottling Group on its own behalf and, on information and belief, on behalf of Defendant PepsiCo, initiated Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet.  GAPT accepted the offers resulting in Promotion Transactions.  The agreement of GAPT and Defendant Bottling Group to enter into Promotion Transactions was authenticated via electronic signatures on the applicable Deal Sheet and is memorialized by the Transaction Documents applicable to Promotions conducted by Defendant Bottling Group at GAPT's stores.

315.     In connection with each Promotion conducted by Defendant Bottling Group at GAPT's stores, GAPT actually provided numerous services, including (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion; and (iv) arranging with Defendant Bottling Group to deliver sufficient product to fill shelves and endcaps.

316.     In connection with each Promotion conducted by Defendant Bottling Group GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a Promotion.

317.     In connection with each Promotion Transaction between GAPT and Defendant Bottling, Defendant Bottling Group agreed to pay GAPT certain consideration as set forth in the

58

Transaction Documents.   Among other things, Defendant Bottling Group agreed to reimburse GAPT for any price reductions by GAPT in connection with a Promotion.

318.    Between December 24, 2010 and November 31, 2015, Defendant Bottling Group paid GAPT for certain Promotions run at GAPT's stores, including reimbursing GAPT for price reductions in connection with Promotions.

319.    In many instances, Defendant Bottling Group paid GAPT for those Promotions by offsetting GAPT's claim arising out of the Promotion against the amounts due by GAPT to Defendant Bottling Group.

320.    Defendant Bottling Group has not, however, paid GAPT for all Promotions conducted by Defendant Bottling Group at GAPT's stores.

321.    As of the date of this Complaint, there is due and owing from Defendant Bottling Group the sum of $3,417.00, less any credits to which Defendant Bottling Group shows itself entitled, in connection with Promotions conducted by Defendant Bottling Group at GAPT's stores.

322.    GAPT is entitled to recover the sum of $3,417.00, less any credits to which Defendant Bottling Group shows itself entitled, from Defendant Bottling Group (and, therefore, Defendant PepsiCo) in connection with those Promotions.

## <u>ALTERNATIVELY, AS AND FOR A THIRTY-NINTH CAUSE OF ACTION</u>

### (Unjust Enrichment—Defendants Bottling Group and PepsiCo)

323.    The allegations of Paragraphs 1 through 322 are incorporated herein by reference with the same force and effect as if set forth in full below.

324.    Between December 24, 2010 and November 25, 2015, Defendant Bottling Group conducted numerous Promotions at GAPT's stores.

2600722.1   032596-97802

325.     GAPT expended significant effort and incurred significant expense in connection with the Promotions conducted by Defendant Bottling Group at GAPT's stores.

326.     Defendant Bottling Group benefited from the Promotions it conducted at GAPT's stores, but has not paid GAPT for all of the Promotions it conducted at GAPT's stores.

327.     Defendant Bottling Group  (and, therefore, Defendant PepsiCo) is indebted to GAPT in the amount of $3,417.00, less any credits to which Defendant Bottling Group shows itself entitled, in connection with Promotions Defendant Bottling Group conducted at GAPT's stores, and equity and good conscience demand that GAPT be paid that amount for those Promotions.

### ALTERNATIVELY, AS AND FOR A FORTIETH CAUSE OF ACTION

### (Promissory Estoppel—Defendants Bottling Group and PepsiCo)

328.     The allegations of Paragraphs 1 through 327 are incorporated herein by reference with the same force and effect as if set forth in full below.

329.     In connection with each of the Promotions it conducted at GAPT's stores, Defendant Bottling Group expressly and unambiguously promised to pay GAPT certain consideration for participating in the Promotion.

330.     Relying on Defendant Bottling Group's promise to pay in connection with each such Promotion, GAPT expended significant efforts and incurred significant expenses.

331.     GAPT's reliance on Defendant Bottling Group's promises to pay for Promotions was reasonable, particularly in light of Defendant Bottling Group's history of paying for Promotions it conducted at GAPT's stores.

332.     GAPT has suffered significant injury in the form of the uncompensated efforts it undertook and the unreimbursed expenses it incurred in connection with Promotions conducted by

2600722.1   032596-97802

Defendant Bottling Group at GAPT's stores and in reliance on Defendant Bottling Group's promise to pay for Promotions and is, therefore, entitled to recover $3,419.00, less any credits to which Defendant Bottling Group shows itself entitled, from Defendant Bottling Group and, therefore, from Defendant PepsiCo.

## AS AND FOR A  FORTY-FIRST CAUSE OF ACTION

### (Breach of Contract—Against All Defendants)

333.    The allegations of Paragraphs 1 through 332 are incorporated herein by reference with the same force and effect as if set forth in full below.

334.    After the Petition Date, the Debtors and Defendant PepsiCo, on its own behalf and for the benefit of its subsidiaries, affiliates and affiliated bottlers (collectively, "Pepsi"), which, on information and belief, include all of the Defendants, entered into an Interim Credit Agreement pursuant to the Debtors provided Pepsi with post-petition deposits ("Security Deposits") to secure payment by the Debtors for post-petition purchases of Pepsi beverage products and Frito-Lay branded snack products (collectively, "Deposits").

335.    Subsequently, after they had discontinued the majority of their active operations, on or about February 16, 2016, the Debtors and Pepsi entered into a Post-Petition Deposit and Payable Resolution Agreement ("Deposit Resolution Agreement") pursuant to which the Debtors and Pepsi reconciled the amounts due for sales of beverage products and snack products and provided for the return to the Debtors of the unused portion of the Security Deposit.

336.    The Deposit Resolution Agreement authorized Pepsi to apply a total of $188,429.18 ("Deposit Return Payment") from the Security Deposit to the satisfaction of amounts due from the Debtors for post-petition sales of beverage products and snack products through February 6, 2016.

2600722.1   032596-97802

337.     The Deposit Resolution Agreement also directed Pepsi to refund $2,159,438.51 from the Security Deposit to the Debtors.  Pepsi did, in fact, refund that sum to the Debtors.

338.     The Deposit Resolution Agreement also provided for the holdback by Pepsi of the sum of $8,646.31 ("Holdback Amount") from the Security Deposit to secure the payment of any additional post-petition purchase of beverage products and branded snacks by the Debtors.

339.     Pepsi expressly acknowledged in the Deposit Resolution Agreement that, except for the Deposit Return Payment and the Holdback Amount, it was not owed any additional amounts by the Debtors for post-petition purchases of beverage products and branded snacks.

340.     There were no additional post-petition purchases of beverage products or branded snacks to which the Holdback Amount could be applied, and, for that reason the Debtors are entitled to refund by Pepsi of the Holdback amount.

341.     The Debtors have demanded that Pepsi refund the Holdback Amount, but Pepsi has failed and refused to refund the Holdback Amount.

342.     GAPT is, therefore, entitled to recover a sum in the amount of the Holdback Amount from Pepsi.

## **RESERVATION OF RIGHTS**

343.     During the course of this action, the Committee may learn through discovery or otherwise of additional preferential Transfers made to the Preference Defendants during the preference that were unknown to GAPT as of the date of this Adversary Complaint (the "Additional Transfers")

344.     The Committee intends to avoid and recover on behalf of GAPT all preferential transfers made to the Preference Defendants.  The Committee reserves its right to supplement and

62

amend the allegations contained in this Amended Complaint, including, but not limited to, the right to (i) allege further information regarding the Transfers, and/or (ii) allege Additional Transfers (together, the "Amendments"), that may become known to the Committee at any time during this action through formal discovery or otherwise, and for the Amendments to relate back to this Adversary Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, by virtue of the foregoing acts complained of, Plaintiffs respectfully requests that the Court enter judgment in its favor against the Defendants as follows:

(a)     On the First and Second Causes of Action, judgment against Defendant Frito-Lay determining that each Transfer made to Defendant Frito-Lay during the Preference Period is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547 and that, pursuant to 11 U.S.C. § 550, GAPT is entitled to recover such Transfers in the amount of $13,376,141.00, less any credit to which Defendant Frito-Lay shows itself entitled;

(b)     On the Third and Fourth Causes of Action, judgment against Defendants Pepsi Metro, PepsiCo and Bottling Group determining that each Transfer made to Defendant Pepsi Metro during the Preference Period is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547 and that, pursuant to 11 U.S.C. § 550, GAPT is entitled to recover such Transfers in the amount of $911,738.00, less any credit to which Defendants Pepsi Metro, Pepsi Bottling Group shows themselves entitled;

(c)     On the Fifth and Sixth Causes of Action, judgment against Defendants Pepsi

2600722.1  032596-97802

Hasbrouck, PepsiCo, Pepsi Metro and Bottling Group determining that each Transfer made to Defendant Pepsi Hasbrouck during the Preference Period is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547 and that, pursuant to 11 U.S.C. § 550, GAPT is entitled to recover such Transfers in the amount of $4,930.368.00, less any credit to which Defendants Pepsi Hasbrouck, PepsiCo, Pepsi Metro and Bottling Group show themselves entitled;

(d)     On the Seventh and Eighth Causes of Action, judgment against Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group determining that each Transfer made to Defendant Pepsi Bottling during the Preference Period is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547 and that, pursuant to 11 U.S.C. § 550, GAPT is entitle to recover such Transfers in the amount of $103,920.00, less any credit to which Defendants Pepsi Bottling, Pepsi Metro, PepsiCo and Bottling Group show themselves entitled;

(e)     On the Ninth and Tenth Causes of Action; judgment against Pepsi Pennsauk, PepsiCo, Pepsi Metro and Bottling Group, Pepsi Bottling, and Bottling Group determining that each Transfer made to Defendant Pepsi Pennsauk during the Preference Period is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547 and that, pursuant to 11 U.S.C. § 550, GAPT is entitle to recover such Transfers in the amount of $30,303.00, less any credit to which Defendants Pepsi Pennsauk, Pepsi Metro, PepsiCo and Bottling Group show themselves entitled ;

(f)     On the Eleventh Cause of Action, judgment against Defendant Frito-Lay in the amount of $3,119,439.21, less any offsets or credits to which it shows itself

64

entitled;

(g)     On the Twelfth Cause of Action judgment against Defendant Frito-Lay in the amount of $3,119,439.21, less any offsets or credits to which it shows itself entitled;

(h)     On the Thirteenth Cause of Action, judgment against Defendant Frito-Lay in the amount of $3,119,439.21, less any offsets or credits to which it shows itself entitled;

(i)     On the Fourteenth Cause of Action, judgment against Defendants, Pepsi Metro, Pepsi Bottling, PepsiCo and Bottling Group in the amount of $7,079.00, less any offsets or credits to which they show themselves entitled;

(j)     On the Fifteenth Cause of Action, judgment against Defendants Pepsi Bottling, PepsiCo, Pepsi Metro and Bottling Group in the amount of $7,079.00, less any offsets or credits to which they shows themselves entitled;

(k)     On the Sixteenth Cause of Action, judgment against Defendants Pepsi Bottling, PepsiCo and Bottling Group in the amount of $7,079.00, less any offsets or credits to which it shows itself entitled;

(l)     On the Seventeenth Cause of Action, judgment against Defendant Quaker/Tropicana/Gatorade in the amount of $3,029,238.23, less any offsets or credits to which it shows itself entitled;

(m)     On the Eighteenth Cause of Action, judgment against Defendants Quaker/Tropicana/Gatorade in the amount of $3,029,238.23, less any offsets or credits to which it shows itself entitled;

65

(n)      On the Nineteenth Cause of Action, judgment against Defendant Quaker/Tropicana/Gatorade in the amount of $3,029,238.23, less any offsets or credits to which it shows itself entitled;

(o)      On the Twentieth Cause of Action, judgment against Defendant Stacy's in the amount of $20,847.48, less any offsets or credits to which it shows itself entitled;

(p)      On the Twenty-First Cause of Action, judgment against Defendant Stacy's in the amount of $20,847.48, less any offsets or credits to which it shows itself entitled;

(q)      On the Twenty-Second Cause of Action, judgment against Defendant Stacy's in the amount of $20,847.48, less any offsets or credits to which it shows itself entitled;

(r)      On the Twenty-Third Cause of Action, judgment against Defendants Muller Quaker and PepsiCo in the amount of $34,912.04, less any offsets or credits to which they show themselves entitled;

(s)      On the Twenty-Fourth Cause of Action, judgment against Defendant Muller Quaker and PepsiCo in the amount of $34,912.04, less any offsets or credits to which they show themselves entitled;

(t)      On the Twenty-Fifth Cause of Action, judgment against Defendant Muller Quaker and PepsiCo in the amount of $34,912.04, less any offsets or credits to which they show themseives entitled;

(u)      On the Twenty-Sixth Cause of Action, judgment against Defendants Pepsi Metro, PepsiCo and Bottling Group in the amount of $146,447.00, less any offsets or credits to which they show themselves entitled;

2600722.1   032596-97802

(v)     On the Twenty-Seventh Cause of Action, judgment against Defendants Pepsi

Metro, PepsiCo and Bottling Group in the amount of $146,447.00, less any offsets

or credits to which they show themselves entitled;

(w)     On the Twenty-Eighth Cause of Action, judgment against Defendants Pepsi

Metro, PepsiCo and Bottling Group in the amount of $146,447.00, less any offsets

or credits to which they show themselves entitled;

(x)     On the Twenty-Ninth Cause of Action, judgment against Defendants Pepsi

Hasbrouck; PepsiCo, Pepsi Metro and Bottling Group in the amount of

$819,991.96 less any offsets or credits to which they show themselves entitled;

(y)     On the Thirtieth Cause of Action, judgment against Defendants Pepsi Hasbrouck;

Pepsi Hasbrouck, PepsiCo and Bottling Group in the amount of $819,991.96 less

any offsets or credits to which they show themselves entitled;

(z)     On the Thirty-First Cause of Action, judgment against Defendants Pepsi

Hasbrouck; Pepsi Metro, PepsiCo and Bottling Group in the amount of

$811,346.96 less any offsets or credits to which they show themselves entitled;

(aa)    On the Thirty-Second Cause of Action, judgment against Defendants Pepsi

Group; PepsiCo, Pepsi Metro and Bottling Group in the amount of $97,209.00,

less any offsets or credits to which they show themselves entitled;

(bb)    On the Thirty-Third Cause of Action, judgment against Defendants Pepsi Group,

PepsiCo, Pepsi Metro and Bottling Group in the amount of $97,229.00, less any

offsets or credits to which they show themselves entitled;

(cc)    On the Thirty-Fourth Cause of Action, judgment against Defendants ; Pepsi

67

Group, PepsiCo, Pepsi Metro and Bottling Group in the amount of $97,229.00, less any offsets or credits to which they show themselves entitled;

(dd)   On the Thirty-Fifth Cause of Action, judgment against Defendants Pepsi USA and PepsiCo in the amount of $138,204.00, less any offsets or credits to which they show themselves entitled;

(ee)   On the Thirty-Sixth Cause of Action, judgment against Defendants Pepsi USA and  PepsiCo in the amount of $138,204.00, less any offsets or credits to which they show themselves entitled;

(ff)   On the Thirty-Seventh Cause of Action, judgment against Defendants Pepsi USA and  PepsiCo in the amount of $138,204.00, less any offsets or credits to which they show themselves entitled;

(gg)   On the Thirty-Eighth Cause of Action, judgment against Defendants Bottling Group and PepsiCo in the amount of $3,417.00, less any offsets or credits to which they show themselves entitled;

(hh)   On the Thirty-Ninth Cause of Action, judgment against Defendants Bottling Group and PepsiCo in the amount of $3,417.00, less any offsets or credits to which they show themselves entitled;

(ii)   On the Fortieth Cause of Action, judgment against Defendants Bottling Group and PepsiCo in the amount of $3,417.00, less any offsets or credits to which it shows itself entitled;

(jj)   On the Forty-First Cause of Action, judgment against all Defendants, jointly and severally, in the amount of $8,646.00;

68

(kk)    Costs of suit, including, but not limited to, reasonable attorneys' fees,

(ll)    Pre- and post-judgment interest on all Causes of Action to the fullest extent

allowed by law; and

(mm)    Such other and further relief as this court deems just and equitable.

Dated: Newark, New Jersey
April 16, 2018

**GIBBONS P.C.**


By:  /s/ *David N. Crapo*
        Philip J. Duffy
        David N. Crapo

One Gateway Center
Newark New Jersey
Newark, New Jersey 07102-5310
*Attorneys for Plaintiffs*
*The Official Committee of Unsecured Creditors*
*for the Bankruptcy Estates of The Great Atlantic*
*& Pacific Tea Company, Inc., et al., and The*
*Great Atlantic & Pacific Tea Company, Inc.*

69