Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
jchubak@storchamini.com
- and -
Joseph D. Frank (admitted pro hac vice)
Jeremy C. Kleinman (admitted pro hac vice)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com

*Attorneys for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA<br>COMPANY, INC., et al.,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 15-23007-rdd<br><br>Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA<br>COMPANY, INC., et al.,<br>               Plaintiff,<br><br>    - against -<br><br>PEPSICO, INC.; BOTTLING GROUP, LLC<br>(d/b/a Pepsi Beverages Company and f/d/b/a<br>The Pepsi Bottling Group); FRITO-LAY<br>NORTH AMERICA, INC.; QUAKER SALES<br>AND DISTRIBUTION, INC.; MULLER<br>QUAKER DAIRY, LLC; STACY'S PITA<br>CHIP COMPANY, INC.; PEPSI BOTTLING<br>GROUP, NJ; and PEPSI USA,<br>               Defendants. | Adv. Pro. No. 18-8245-rdd<br><br>**ANSWER** |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc.

The above-named Defendants hereby answer Plaintiff's Second Amended Adversary Complaint [ECF No. 17] ("Complaint"), and aver as follows:

## PRELIMINARY STATEMENT

1.      Defendants admit that GAPT has been a supermarket grocery store chain, with stores located in New York and New Jersey, and that the Debtors filed for bankruptcy protection. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1.

2.      Defendants admit that as the Debtors' bankruptcy filings approached, the Debtors continued operations and continued to purchase goods from Defendants Frito-Lay North America, Inc. ("Frito-Lay") and Bottling Group, LLC ("Bottling Group," and together with Frito-Lay, the "Preference Defendants"), as they had done in the past, and that Plaintiff now seeks to recover payments from the Preference Defendants.  Defendants also admit that, prior to the Debtors' bankruptcy filings, certain of the Preference Defendants requested that certain of their invoices be paid in fewer days.  Defendants otherwise deny the allegations in Paragraph 2.

3.      Defendants admit that for a number of years, GAPT participated in promotions involving Defendants PepsiCo Inc. ("PepsiCo"), Bottling Group, Frito-Lay, Quaker Sales and Distribution, Inc. ("Quaker"), and Muller Quaker Dairy, LLC ("Muller Quaker"), and that certain promotions were undertaken prior to or after the Debtors' bankruptcy filings and that, to the extent any of the foregoing Defendants are found to owe any moneys to the Debtors, Defendants are entitled to offset any such amounts against amounts owed by the Debtors to said Defendants. Defendants deny the allegations of Paragraph 3.  Answering further, any promotion involving Stacy's Pita Chip-branded food products would have been handled by Frito-Lay, rather than Defendant Stacy's Pita Chip Company, Inc. ("Stacy's").

## PARTIES

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4.

5.      Defendants admit the allegations in Paragraph 5.

6.      Defendants deny the allegation in Footnote 2 to Paragraph 6, that "Terms defined herein shall have the meaning ascribed to them in the GSA." Defendants otherwise admit the allegations in Paragraph 6.

7.      The allegations in Paragraph 7 are conclusions of law as to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7.

8.      Defendants admit that the Debtors have elected to prosecute this adversary proceeding. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8.

9.      Defendants admit the allegations in Paragraph 9.

10.     Defendants admit that Bottling Group is a limited liability company organized under the laws of the State of Delaware. Defendants otherwise deny the allegations in Paragraph 10. Answering further, Bottling Group has a principal place of business located at 1111 Westchester Avenue, White Plains, New York 10604.

11.     Defendants admit the allegations in Paragraph 11.

12.     Defendants admit the allegations in Paragraph 12.

13.     Defendants admit that Stacy's is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 663 North Street, Randolph, Massachusetts, and another place of business located at Attn: CFS, 1100 Reynolds Boulevard, Winston Salem, North Carolina 27105. Defendants otherwise deny the allegations in

Paragraph 13, and further state that Stacy's operates a place of business on the third floor of 1100
Reynolds Boulevard, Winston Salem, North Carolina 27105.

14.    Defendants admit the allegations in Paragraph 14.

15.    Defendants admit Pepsi Bottling Group, NJ ("Pepsi NJ") has been named as a
Defendant in the Complaint.  Defendants otherwise deny the allegations in Paragraph 15.

16.    Defendants admit that Pepsi USA ("Pepsi USA") has been named as a Defendant in
the Complaint.  Defendants otherwise deny the allegations in Paragraph 16.

## JURISDICTION AND VENUE

17.    Defendants admit the allegations in Paragraph 17.

18.    Defendants admit the allegations in Paragraph 18.

19.    Defendants admit that as to the 5th through 25th causes of action set forth in the
Complaint, this adversary proceeding is a core proceeding, at least as to claims arising from
postpetition "Promotions."  Answering further, the 26th cause of action does not relate to any
postpetition Promotions.  Answering further, to the extent that the term "Promotions," as defined in
Paragraph 38 of the Complaint, refers to a promotion conducted pursuant to a "Promotional
Agreement," Defendants deny that there are any claims arising from postpetition Promotions.
Pursuant to Rule 7012(b), Defendants state that they consent to entry of final orders or judgment
by the Bankruptcy Court with respect to the 5th through 25th causes of action set forth in the
Complaint.

20.    Defendants admit the allegations in Paragraph 20.

21.    Defendants admit the allegations in Paragraph 21.  Answering further, Plaintiff is
not entitled to recover under the 1st through 4th causes of action set forth.  Pursuant to Rule
7012(b), Defendants state that they consent to entry of final orders or judgment by the Bankruptcy
with respect to the 1st through 4th causes of action set forth in the Complaint.

22.     Defendants admit the allegations in Paragraph 22.  Answering further, Plaintiff is not entitled to recover under the 5th through 25th causes of action.

23.     Defendants admit the allegations in Paragraph 23.

## FACTS

**A.**     **Case Background.**

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

**B.**     **Facts Generally Relevant to the Preference Counts of the Complaint.**

26.     Defendants admit that GAPT operated supermarkets under a variety of trade names, including A&P, Waldbaum's, SuperFresh, Pathmark, Food Basis, The Food Emporium, Best Cellars, and A&P Liquors.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26.

27.     Defendants admit the allegations in Paragraph 27.

28.     Defendants admit the allegations in Paragraph 28, except to deny that the Transfers at issue constitute "Preference Payments."

29.     Defendants admit the allegations in Paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30.

31.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31.  Answering further, to the extent that the Preference Defendants owed any amounts to the Debtors as of the time each alleged Transfer was received, the obligations of the Debtors paid by those Transfers were secured by rights of offset and/or recoupment to the full extent available.  Furthermore, to the extent that any of the obligations paid by a Transfer would qualify for administrative priority treatment under section 503(b)(9) of the

Bankruptcy Code, the Preference Defendant would be entitled to payment in full from available funds and from the proceeds of avoidance actions and other unencumbered assets. Finally, a chapter 7 trustee would not have been reasonably expected to incur over $30 million in professional fees in order to liquidate the assets of the Debtors' estates, which depleted the funds available to pay claims under section 503(b)(9) of the Bankruptcy Code.

32.     Defendants admit that between May 4, 2015 and the Petition Date, the Preference Defendants revised the credit terms offered to the Debtors. Defendants otherwise deny the allegations in Paragraph 32.

33.     Defendants admit that the Preference Defendants requested payment of invoices in fewer than 30 days and, subsequently, between May 15, 2015 and June 25, 2015, requested that the timing of payment of invoices be further reduced. Defendants otherwise deny the allegations in Paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.

35.     Defendants admit that the Debtors made certain payments during the Preference Period to the Preference Defendants to pay invoices then due. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 35.

36.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.

37.     Defendants admit that by letters dated December 14, 2016, the Committee sent advance demand letters to each Preference Defendant inviting an exchange of information regarding any potential defenses and that, despite the Preference Defendants' having provided information substantiating their defenses, the parties were unable to resolve the claims asserted by

the Committee.    Defendants lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations in Paragraph 37.

**C.     Facts Generally Relevant to the Debtors' Accounts Receivable or Promotional Claims
against the Promotion Defendants.**

38.    Defendants admit the allegations in Paragraph 38.

39.    Defendants deny the allegations in Paragraph 39.

40.    Defendants admit that even after expiration of the written Promotional Agreements

referenced in the Complaint, certain of the Promotion Defendants participated in promotions at

GAPT's stores between the dates of expiration of the Promotional Agreements and the date the last

of the GAPT stores were closed in 2015.  To the extent that "Promotions" is defined in Paragraph

38 of the Complaint to refer exclusively to a promotion conducted pursuant to the terms of a

Promotional Agreement, Defendants deny the allegations in Paragraph 40.  Defendants otherwise

deny the allegations in Paragraph 40.

41.    Defendants admit that Frito-Lay developed new products and participated in

promotions at GAPT stores.  To the extent that "Promotions" is defined in Paragraph 38 of the

Complaint to refer exclusively to a promotion conducted pursuant to the terms of a Promotional

Agreement, Defendants deny the allegations in the first sentence of Paragraph 41.  Defendants

otherwise deny the allegations in Paragraph 41.

42.    Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in Paragraph 42.  Answering further, Defendants admit that, between 2011

and 2016, Defendants made millions of dollars of payments to the Debtors relating to the Debtors'

participations in Promotions (as defined in Paragraph 38) and other promotions.

43.    Defendants admit that in connection with certain promotions from and after

December 24, 2010, the Debtor and specific Defendants executed Deal Sheets and the Debtors

issued invoices or Account Reports.  Defendants otherwise deny the allegations in Paragraph 43. Answering further, during certain periods following December 24, 2010, certain Defendants entered into written promotional contracts with certain Debtors.  However, in 2015, the Debtors departed from prior practice and declined to enter into new contracts with one or more Defendants.

44.    Defendants admit that, from time to time, one or more Defendants would communicate the terms of a specific promotion through Demandtec and that if GAPT accepted the offer, it would do so electronically and Demandtec would record the time and date of offer and acceptance on the applicable Deal Sheet.  Defendants otherwise deny the allegations in Paragraph 44.

45.    Defendants deny the allegations in Paragraph 45.  Answering further, written agreements between certain Defendants and certain Debtors further governed undertakings between the parties at times after December 24, 2010.

46.    Defendants deny the allegations in Paragraph 46.  Answering further, Defendants admit that, in connection with some promotions conducted by Defendants at GAPT's stores, GAPT actually provided services that may have included one or more of the following tasks: (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the promotion; and (iv) arranging with Frito-Lay to deliver sufficient product to fill shelves and endcaps.

47.    Defendants deny the allegations in Paragraph 47.  Answering further, although certain promotions required GAPT to incur advertising or other expenses, not every promotion so required.

48.    Defendants admit that certain promotions agreed upon between Defendants and GAPT contemplated a price-reduction by GAPT, and that under those agreed-upon circumstances, GAPT would reduce the price charged to its customers and Defendants would reimburse GAPT for

8

such a reduction to the extent required.  Defendants otherwise deny the allegations in Paragraph 48.

49.    Defendants admit that they are unaware of any instance in which they informed GAPT that they would not pay for promotions, except insofar as written contracts in place during a portion of the specified time conditioned payment on GAPT's performance of its contractual obligations and therefore provided GAPT with notice that, under certain circumstances, GAPT would not be paid for Promotions.  Answering further, prior to January, 2016, the Debtors refused to sign a new written contract with one or more Defendants, changing the parties' relationship.  Defendants otherwise deny the allegations in Paragraph 49.

50.    Defendants deny the allegations in Paragraph 50. Answering further, Defendants state that certain contracts between Defendants and the Debtors expressly conditioned payment upon performance by the Debtors of their obligations to Defendants.  Answering further, prior to January, 2016, the Debtors refused to sign a new written contract with one or more Defendants, changing the parties' relationship.

51.    Defendants admit that certain Promotion Defendants continued to pay for promotions they ran at GAPT's stores as late as January 28, 2016, and that in many cases promotions were paid for by offsetting GAPT's claims arising out of promotion against their payables to the applicable Promotion Defendant.  Defendants further admit that Frito-Lay made its last "payment" for a promotion through such an offset, in the amount of $115,235.00 on November 19, 2015.  To the extent that "Promotions" is defined in Paragraph 38 of the Complaint to refer exclusively to a promotion conducted pursuant to the terms of a Promotional Agreement, Defendants deny the allegations in the first and third sentences of Paragraph 51.  Defendants otherwise deny the allegations in Paragraph 51.

52.    Defendants deny the allegations in Paragraph 52.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Avoidance of Preferential Transfers—11 U.S.C. § 547—As to Defendant Frito-Lay)**

53.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     Defendants admit the allegations in Paragraph 54.

55.     Defendants admit the allegations in Paragraph 55.

56.     Defendants admit the allegations in Paragraph 56.

57.     Because there is no section 110(10) of title 11 of the United States Code, Defendants deny the allegations in Paragraph 57.

58.     Defendants admit the allegations in Paragraph 58.

59.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 59, and deny the allegations in the second sentence of Paragraph 59.

60.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60.  Answering further, to the extent that the Preference Defendants owed any amounts to the Debtors as of the time each alleged Transfer was received, the obligations of the Debtors paid by those Transfers were secured by rights of offset and/or recoupment to the full extent available.  Furthermore, to the extent that any of the obligations paid by a Transfer would qualify for administrative priority treatment under section 503(b)(9) of the Bankruptcy Code, the Preference Defendant would be entitled to payment in full from available funds and from the proceeds of avoidance actions and other unencumbered assets.  Finally, a chapter 7 trustee would not have been reasonably expected to incur over $30 million in professional fees in order to liquidate the assets of the Debtors' estates, which depleted the funds available to pay claims under section 503(b)(9) of the Bankruptcy Code.

10

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants admit the allegations in Paragraph 62.

63.     Defendants deny the allegations in Paragraph 63.

## AS AND FOR A SECOND CAUSE OF ACTION

**(Recovery of Property—11 U.S.C. § 550—As to Defendant Frito-Lay)**

64.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     The allegations in Paragraph 65 are conclusions of law as to which no response is required.

66.     Defendants admit the allegations in Paragraph 66.

67.     Defendants deny the allegations in Paragraph 67.

## AS AND FOR A THIRD CAUSE OF ACTION

**(Avoidance of Preferential Transfers—11 U.S.C. § 547—As to Defendant Bottling Group)**

68.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69.     Defendants admit the allegations in Paragraph 69.

70.     Defendants admit the allegations in Paragraph 70.

71.     Defendants admit the allegations in Paragraph 71.

72.     Because there is no section 110(10) of title 11 of the United States Code, Defendants deny the allegations in Paragraph 72.

73.     Defendants admit the allegations in Paragraph 73.

74.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 74.  Defendants deny the allegations in the second sentence of Paragraph 74.

75.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75. Answering further, to the extent that the Preference Defendants owed any amounts to the Debtors as of the time each alleged Transfer was received, the obligations of the Debtors paid by those Transfers were secured by rights of offset and/or recoupment to the full extent available.  Furthermore, to the extent that any of the obligations paid by a Transfer would qualify for administrative priority treatment under section 503(b)(9) of the Bankruptcy Code, the Preference Defendant would be entitled to payment in full from available funds and from the proceeds of avoidance actions and other unencumbered assets.  Finally, a chapter 7 trustee would not have been reasonably expected to incur over $30 million in professional fees in order to liquidate the assets of the Debtors' estates, which depleted the funds available to pay claims under section 503(b)(9) of the Bankruptcy Code.

76.      Defendants deny the allegations in Paragraph 76.

77.      Defendants admit the allegations in Paragraph 77.

78.      Defendants deny the allegations in Paragraph 78.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Recovery of Property—11 U.S.C. § 550— As to Defendant Bottling Group)

79.      Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.      The allegations in Paragraph 80 are conclusions of law as to which no response is required.

81.      Defendants admit the allegations in Paragraph 81.

82.      Defendants deny the allegations in Paragraph 82.

## <u>AS AND FOR A FIFTH CAUSE OF ACTION</u>

### (Breach of Express and Implied Contract—Defendant Frito-Lay)

83.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84.     Defendants admit that, at times between December 24, 2010 and November 25, 2015, Frito-Lay initiated Promotion Transactions with GAPT by making offers electronically to GAPT through DemandTec via a Deal Sheet and that GAPT accepted certain of those offers and that certain of those offers were memorialized at least in part through Transaction Documents. Defendants otherwise deny the allegations in Paragraph 84.

85.     Defendants admit that, in connection with some of the Promotions (as defined in Paragraph 38 of the Complaint) and promotions (not otherwise falling within such definition) conducted by Frito-Lay at GAPT's stores, GAPT actually provided services that may have included one or more of the following tasks: (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion or promotion; and (iv) arranging with Frito-Lay to deliver sufficient product to fill shelves and endcaps.  Defendants otherwise deny the allegations in Paragraph 85.

86.     Defendants admit that, in connection with some of the Promotions and promotions conducted by Frito-Lay at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 86.

87.     Defendants admit that, under certain circumstances, Frito-Lay agreed to reimburse GAPT for price reductions by GAPT in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 87.

88.     Defendants admit the allegations in Paragraph 88.

89.     Defendants admit the allegations in Paragraph 89.

90.     Defendants admit that Frito-Lay has not paid GAPT for all Promotions conducted at GAPT's stores.  Answering further, Defendants state that written agreements between Frito-Lay and GAPT that were in place for a portion of the time at issue excused payment under certain circumstances and that certain promotions were conducted at times during which the Debtors owed money to Frito-Lay.

91.     Defendants admit that, to the extent that Frito-Lay is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Frito-Lay shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 91.

92.     Defendants admit that, to the extent that Frito-Lay is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Frito-Lay shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 92.

## ALTERNATIVELY, AS AND FOR A SIXTH CAUSE OF ACTION

### (Unjust Enrichment—Defendant Frito-Lay)

93.      Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 92 of the Complaint as if fully set forth herein.

94.     Defendants admit that at times between December 24, 2010 and November 25, 2015, Frito-Lay conducted Promotions at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 94.

95.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95.

96.     Defendants admit that Frito-Lay benefited from certain Promotions conducted at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 96.

97.     Defendants admit that, to the extent that Frito-Lay is obligated to pay any amount to the Debtors on account of any promotions, that amount must be reduced by any credits to which Frito-Lay shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 97.

## ALTERNATIVELY, AS AND FOR A SEVENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Frito Lay)

98.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99.     Defendants deny the allegations in Paragraph 99.  Answering further, certain of Frito-Lay's payment obligations were addressed by one or more contracts with the Debtors, which contracts conditioned those obligations on certain performance obligations imposed upon the Debtors.

100.    Defendants deny that, with respect to each and every Promotion involving Frito-Lay, the Debtors expended significant efforts and incurred significant expenses.  Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 100.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants admit that, to the extent that Frito-Lay is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Frito-Lay shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 102.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Bottling Group)

103.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 102 of the Complaint as if fully set forth herein.

104.    Defendants admit that between December 24, 2010 and November 25, 2015, Bottling Group initiated Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet and that GAPT accepted certain of those offers and that certain of those offers were memorialized at least in part through Transaction Documents. Defendants otherwise deny the allegations in Paragraph 104.

105.    Defendants admit that, in connection with some of the Promotions (as defined in Paragraph 38 of the Complaint) and promotions (not otherwise falling within such definition) conducted by Bottling Group at GAPT's stores, GAPT actually provided services that may have included one or more of the following tasks: (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion or promotion; and (iv) arranging with Bottling Group to deliver sufficient product to fill shelves and endcaps.  Defendants otherwise deny the allegations in Paragraph 105.

106.    Defendants admit that, in connection with some of the promotions conducted by Bottling Group at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 106.

107.    Defendants admit that, under certain circumstances, Bottling Group agreed to reimburse GAPT for price reductions by GAPT in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 107.

108.    Defendants admit the allegations in Paragraph 108.

109.    Defendants admit the allegations in Paragraph 109.

110.    Defendants admit the allegations in Paragraph 110, except to state that under certain circumstances, payment has been excused based on reasons that include (i) the lack of a valid

contract, (ii) the Debtors' failure to pay for goods purchased; and (iii) the Debtors' failure to perform all obligations under any applicable contract.

111.    Defendants admit that, to the extent that Bottling Group is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Bottling Group shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 111.

112.    Defendants admit that, to the extent that Bottling Group is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Bottling Group shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 112.

## ALTERNATIVELY, AS AND FOR A NINTH CAUSE OF ACTION

### (Unjust Enrichment—Defendant Bottling Group)

113.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 112 of the Complaint as if fully set forth herein.

114.    Defendants admit that at times between December 24, 2010 and November 25, 2015, Bottling Group conducted promotions at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 114.

115.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115.

116.    Defendants admit that Bottling Group benefited from certain Promotions conducted at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 116.

117.    Defendants admit that, to the extent that Bottling Group is obligated to pay any amount to the Debtors on account of any promotions, that amount must be reduced by any credits to which Bottling Group shows itself entitled.   Defendants otherwise deny the allegations in Paragraph 117.

## ALTERNATIVELY, AS AND FOR A TENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Bottling Group)

118.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 117 of the Complaint as if fully set forth herein.

119.    Defendants deny the allegations in Paragraph 119.

120.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120.

121.    Defendants admit that, to the extent that Bottling Group promised to pay for a specific Promotion (as defined in paragraph 38 of the Complaint) or a promotion (that falls outside of the definition set forth in paragraph 38 of the Complaint, such reliance was reasonable. Defendants otherwise deny the allegations in Paragraph 121.

122.    Defendants admit that, to the extent that Bottling Group is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Bottling Group shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 122.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### Breach of Express and Implied Contract—Defendant Pepsi NJ

123.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 122 of the Complaint as if fully set forth herein

124.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 124.

125.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 125.

126.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 126.

127.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 127.

128.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 128.

129.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 129.

130.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 130.

131.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 131.

132.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 132.

## **ALTERNATIVELY, AS AND FOR A TWELFTH CAUSE OF ACTION**

### **(Unjust Enrichment—Defendant Pepsi NJ)**

133.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 132 of the Complaint as if fully set forth herein.

134.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 134.

135.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 135.

136.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 136.

137.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 137.

## **ALTERNATIVELY, AS AND FOR A THIRTEENTH CAUSE OF ACTION**

### **(Promissory Estoppel—Defendant Pepsi NJ)**

138.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 137 of the Complaint as if fully set forth herein.

139.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 139.

140.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 140.

141.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 141.

142.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi NJ and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi NJ.  As a result, Defendants deny the allegations in Paragraph 142.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Pepsi USA)

143.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 143 of the Complaint as if fully set forth herein.

144.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 144.

145.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 145.

146.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 146.

147.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 147.

148.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 148.

149.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 149.

150.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 150.

151.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 151.

152.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 152.

## ALTERNATIVELY, AS AND FOR A FIFTEENTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Pepsi USA)

153.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 152 of the Complaint as if fully set forth herein.

154.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 154.

155.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 155.

156.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 156.

157.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 157.

## ALTERNATIVELY, AS AND FOR A SIXTEENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Pepsi USA)

158.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 157 of the Complaint as if fully set forth herein.

159.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 159.

160.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 160.

161.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 161.

162.    Despite diligent effort, Defendants have been unable to identify the entity referred to as Pepsi USA and the Complaint lacks sufficient detail from which to identify the transaction(s) at issue that relate to Pepsi USA.  As a result, Defendants deny the allegations in Paragraph 162.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Quaker Sales)

163.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 162 of the Complaint as if fully set forth herein.

164.    Defendants admit that between December 24, 2010 and November 25, 2015, Quaker initiated Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet and that GAPT accepted certain of those offers and that certain of those offers were memorialized at least in part through Transaction Documents. Defendants otherwise deny the allegations in Paragraph 164.

165.    Defendants admit that, in connection with some of the Promotions (as defined in Paragraph 38 of the Complaint) and promotions (not otherwise falling within such definition) conducted by Quaker at GAPT's stores, GAPT actually provided services that may have included one or more of the following tasks: (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion or promotion; and (iv) arranging with Quaker to deliver sufficient product to fill shelves and endcaps.  Defendants otherwise deny the allegations in Paragraph 165.

166.    Defendants admit that, in connection with some of the promotions conducted by Quaker at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising

expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 166.

167.    Defendants deny the allegations in Paragraph 167.

168.    Defendants admit the allegations in Paragraph 168.

169.    Defendants admit the allegations in Paragraph 169.

170.    Defendants deny the allegations in Paragraph 170.

171.    Defendants admit that, to the extent that Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Quaker shows itself entitled. Defendants otherwise deny the allegations in Paragraph 171.

172.    Defendants admit that, to the extent that Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Quaker shows itself entitled. Defendants otherwise deny the allegations in Paragraph 172.

## **ALTERNATIVELY, AS AND FOR AN EIGHTEENTH CAUSE OF ACTION**

### **(Unjust Enrichment—Defendant Quaker Sales)**

173.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 172 of the Complaint as if fully set forth herein.

174.    Defendants admit the allegations in Paragraph 174.

175.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 175.

176.    Defendants admit that Quaker benefited from certain Promotions conducted at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 176.

177.     Defendants admit that, to the extent that Quaker is obligated to pay any amount to the Debtors on account of any promotions, that amount must be reduced by any credits to which Quaker shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 177.

## ALTERNATIVELY, AS AND FOR A NINETEENTH CAUSE OF ACTION

### (Promissory Estoppel—Defendant Quaker Sales)

178.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 177 of the Complaint as if fully set forth herein.

179.     Defendants admit that Quaker promised to pay GAPT certain consideration for participating in certain of the Promotions conducted at GAPT stores.   Defendants otherwise deny the allegations in Paragraph 179.

180.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 180.

181.     Defendants admit that, to the extent that Quaker made a promise to pay GAPT specified consideration for a Promotion, GAPT's reliance on such a promise was reasonable. Defendants otherwise deny the allegations in Paragraph 181.

182.     Defendants admit that, to the extent that Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Bottling Group shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 182.

## AS AND FOR AN TWENTIETH CAUSE OF ACTION

### (Breach of Express and Implied Contract—Defendant Stacy's)

183.     Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 182 of the Complaint as if fully set forth herein.

184.    Defendants deny the allegations in Paragraph 184.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

185.    Defendants deny the allegations in Paragraph 185.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

186.    Defendants deny the allegations in Paragraph 186.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

187.    Defendants deny the allegations in Paragraph 187.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

188.    Defendants deny the allegations in Paragraph 188.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

189.    Defendants deny the allegations in Paragraph 189. Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

190.    Defendants deny the allegations in Paragraph 190.    Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

191.    Defendants admit that, to the extent that Stacy's is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Stacy's shows itself entitled. Defendants otherwise deny the allegations in Paragraph 191.

192.    Defendants admit that, to the extent that Stacy's is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Stacy's shows itself entitled. Defendants otherwise deny the allegations in Paragraph 192.

## ALTERNATIVELY, AS AND FOR A TWENTY-FIRST CAUSE OF ACTION

### (Unjust Enrichment—Defendant Stacy's)

193.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 192 of the Complaint as if fully set forth herein.

194.    Defendants deny the allegations in Paragraph 194. Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

195.    Defendants deny the allegations in Paragraph 195. Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

196.    Defendants admit that Stacy's benefited from certain Promotions conducted at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 196.

197.    Defendants admit that, to the extent that Stacy's is obligated to pay any amount to the Debtors on account of any promotions, that amount must be reduced by any credits to which Stacy's shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 197.

## ALTERNATIVELY, AS AND FOR A TWENTY-SECOND CAUSE OF ACTION

### (Promissory Estoppel—Defendant Stacy's)

198.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 197 of the Complaint as if fully set forth herein.

199.   Defendants deny the allegations in Paragraph 199.   Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

200.   Defendants deny the allegations in Paragraph 200.   Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

201.   Defendants deny the allegations in Paragraph 201.   Answering further, the participant in, or intended beneficiary of, certain promotions attributed to Stacy's by Plaintiff was actually Frito-Lay.

202.   Defendants admit that, to the extent that Stacy's is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Stacy's shows itself entitled. Defendants otherwise deny the allegations in Paragraph 202.

## AS AND FOR A TWENTY-THIRD CAUSE OF ACTION

**(Breach of Express and Implied Contract—Defendants Muller Quaker and PepsiCo)**

203.   Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 202 of the Complaint as if fully set forth herein.

204.   Defendants admit that between December 24, 2010 and November 25, 2015, Muller Quaker initiated Promotion Transactions with GAPT by making offers electronically to GAPT through Demandtec via a Deal Sheet and that GAPT accepted certain of those offers and that certain of those offers were memorialized at least in part through Transaction Documents. Defendants otherwise deny the allegations in Paragraph 204.

205.   Defendants admit that, in connection with some of the Promotions (as defined in Paragraph 38 of the Complaint) and promotions (not otherwise falling within such definition) conducted by Bottling Group at GAPT's stores, GAPT actually provided services that may have

included one or more of the following tasks: (i) store set-up, (ii) arranging for advertising; (iii) ensuring that sufficient product was stocked at each store participating in the Promotion or promotion; and (iv) arranging with Muller Quaker to deliver sufficient product to fill shelves and endcaps.  Defendants otherwise deny the allegations in Paragraph 205.

206.    Defendants admit that, in connection with some of the Promotions and promotions conducted by Frito-Lay at GAPT's stores, GAPT incurred out-of-pocket expenses, such as: (i) advertising expenses; (ii) expenses incurred in positioning product; and (iii) loss of margin resulting from discounting prices in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 206.

207.    Defendants admit that, under certain circumstances, Muller Quaker agreed to reimburse GAPT for price reductions by GAPT in connection with a promotion.  Defendants otherwise deny the allegations in Paragraph 207.

208.    Defendants admit the allegations in Paragraph 208.

209.    Defendants admit the allegations in Paragraph 209.

210.    Defendants admit the allegations in Paragraph 210.

211.    Defendants admit that, to the extent that Muller Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Muller Quaker shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 211.

212.    Defendants admit that, to the extent that Muller Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Muller Quaker shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 212.

## ALTERNATIVELY, AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION

### (Unjust Enrichment—Defendants Muller Quaker and PepsiCo)

213.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 212 of the Complaint as if fully set forth herein.

214.    Defendants admit the allegations in Paragraph 214.

215.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 215.

216.    Defendants admit that Muller Quaker benefited from certain Promotions conducted at GAPT's stores.  Defendants otherwise deny the allegations in Paragraph 216.

217.    Defendants admit that, to the extent that Muller Quaker or PepsiCo are found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Muller Quaker or PepsiCo show themselves entitled.  Defendants otherwise deny the allegations in Paragraph 217.

## ALTERNATIVELY, AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION

### (Promissory Estoppel—Defendants Muller Quaker and PepsiCo)

218.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 218 of the Complaint as if fully set forth herein.

219.    Defendants admit that Muller Quaker promised to pay GAPT certain consideration for participating in certain of the promotions conducted at GAPT stores.  Defendants otherwise deny the allegations in Paragraph 219.

220.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 220.

221.    Defendants admit that, to the extent that Muller Quaker expressly promised to pay GAPT certain consideration for participation in a promotion, reliance on that promise was reasonable.  Defendants otherwise deny the allegations in Paragraph 221.

222.    Defendants admit that, to the extent that Muller Quaker is found to owe any amounts to the Debtors, those amounts must be reduced by any credits to which Muller Quaker shows itself entitled.  Defendants otherwise deny the allegations in Paragraph 222.

## AS AND FOR A TWENTY-SIXTH CAUSE OF ACTION

### (Breach of Contract—Against All Defendants)

223.    Defendants hereby reallege and incorporate by reference their responses to Paragraphs 1 through 222 of the Complaint as if fully set forth herein.

224.    Defendants admit that after the Petition Date, the Debtors and PepsiCo, on its own behalf and for the benefit of its subsidiaries, affiliates and affiliated bottlers (collectively, "Pepsi"), entered into an Interim Credit Agreement pursuant to which the Debtors provided Pepsi with post-petition deposits ("Security Deposits") to secure payment by the Debtors for post-petition purchases of Pepsi beverage products and Frito-Lay snack products (collectively, "Deposits"). Defendants otherwise deny the allegations in Paragraph 224.

225.    Defendants admit the allegations in Paragraph 225.

226.    Defendants admit the allegations in Paragraph 226.

227.    Defendants admit the allegations in Paragraph 227.

228.    Defendants admit the allegations in Paragraph 228.

229.    Defendants admit the allegations in Paragraph 229.

230.    Defendants admit the allegations in Paragraph 230.  Answering further, Defendants are currently making arrangements to refund the Holdback Amount to the Debtors.

231.    Defendants admit that by filing the Complaint, Plaintiff has demanded the return of the Holdback Amount, and that Pepsi has not repaid the same.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 231. Answering further, Defendants are currently making arrangements to refund the Holdback Amount to the Debtors.

232.    Defendants admit the allegations in Paragraph 232. Answering further, Defendants are currently making arrangements to refund the Holdback Amount to the Debtors.

## RESERVATION OF RIGHTS

233.    To the extent Paragraph 233 requires a response, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 233.

234.    Defendants deny that Plaintiff has the right to supplement or amend the Complaint, except as permitted by the Scheduling Order and Rule 15.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Ordinary Course of Business – 11 U.S.C. § 547(c)(2))

Those Transfers that Defendants received on account of antecedent debt were in payment of debts incurred in the ordinary course of business between the Debtors and the applicable Defendant, paid in the ordinary course of business between the Debtors and the applicable Defendant, and/or paid according to ordinary business terms.  As a result, pursuant to 11 U.S.C. § 547(c)(2), these Transfers may not be avoided or recovered from the Defendants.

### SECOND AFFIRMATIVE DEFENSE
### (Subsequent New Value – 11 U.S.C. § 547(c)(4))

After receiving one or more of the Transfers as alleged in the Complaint, the applicable Defendant provided products to the Debtors (a) for which payment was not secured by an otherwise unavoidable security interest, and (b) on account of which the Debtors did not make an

otherwise unavoidable transfer to, or for the benefit of, the applicable Defendant.  Under 11 U.S.C. § 547(c)(4), Plaintiff may not avoid or recover the Transfers at issue to the extent of this new value provided by the Defendants.

### THIRD AFFIRMATIVE DEFENSE
#### (Failure to State a Claim upon which Relief May Be Granted - Fed. R. Bankr. P. 7008, 7012- Counts I through XXV)

Plaintiff has failed to allege sufficient facts in the First through Twenty-Fifth Counts of its Complaint to show the right to relief alleged is more than speculative.  Moreover, Plaintiff fails to "state a claim that is plausible on its face" (*see, e.g. Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1965, 1974 (2007)).  The allegations set forth in the First through Twenty-Fifth Counts fail to identify the specific debtor or debtors involved, the dates on which obligations were incurred, relying, in the Fifth Through Twenty-Fifth Counts, upon an approximate five-year range, and fail to identify any specific transfers or obligations at issue, instead providing summary balances. Therefore, the allegations of the Complaint do not meet the pleading requirements of Rule 8(a)(2), made applicable Rule 7008, and the First through Twenty-Fifth Counts asserted in the Complaint should be dismissed pursuant to Rule 12(b)(6), made applicable by Rule 7012(b).

### FOURTH AFFIRMATIVE DEFENSE
#### (Statute of Limitations - Counts I through IV)

Because the Debtors filed petitions for bankruptcy protection on July 19, 2015, the deadline for the assertion of claims under Sections 547 and 550 of the Bankruptcy Code was July 19, 2017.  The Debtors' First through Fourth Causes of Action, filed on April 16, 2018, are each untimely under 11 U.S.C. § 546 and therefore fail to state a claim upon which relief may be granted.

## FIFTH AFFIRMATIVE DEFENSE
### (Statute of Limitations - Counts V through XXV)

In the Fifth through Twenty-Fifth Counts of the Complaint, Plaintiff alleges that certain amounts are due for promotions taking place between December 24, 2010 and various dates in either 2015 or 2016, without providing any information from which to discern the specific date or dates on which such promotions took place and the subject amounts became due. To the extent Plaintiff seeks to recover any amounts due for promotions taking place prior to April 16, 2012, Plaintiff is barred under the statute of limitations under the laws of the state of New York from recovering on account of such promotions under claims of either express or implied contract, estoppel or unjust enrichment.

## SIXTH AFFIRMATIVE DEFENSE
### (Setoff - Counts V through XXV)

Defendants are entitled to set off any debts owed to them against Plaintiff's claims against such Defendants set forth in the Fifth through Twenty-Fifth Counts of the Complaint. In connection therewith, the Defendants hereby incorporate by reference their filed claims in the Debtors' bankruptcy cases.

## SEVENTH AFFIRMATIVE DEFENSE
### (Recoupment - Counts V through XXV)

To the extent that any of Plaintiff's claims in the Fifth through Twenty-Fifth Counts of the Complaint arise from an actual or implied contract, and Plaintiff owes any money to Defendants under such contract, the Defendant owed money is entitled to recoup such amounts from any debts owed by it to Plaintiff thereunder.

## EIGHTH AFFIRMATIVE DEFENSE
### (Laches - Counts V through XXV)

To the extent that Plaintiff has failed to timely assert claims against Defendants due to negligence or other cause, Plaintiff is barred by the doctrine of laches from collecting from Defendants under the Complaint.

## NINTH AFFIRMATIVE DEFENSE
### (Breach of Contract - Counts V, VIII, XI, XIV, XVII, XX and XXIII)

In the Fifth, Eighth, Eleventh, Fourteenth, Seventeenth, Twentieth, Twenty-Third Counts of its Complaint, Plaintiff alleges the existence of express and implied contracts between the Debtors and either (a) one or more Defendants, or (b) an additional party with whom one or more Defendants are alleged to share liability. Specifically, Plaintiff alleges, despite the absence of a written contract signed by Plaintiff and specific Defendants, that an actual or implied contract was nevertheless formed.  Except where stated otherwise, the Defendants dispute the allegation that either an actual or implied contract has been formed.  Nevertheless, to the extent a contract is found to have been formed, Defendants' performance under such contract(s) is excused to the extent that the terms of such express or implied contacts have been breached by the Debtors. Prior contracts into which the Debtors have entered with certain Defendants required the Debtors to pay for all goods purchased on credit and to continue to sell and promote Defendants' products.  In this case, the Debtors have failed to pay certain Defendants for products purchased and have ceased all business operations.  To the extent that the Debtors have breached their obligations to the Defendants, they cannot enforce an express or implied contract against them.

## TENTH AFFIRMATIVE DEFENSE
### (Estoppel- Counts V, VIII, XI, XIV, XVII, XX and XXIII)

In the Fifth, Eighth, Eleventh, Fourteenth, Seventeenth, Twentieth, Twenty-Third Counts of its Complaint, Plaintiff alleges the existence of express and implied contracts between the Debtors and the following entities:  Frito, Quaker, Stacy's, Muller Quaker Dairy, Pepsi NJ,

Bottling Group, and Pepsi USA. To the extent that any of these alleged express or implied contracts constituted executory contracts, the Debtors were obligated to list those contracts in Schedule G of the Debtors' schedules. The Debtors did not list any such contracts in their Schedules. Therefore, to the extent any of the alleged contracts constituted an executory contract as of the date of the Debtors' bankruptcy filing, Plaintiff is estopped from seeking to enforce any such contracts against the Defendants.

## RESERVATION OF RIGHTS

As discovery has not yet formally concluded in this matter, the Defendants reserve the right to assert any other defense available at law or in equity and to amend their Answer as necessary or desirable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Court grant judgment in their favor and against Plaintiff on all counts set forth in the Complaint, and such other and further relief as the Court deems just and proper.

Dated: October 4, 2018                    Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
jchubak@storchamini.com
- and -
Joseph D. Frank (admitted pro hac vice)
Jeremy C. Kleinman (admitted pro hac vice)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com

*Attorneys for the Defendants*