Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
jchubak@storchamini.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Blvd., Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com

*Attorneys for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007-rdd<br><br>Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC., *et al.*,<br><br>Defendants. | <br><br><br>Adv. Proc. No. 18-08245-rdd<br><br>**STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH TWENTY-FIVE** |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc.

**Introduction**

Defendants PepsiCo, Inc.; Bottling Group, LLC (d/b/a Pepsi Beverages Company and f/d/b/a The Pepsi Bottling Group ); Frito-Lay North America, Inc.; Quaker Sales and Distribution, Inc.; and Muller Quaker Dairy, LLC; (collectively "**Pepsi**") make this Statement of Material Facts in Support of Pepsi's Motion for Summary Judgment on Counts One Through Four and Partial Summary Judgment on Counts Five Through Twenty-Five (the "**Motion**") in accordance with Local Rule 7056-1. Where indicated, the documents and other materials cited in this Rule 7056-1 Statement are being submitted as exhibits to (i) the Declaration of Joseph D. Frank in support of the Motion, dated October 4, 2019 (the "**Frank Declaration**"), and (ii) the Declaration of Jeremy C. Kleinman in support of the Motion, dated October 4, 2019 (the "**Kleinman Declaration**").[2]

Pepsi is entitled to summary judgment on Counts One through Four of the Second Amended Complaint filed by the Debtors (as defined in footnote 1) because the Debtors' claims in Counts One through Four are barred by the limitations on their avoiding powers set forth in 11 U.S.C. § 546(a)(1)(A) ("**§ 546**"). (Ex. 3, SAC).[3] The Debtors filed their original Complaint in this adversary proceeding (the "**Case**") on April 16, 2018, (Ex. 1, Original Complaint), [4] more than two years after the entry of the order for relief in the underlying bankruptcy case. (*See In re The Great Atlantic & Pacific Tea Co., Inc.*, 15-23007-rdd, Dkt. No. 1).

---

[2] Unless noted otherwise, all exhibits cited below as (Ex. ___) are located in the Frank Declaration. Exhibits from the Kleinman Declaration are identified as (Kleinman Decl., Ex. ___).
[3] Debtors' Second Amended Adversary Complaint (*Great Atlantic & Pacific Tea Co., Inc. v. PepsiCo, Inc.*, 18-08245-rdd, Dkt. No. 17) (the "**SAC**").
[4] Debtors' Adversary Complaint (*Great Atlantic & Pacific Tea Co., Inc. v. PepsiCo, Inc.*, 18-08245-rdd, Dkt. No. 1) (the "**Original Complaint**").

Pepsi is further entitled to partial summary judgment on the Debtors' claims in Counts Five through Twenty-Five, alleging breach of contract, promissory estoppel, and unjust enrichment theories, that arise under contracts for sale and that accrued before April 16, 2014, and are thus time-barred by Article 2 of the Uniform Commercial Code. *See* N.Y. Uniform Commercial Code § 2-725. Pepsi is further entitled to partial summary judgment on the Debtors' claims in Counts Five through Twenty-Five, not arising under contracts for sale, that accrued before April 16, 2012 and are thus time-barred under the State of New York's six-year statute of limitations. *See* N.Y. Civil Practice Law § 213 (McKinney 2019).[5]

**The Bankruptcy Parties**

1. On July 19, 2015 (the "**Petition Date**"), the Debtors filed their petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), in initiating the chapter 11 bankruptcy case captioned *In re The Great Atlantic and Pacific Tea Co., Inc., et al.,* Case No. 15-23007-rdd (the "**Bankruptcy Case**"). [Bankruptcy Case Dkt. No. 1][6]

2. On July 20, 2015, the Court entered an order granting the Debtors' motion for joint administration of their cases. [Bankruptcy Case Dkt. No. 57]

3. On July 24, 2015, William K. Harrington, the United States Trustee for District 2, appointed seven of the Debtors' creditors to the Official Committee of Unsecured Creditors (the "**Committee**") pursuant to 11 U.S.C. § 1102. [Bankruptcy Case Dkt. No. 164]

---

[5] The Debtors allege that "[a]s to the Fifth through Twenty-Sixth Causes of Action set forth below, GAPT requests relief under the applicable common law (or laws) of express and implied contract, unjust enrichment and promissory estoppel, including, but not limited to, the laws of the State of New York." (SAC, ¶ 22). Since the Debtors have not alleged the particulars of the contracts or transactions at issue, Pepsi agrees to the application of New York law for the purpose of this Motion only.

[6] References to "Bankruptcy Case Dkt. No." refer to filings on the docket in the Bankruptcy Case.

4. The Debtors were managed by sophisticated businesspeople, some of whom were members of Debtors' management team during the Debtors' prior chapter 11 cases filed in 2010. (*See, e.g.*, Ex. 5, McGarry Declaration, ¶¶ 1-2). [7]

5. The Debtors were (and continue to be) represented by experienced counsel. (*See, e.g.*, Ex. 6, Weil Gotshal Retention Motion, ¶¶ 8-9). [8]

**The Global Settlement**

6. On May 10, 2016, the Debtors and the Committee filed the Joint Motion of Debtors and Official Committee of Unsecured Creditors for Approval of a Global Settlement Pursuant to Bankruptcy Rule 9019(A) and Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 And 363(C)(2) [Bankruptcy Case Dkt. No. 2786], seeking approval of an attached Global Settlement Agreement among the Debtors, the Committee, the Prepetition PIK Notes Trustee, the Prepetition Convertible Notes Trustee, the Unions and the Pension Plans (collectively, the "**GSA Parties**") (Ex. 7).

7. The Court granted the motion on June 6, 2016. (Ex. 5, GSA Approval Order). [9]

8. The GSA Parties defined "Avoidance Action" in pertinent part as "an action or other claim of the Debtors' estates arising under sections 502(d), 544, 545, 547, 548, 549, 550 or

---

[7] Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District Of New York [Bankruptcy Case Dkt. No. 4] (the "**McGarry Declaration**").
[8] Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Commencement Date [Bankruptcy Case Dkt. No. 100] (the "**Weil Gotshal Retention Motion**").
[9] Order (A) Approving Global Settlement Agreement and (B) Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2) [Bankruptcy Case Dkt. No. 2868] (the "**GSA Approval Order**").

553 of the Bankruptcy Code or any other avoidance actions under their state law analogs." (Ex. 9, GSA, § 1).[10]

9. The GSA Parties agreed that the "Avoidance Actions shall be prosecuted by the . . . Committee, which shall have full standing to do so on behalf of the Debtors' estates." (*Id.*, § 4(a)). They further agreed that "[t]he Committee's prosecution of the Avoidance Actions is subject to the direction of the Oversight Committee, comprised of one designee from the Committee, one designee from the Debtors, and one designee from the Prepetition Notes Secured Parties." (*Id.*, § 4(a)).

10. The GSA Approval Order provides that the Committee shall be authorized to prosecute the Avoidance Actions on behalf of the Debtors' estates, subject to the oversight and direction of the Oversight Committee, in accordance with and subject to Sections 4(a) and (b) of the Global Settlement Agreement. (Ex. 8, GSA Approval Order, ¶ 5).

11. Section 4(b) of the GSA provides a formula for dividing the proceeds of Avoidance Actions between the Prepetition Notes Secured Parties and the Debtors' estates. (Ex. 9, GSA, § 4(b)).

12. Section 4(a) of the GSA also provides that Pachulski, Stang, Ziehl & Jones LLP ("**Pachulski**") shall represent the Committee in prosecuting the Avoidance Actions but directs that the Oversight Committee shall select alternative counsel if Pachulski has a conflict. (*Id.* § 4(a)).

---

[10] Global Settlement Agreement (*In re Great Atlantic & Pacific Tea Co., Inc.*, 15-23007-rdd, Dkt. No. 2868-2) (the "**GSA**").

### Pachulski Contacts Pepsi Regarding Avoidance Actions

13. On December 14, 2016, Pachulski partner Andrew W. Caine sent form letters regarding "Potential Avoidance Claim" to multiple Pepsi-related entities (Kleinman Decl. Group Ex. 1, Avoidance Letters).[11]

14. In the Avoidance Letters, Mr. Caine states that his firm represents the Committee. (*Id.*).

15. In the Avoidance Letters, Mr. Caine states that "[t]he Committee is interested in engaging in discussions aimed toward resolving these claims without the attendant time and expense of litigation. We are willing to openly discuss the matter within the next thirty (30) days." (*Id.*).[12]

---

[11] December 14, 2016 demand letters from Pachulski partner Andrew Caine to Frito-Lay, Inc.; Pepsi-Cola Bottling-Pennsauk; Pepsi-Cola-Hasbrouck Heights; Pepsi Metro Bottling Co.; Pepsi-Cola of Newburgh; Pepsi-Cola Bottling Co.; and Pepsi-Cola Bottling of New York (the "**Avoidance Letters**").

[12] For the avoidance of doubt, and out of an abundance of caution, Pepsi submits the Avoidance Letters and various email messages that are related to settlement negotiations for an allowed purpose. *See* FED. R. EVID. 408(c) (allowing evidence of settlement negotiations when the evidence is not used to disprove the amount or validity of a claim). Submission of evidence to support an affirmative defense is a permitted use because the affirmative defense involves issues other than the elements of the plaintiff's claim. *PRL Holdings, Inc. v. US Polo Ass'n, Inc.*, 520 F.3d 109, 114-15 (2008); *see also Faulkner v. Arista Records LLC*, 797 F.Supp.2d 299, 317 (S.D.N.Y. 2011) (following *PRL* and holding that Rule 408 did not exclude evidence of communications offered to prove a statute of limitations defense because the evidence was offered to prove that the plaintiff could not even *assert* its claims, rather than whether the claims were valid.).

The Avoidance Letters and, with few exceptions, the subsequent email messages between counsel (*See* Kleinman Decl., Ex. 2-16) do not actually contain offers or negotiations of compromise. The Avoidance Letters are demand letters that indicate the Committee might be willing to compromise. The majority of the email messages merely discuss the applicable filing deadlines and tolling agreements to extend them. Where settlement discussions are arguably present in documents that are referenced exhibits to the Kleinman Declaration, Pepsi has redacted the portions of those exhibits containing such discussions (*See* Kleinman Decl. Ex. 7-9). If the Court would prefer unredacted versions of the redacted exhibits, Pepsi proposes to submit such documents under seal. In addition, Pepsi will provide the Debtors with unredacted copies of those exhibits.

16. Following Pepsi's receipt of the Avoidance Letters, Pepsi's counsel Jeremy C. Kleinman and Mr. Caine engaged in prolonged settlement discussions. (*See, e.g.,* Ex. 8, Kleinman Declaration, ¶ 3; *see also* Kleinman Decl. Ex. 2-16, email messages between A. Caine and J. Kleinman; Ex. 10-14, Tolling Agreements (as defined below)).

**The Tolling Agreements**

17. Section 546 provides in pertinent part that an action or proceeding under section 544, 545, 547, 548, or 553 may not be commenced more than 2 years after the entry of the order for relief. 11 U.S.C. § 546.

18. July 19, 2017 was the date two years after the entry of the order for relief in the Debtors' cases. (*See* Bankruptcy Case Dkt. No. 1).

19. On June 9, 2017, Mr. Caine wrote to Pepsi's counsel, stating that the Committee was beginning to prepare preference complaints "given the upcoming 2 year anniversary of the July 19, 2015 petition dates." (Kleinman Decl., ¶¶ 4-8; Kleinman Decl. Ex. 2, email with the subject line "A&P preference/tolling stipulation" from Andrew Caine to Jeremy Kleinman and Cozen O'Connor partner Mark E. Felger, dated June 9, 2017). Mr. Caine stated that "[t]he Committee would prefer to postpone formal litigation with your clients while we continue discussions toward informal resolution." (*Id.*). Mr. Caine also proposed a tolling agreement between Pepsi and the Committee. (*Id.*).

20. On June 19, 2017, the Committee and Pepsi entered into a tolling agreement tolling statutes of limitation from July 17, 2017 through October 16, 2017 (Ex. 10, First Tolling Agreement, ¶ 2).[13] The Debtors were not parties to the First Tolling Agreement. (*See id.*).

---

[13] Stipulation and Tolling Agreement Extending Statutes of Limitation, dated June 19, 2017, between Committee and Pepsi (the "**First Tolling Agreement**").

21. In the First Tolling Agreement, Pepsi and the Committee agreed that all statutes of limitation applicable to "any cause of action brought by the ***Committee*** against Pepsi" would be tolled and extended through October 16, 2017. (*Id.*, § 2 (emphasis added)).

22. Pepsi and the Committee further agreed that the First Tolling Agreement was their entire agreement and could only be modified by an agreement in writing. (*Id.*, § 3(e)).

23. Pepsi and the Committee also agreed that the First Tolling Agreement was without prejudice to either of their rights, privileges, and remedies under applicable law and that each of them reserved such rights, privileges, and remedies. (*Id.*, § 3(f)).

24. The Debtors never asked to be made parties to the First Tolling Agreement. (Ex. 10, Kleinman Declaration, ¶ 12).

25. The Debtors never entered into or asked Pepsi to enter into any tolling agreement. (*Id.*).

26. The two-year anniversary of the order for relief passed without any tolling agreement between Pepsi and the Debtors. (*Id.*).

27. After entering into the First Tolling Agreement, the Committee and Pepsi continued informal settlement discussions. (*Id.*; *see also* Kleinman Decl. Ex. 9-11, email messages between A. Caine and J. Kleinman; Ex. 11-14, Second through Fifth Tolling Agreements (as defined below)). On or about October 2, 2017, the Committee proposed an additional tolling of the statutes of limitations for the Committee. (*See* Kleinman Decl. ¶ 4, Kleinman Decl. Ex. 10, email chain between A. Caine and J. Kleinman from October 2, 2017 through October 3, 2017).

28. On October 3, 2017, Pepsi and the Committee entered into an amended tolling agreement extending the statutes of limitation from October 16, 2017 through December 16,

2017 for the Committee. (Ex. 11, Second Tolling Agreement, ¶ 2).[14] The Debtors were not parties to the Second Tolling Agreement.[15] (*Id.*).

29. Pepsi and the Committee continued their discussions and on December 6, 2017, counsel for the Committee told Pepsi's counsel that he had written to the Oversight Committee. (Kleinman Decl. Ex. 12, email message with subject line "RE: A&P/2nd amended tolling stipulation – Pepsi," from A. Caine to J. Kleinman, dated December 6, 2017).

30. By December 11, 2017, Pepsi and the Committee had executed an additional tolling agreement tolling the statutes of limitation through February 16, 2018 for the Committee. (Ex. 12, Third Tolling Agreement, ¶ 2; Kleinman Decl. Ex. 13).[16] The Debtors were not parties to the Third Tolling Agreement. (*See id.*).

31. In the Third Tolling Agreement, Pepsi and the Committee agreed that all statutes of limitation applicable to "any cause of action brought by the Committee against Pepsi" would be tolled and extended through February 16, 2018. (*Id.*, § 2).

32. As Pepsi and the Committee continued their discussions, Pepsi and the Committee executed another tolling agreement on February 5, 2018, this time tolling the statutes of limitation through March 16, 2018 for the Committee. (Ex. 13, Fourth Tolling Agreement, ¶ 2).[17] The Debtors were not parties to the Fourth Tolling Agreement. (*Id.*).

---

[14] Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated October 3, 2017, between the Committee and Pepsi. (Ex. 11 (the "**Second Tolling Agreement**").

[15] All the Tolling Agreements are identical except for the time period to be tolled. Because the statute of limitations imposed by 11 U.S.C. § 546 had already run by the date of the Second Tolling Agreement, in the interests of brevity, Pepsi has omitted "entire agreement" and "no waiver" sections from further iterations with regard to the Third, Fourth, and Fifth Tolling Agreements.

[16] Second Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated December 11, 2017, between the Committee and Pepsi (the "**Third Tolling Agreement**").

[17] Third Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated as of February 15, 2018, between the Committee and Pepsi (the "**Fourth Tolling Agreement**").

33. In the Fourth Tolling Agreement, Pepsi and the Committee agreed that all statutes of limitation applicable to "any cause of action brought by the Committee against Pepsi" would be tolled and extended through March 16, 2018. (*Id.*, § 2).

34. Discussions continued and on February 28, 2018, counsel for the Committee wrote to Pepsi's counsel:

> I believe that we are making a little progress, but A&P need [sic] more time to consider a response. The Oversight Committee wants to try to get a deal done, and has agreed to further extend the tolling to April 16. I will send you for [sic] their amended tolling agreements for review.

(Kleinman Decl. Ex. 15, email chain with the subject line "A&P," from Andrew Caine to Jeremy Kleinman, dated February 28, 2018-March 1, 2018, and accompanying message chain).

35. Pepsi and the Committee entered into their fifth and final tolling agreement effective March 15, 2018. (Ex. 14, Fifth Tolling Agreement).[18] In the Fifth Tolling Agreement, Pepsi and the Committee agreed that all statutes of limitation applicable to "any cause of action brought by the Committee against Pepsi" would be tolled and extended through April 16, 2018. (*Id.*, § 2). The Debtors were not parties to the Fifth Tolling Agreement. (*Id.*).

**The Haggen Case**

36. On September 21, 2015, Pepsi was appointed to the Official Committee of Unsecured Creditors (the "**Haggen Committee**") in the bankruptcy case captioned *In re Haggen Holdings, LLC*, No. 15-11874 and pending in the United States Bankruptcy Court for the District of Delaware (the "**Haggen Case**"). (Ex. 15, Haggen Committee Appointment).[19]

---

[18] Fourth Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated as of March 15, 2018, between the Committee and Pepsi (the "**Fifth Tolling Agreement**" and with the First through Fourth Tolling Agreements, the "**Tolling Agreements**").

[19] Notice of Appointment of Creditors' Committee (*In re Haggen Holdings, LLC*, 15-11874-kg, Dkt. No. 126) (the "**Haggen Committee Appointment**").

37. In December 2016, when Mr. Caine sent the Avoidance Letters (*see* Kleinman Decl. Group Ex. 1, Avoidance Letters), Pepsi had been a Haggen Committee member for more than a year. (*See* Ex. 15.).

38. When Mr. Caine sent the Avoidance Letters, Pachulski had been serving as counsel to the Haggen Committee for over a year. (Ex. 16, Haggen Retention Order, ¶ 2).[20]

39. Pachulski represented the Haggen Committee in litigation against the debtors' lenders and equity holders where Pepsi, as a Haggen Committee member, produced confidential documents and gave deposition testimony containing proprietary business information that necessarily became known to Pachulski. (*See* Kleinman Declaration, ¶¶ 27-30).

40. Due to Pachulski's possession of this information, on March 16, 2018, the day after Pepsi and the Committee entered into the Fifth Tolling Agreement, Mr. Caine wrote to Mr. Kleinman:

> I have just been told that the Oversight Committee has decided not to accept your clients' most recent offer, and will move forward with litigation. At PSZJ's request, the Oversight Committee will engage new counsel to represent the estates.
>
> Feel free to call me if you like. I am sorry that we were not able to put together a resolution.

(Kleinman Decl. Ex. 16, email with the subject line "A&P/Pepsi & Canada Dry" from Andrew Caine to Jeremy Kleinman and Mark Felger, dated March 16, 2018; *see also*, Kleinman Declaration, ¶ 20).

**The Adversary Proceeding**

41. On April 16, 2018, almost nine months after the July 19, 2017 limitation date imposed by § 546, the law firm Gibbons P.C. ("**Gibbons**"), purporting to act on behalf of both

---

[20] Order Authorizing and Approving the Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to September 21, 2015 (*In re Haggen Holdings, LLC*, 15-11874-kg, Dkt. No. 670) (the "**Haggen Retention Order**").

the Committee and the Debtors, filed the complaint signed by David N. Crapo that initiated this adversary proceeding. (Ex. 1, Original Complaint).

42. In the Original Complaint, the Debtor's sought to avoid alleged preferential transfers (*id.*, Counts 1-10) and to recover on various contract and contract-related theories. (*Id.*, Counts 11-41).

43. Without reference to specific transactions, the Debtors also alleged that they were entitled to recovery on transactions with Pepsi dating back to December 24, 2010. (*See, e.g. id.*, ¶¶ 134, 138-42).

44. On April 17, 2018, Mr. Caine wrote to Mr. Kleinman that "Gibbons mistakenly filed the complaint on behalf of the Committee. We have asked that they change the party to the Debtors." (Kleinman Declaration ¶ 24; Kleinman Decl. Ex. 18, email with the subject line "RE: A&P," from Andrew Caine to Jeremy Kleinman, dated April 17, 2018, and accompanying email chain).

45. On April 23, 2018, the Debtors filed the FAC, naming themselves as sole plaintiffs. (Ex. 2, FAC).[21] By this time, both the § 546 statute of limitations and the agreed tolling period for the Committee had passed. (*See* Bankruptcy Case Dkt. No. 1; *see also* Ex. 10-14, Tolling Agreements).

46. In the FAC, the Debtors continued to assert preference claims (*Id.*, Counts 1-8) and contract and contract-related claims (*Id.*, Counts 9-39) based on transactions with Pepsi dating back to December 24, 2010 (*See, e.g.*, *id.*, ¶¶ 119, 123-27).

47. In the FAC, the Debtors state that:

Neither the Settlement Order nor the GSA affords the Committee sole authority or standing to litigate Avoidance Actions on behalf of the Debtors' estates, and neither the

---

[21] Debtors' First Amended Complaint [Bankruptcy Case Dkt. No. 3] (the "**FAC**").

Settlement Order nor the GSA impacts or limits the Debtors' authority and standing to prosecute contractual claims on behalf of their bankruptcy estates[.]

(FAC, ¶ 7).

48. The Debtors further state that "[b]ecause this adversary proceeding includes both Avoidance Action [sic] and contractual claims against the Defendant, the Debtors have elected to prosecute this Adversary Proceeding themselves. Counsel for the Committee and the Lenders have consented to the Debtors' prosecution of this adversary proceeding." (*Id.*, ¶ 8).

49. On August 17, 2018, the Debtors filed the SAC, with identical paragraphs 7 and 8. (Ex. 3, SAC, ¶¶ 7-8).

50. In the SAC, the Debtors continued to assert preference claims (*Id.*, Counts 1-4) and contract and contract-related claims (*Id.*, Counts 5-26) based on transactions with Pepsi dating back to December 24, 2010 (*See, e.g.*, *id.*, ¶¶ 84, 88-92).

51. On October 4, 2018, Pepsi filed its Answer and Affirmative Defenses, including its Fourth Affirmative Defense, based on the statute of limitations set forth in § 546, and its Fifth Affirmative Defense, based on "the statute of limitations under the laws of the state of New York." (Ex. 4, Answer, Fifth Affirmative Defense).[22]

52. In its Answer, Pepsi responded to Debtors' allegation that:

Neither the Settlement Order nor the GSA affords the Committee sole authority or standing to litigate Avoidance Actions on behalf of the Debtors' estates, and neither the Settlement Order nor the GSA impacts or limits the Debtors' authority and standing to prosecute contractual claims on behalf of their bankruptcy estates.

(*See* Ex. 3, SAC, ¶ 7) by stating that "[t]he allegations in Paragraph 7 are conclusions of law as to which no response is required. To the extent a response is required, Defendants lack

---

[22] Answer [Bankruptcy Case Dkt. No. 23] (the "**Answer**").

knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7." (Ex. 4, Answer, ¶ 7).

| Dated: October 4, 2019 | Respectfully submitted, <br><br> THE PEPSI DEFENDANTS. <br><br> By: ___/s/ Joseph D. Frank_____ <br> One of their attorneys |
|---|---|

Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
jchubak@storchamini.com

- and -

Joseph D. Frank (admitted pro hac vice)
Jeremy C. Kleinman (admitted pro hac vice)
FRANKGECKER LLP
1327 West Washington Blvd., Suite 5 G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com