Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
jchubak@storchamini.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Blvd., Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com

*Attorneys for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007-rdd<br><br>Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC., *et al.*,<br><br>Defendants. | Adv. Proc. No. 18-08245 (RDD)<br><br>**DECLARATION OF JEREMY C. KLEINMAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH TWENTY-FIVE** |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc.

Jeremy C. Kleinman declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1.     I am a lawyer at the law firm FrankGecker LLP ("**FrankGecker**"), counsel for Defendants PepsiCo, Inc.; Bottling Group, LLC (d/b/a Pepsi Beverages Company and f/d/b/a The Pepsi Bottling Group ); Frito-Lay North America, Inc.; Quaker Sales and Distribution, Inc.; and Muller Quaker Dairy, LLC; (collectively "**Pepsi**") in the above-captioned adversary proceeding (the "**Case**"). I submit this Declaration in support of Pepsi's Motion for Summary Judgment on Counts One through Four and Partial Summary Judgment on Counts Five through Twenty-Five (the "**Motion**"). Capitalized terms used but not defined herein have the meaning ascribed to them in Defendants' Local Rule 7056-1(b) Statement of Material Facts Not in Dispute, submitted herewith.

2.     In December, 2016, I received demand letters (the "**Demand Letters**") from Andrew Caine, an attorney at the law firm of Pachulski, Stang, Ziehl & Jones LLP ("**Pachulski**"), counsel to the Official Committee of Unsecured Creditors of The Great Atlantic & Pacific Tea Company, *et al.*, (the **Committee**"), true and correct copies of which are attached hereto as **Group Exhibit 1**. In the Demand Letters, the Committee sought payment for alleged preferential transfers received by certain Pepsi-related entities, including Bottling Group, LLC ("**PBC**") and Frito-Lay North America, Inc. ("**Frito**").

3.     After receiving the Demand Letters, Mr. Caine and I began to discuss potential settlement and the information needed to facilitate those discussions. Those discussions continued through the middle of April, 2018.

4.     On June 9, 2017, Mr. Caine sent an email (the "**June 9 Email**") to me and Mark Felger, a partner of the law firm of Cozen O'Connor who represented an independent bottler

("**Canada Dry**") against whom the Committee was also pursuing preference claims, stating, "We are beginning to prepare preference complaints given the upcoming 2 year anniversary of the July 19, 2015 petition dates. The Committee would prefer to postpone formal litigation with your clients while we continue discussions toward informal resolution." Mr. Caine attached a copy of his proposed tolling agreement. A true and correct copy of the June 9 Email and the proposed tolling agreement attached to that email is attached hereto as **Exhibit 2**.

5.     After receiving the June 9 email, I sent an email to Mr. Caine to inform him that "We are on board with the tolling agreement." A true and correct copy of my response to the June 9 Email is attached hereto as **Exhibit 3**.

6.     On June 12, 2017, Mr. Caine sent an email containing a revised version of the proposed tolling agreement reflecting the agreed-upon tolling period. A true and correct copy of Andrew Caine's June 12, 2017 email (excluding a separate tolling agreement for Canada Dry) is attached hereto as **Exhibit 4**.

7.     In response to Mr. Caine's June 12, 2017 email, I sent an email on June 19, 2017, suggesting a single change relating to the identification of PBC and Frito in the proposed tolling agreement. *See* June 19, 2017 email from Jeremy Kleinman to Andrew Caine, a true and correct copy of which is attached hereto as **Exhibit 5**.

8.     After I sent my June 19, 2017 email, Mr. Caine provided a revised version of the tolling agreement, identifying the Pepsi entities entering into the tolling agreement as "Frito-Lay North America, Inc. and Bottling Group, LLC, and any and all affiliated entities that received payment from the Debtors during the 90 days prior to July 19, 2015." After confirming that the Committee was fine with the tolling agreement being signed by me, rather than an officer at Pepsi, I signed and returned the tolling agreement (the "**Initial Tolling Agreement**") by email.

*See* June 19, 2017 email from J. Kleinman to A. Caine, a true and correct copy of which is attached hereto as **Exhibit 6**.

9. The Initial Tolling Agreement did not list the Debtors as a party and referenced only "Cause(s) of Action brought by the Committee against Pepsi."

10. On July 11, 2017, prior to the two-year anniversary of the Debtors' July 19, 2015 bankruptcy filing, Mr. Caine sent an email (the "**July 11 Email**") to me and Mr. Felger, stating, in pertinent part that:

> In addition, the Debtors have identified outstanding accounts receivable claims (the "A/R Claims") due from Pepsi and Canada Dry totaling $6.25M. The A/R Claims are identified in the attached Excel file. The file contains a summary spreadsheet (which is Pivot table that can be sorted by time period (pre and postpetition) and particular vendor. The detail spreadsheet shows the amounts due by individual vendor. Prior to our further discussions regarding the preference claims, I would like to learn your clients' position with respect to the A/R claims because the amount claimed is quite large. I look forward to hearing from you.

A true and correct copy of the July 11 Email, without its attachment and redacted to remove settlement communications, is attached hereto as **Exhibit 7**.

11. In response to the July 11 Email, on July 18, 2017, I sent an email to Mr. Caine explaining why Pepsi did not believe the amounts claimed by the Debtors are due. A true and correct copy of my July 18, 2017 email to Mr. Caine, redacting the settlement communications set forth in the July 11 Email, is attached hereto as **Exhibit 8**.

12. Although the July 11 Email demonstrated that the Debtors had claimed that amounts were due from both Pepsi and Canada Dry, at no time did either the Committee or Debtors request that either Pepsi enter into a tolling agreement with the Debtors, or that the Debtors be made parties to the Initial Tolling Agreement or any subsequent tolling agreement between the Committee and Pepsi.

13.     On September 5, 2017, Mark Felger sent an email to me, Andrew Caine, Bradford Sandler, co-counsel to the Committee, and Mr. Felger's partner, Gregory Fischer, proposing that our respective clients, enter into a further tolling agreement. In response, I stated that "We would be amenable to a further extension." A true and correct copy of the September 5, 2017 email exchange, redacted to remove prior settlement discussions, is attached hereto as **Exhibit 9**.

14.     On October 2, 2017, Mr. Caine sent me an email with an attached proposed second tolling agreement, stating that he was providing "an amended tolling agreement that extends the suit deadline to December 15 so that we can continue our informal discussions." On that same day, I signed the proposed tolling agreement (the "**Second Tolling Agreement**") and returned it to Mr. Caine by email. A true and correct copy of the October 2, 2017 email exchange is attached hereto as **Exhibit 10**.

15.     On November 8, 2017, in the context of settlement communications, Mr. Caine sent an email to me with attached spreadsheets listing the alleged preferential transfers received by PBC and Frito and providing an analysis of potential defenses, stating "Attached is a summary of the Committee's claims against Pepsi entities, with 90 day totals and net of new value amounts." A true and correct copy of the November 8, 2017 email, without attachments, is attached hereto as **Exhibit 11**.

16.     On December 6, 2017, Mr. Caine sent an email to me stating, "Thanks for the call today. I have sent an email to the Oversight Committee proposing the approach that we discussed. Please keep me posted on the timing of your preference analysis. I attach the proposed further tolling stipulation for your review. I look forward to hearing back from you.' and attaching a proposed third tolling agreement. A true and correct copy of Mr. Caine's December 6, 2017 email is attached hereto as **Exhibit 12**.

17.     On December 7, 2017, I signed and returned the proposed tolling agreement (the "**Third Tolling Agreement**") to Mr. Caine via email. A true and correct copy of my December 7, 2017 email is attached hereto as **Exhibit 13**.

18.     On February 2, 2018, Mr. Caine sent me an email attaching a proposed third amended tolling stipulation. I executed the proposed tolling agreement (the "**Fourth Tolling Agreement**") and returned it to Mr. Caine by email. A true and correct copy of the February 2, 2018 email exchange is attached hereto as **Exhibit 14**.

19.     On February 28, 2018, Mr. Caine sent an email to me and Mr. Felger stating, "Hi. I believe that we are making a little progress, but A&P need more time to consider a response. The Oversight Committee wants to try to get a deal done, and has agreed to further extend the tolling to April 16. I will send you for their amended tolling agreements for review. Let me know if you would like to discuss it. Thanks." Later that day, Mr. Caine sent an additional email to me providing an additional proposed tolling agreement. The next day, I signed and returned the proposed tolling agreement (the "**Fifth Tolling Agreement**"). A true and correct copy of the February 28, 2018 and March 1, 2018 email exchange is attached hereto as **Group Exhibit 15**.

20.     On March 16, 2018, Mr. Caine sent me and Mr. Felger an email (the "**March 16 Email**") stating, "Jeremy and Mark –I have just been told that the Oversight Committee has decided not to accept your clients' most recent offer, and will move forward with litigation. At PSZJ's request, the Oversight Committee will engage new counsel to represent the estates. Feel free to call me if you like. I am sorry that we were not able to put together a resolution." A true and correct copy of the March 16 Email is attached hereto as **Exhibit 16**.

21.     On April 16, 2018, David Crapo, an attorney at Gibbons, P.C., special counsel to the Debtors, filed a Complaint against Pepsi and certain other entities, including Pepsi-Cola

Bottling Pennsauk ("**Pennsauk**"). The Complaint stated that it was being filed on behalf of both the Debtors and the Committee and asserted Preference Claims against PBC, Frito and Pennsauk, and additional contractual and quasi-contractual claims against PBC, Frito and additional Pepsi entities.

22.     Pennsauk had been referenced in the Demand Letters, in which Mr. Caine previously sought payment from Pennsauk on account of an alleged preference claim. However, after it was determined that the transfer at issue had not actually been made to Pennsauk, on March 22, 2017, Mr. Caine informed me that the Committee would not pursue a claim against Pennsauk.

23.     In an effort to understand the reason Pennsauk was included in the Complaint, on April 17, 2018, I sent an email to Mr. Caine, stating:

> Andy, Below is an exchange you and I had roughly a year ago on the alleged preference claim against PBG Pennsauk in the A&P Case. The Committee sued PBG Pennsauk yesterday to recover the amount referenced below. If you could please advise Mr. Crapo regarding the Committee's position on this issue and the basis therefore, it would be greatly appreciated.
> Also, if the Committee has decided to reverse its earlier decision, please let me know as well.

A true and correct copy of my April 17, 2018 email to Andrew Caine is attached hereto as **Exhibit 17**.

24.     In response to my April 17 email, Mr. Caine sent me an email stating, in relevant part, "Hi Jeremy. First, Gibbons mistakenly filed the complaint on behalf of the Committee. We have asked that they change the party to the Debtors. Second, is Pensauk a Pepsi entity?" A true and correct copy of Mr. Caine's April 17, 2018 email is attached hereto as **Exhibit 18**.

25.     I also represented certain of the Pepsi entities in connection with the chapter 11 bankruptcy cases of Haggen Holdings, LLC and certain of its affiliates (collectively, "**Haggen**"),

captioned *In re Haggen Holdings, LLC, et al.,* Case No. 15-11874, pending in the United States Bankruptcy Court for the District of Delaware (the "**Haggen Case**").

26.     In 2015, Pepsi was appointed to the Official Committee of Unsecured Creditors formed in the Haggen Case (the "**Haggen Committee**"). The Haggen Committee was represented by Pachulski.

27.     In the Haggen Case, the Haggen Committee filed a complaint (the "**Haggen Complaint**") against certain of Haggen's principals and investors (the "**Haggen Litigation**"). In the Haggen Complaint, the Haggen Committee made certain allegations relating to the knowledge and perceptions of Haggen's creditors.    As a result of those allegations, Pepsi and other members of the Committee were served with, and complied with subpoenas that sought documents on a variety of subjects, including the internal credit operations of Pepsi.

28.     In the course of the Haggen Committee's litigation, Pachulski received certain documents containing proprietary business information relating to Pepsi's credit operations.    In addition, the defendants in the Haggen Litigation deposed Pepsi through its corporate representative on July 21, 2017 and discussed Pepsi's proprietary business information in the presence of Pachulski attorney Beth Levine.

Executed this 4th day of October, 2019 in Chicago, Illinois.

_____
Jeremy C. Kleinman