**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
Telephone: (973) 596-4821
Facsimile: (973) 639-6219
E-mail: Pduffy@gibbonslaw.com
David N. Crapo, Esq.
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com

*Special Counsel for the Plaintiff,*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007 (RDD)<br><br>(Jointly Administered) |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. *et al.*<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC; BOTTLING GROUP, LLC (d/b/a PEPSI BEVERAGES COMPANY and f/d/b/a<br><br>THE PEPSI BOTTLING GROUP); FRITO-LAY NORTH AMERICA, INC.; QUAKER SALES AND DISTRIBUTION, INC.; MULLER QUAKER DAIRY, LLC; STACY'S PITA CHIP COMPANY, INC.; PEPSI BOTTLING GROUP NJ; and PEPSI USA,<br><br>Defendants. | Adv. Proc. No. 18-08245 (rdd)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH <u>TWENTY-FIVE</u>** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

    A.    The Pepsi Motion must be denied as to Counts One through Four of the
           Second Amended Complaint. ................................................................................ 1

    B.    The Pepsi Motion must be denied as moot in its entirety as to Counts Five
           through Twenty-Five of the Second Amended Complaint. ..................................... 3

I.    BACKGROUND ............................................................................................................... 3

    A.    Procedural Background......................................................................................... 3

    B.    The Global Settlement ......................................................................................... 4

    C.    Negotiations Concerning the Avoidance Actions and Tolling Agreements........... 6

    D.    Failure of Negotiations and the Initiation of the Adversary Proceeding ............. 10

    E.    The Defendants and Their Counsel Are Bankruptcy Savvy................................ 12

LEGAL ARGUMENT.................................................................................................................. 13

    A.    The Debtors and the Committee filed their Original Complaint in this
           Adversary Proceeding on April 16, 2018 within the § 546 Statute of
           Limitations. ...................................................................................................... 14

    B.    The Debtors Are the Real Parties in Interest to the Tolling Agreements. ........... 14

    C.    The Debtors are Intended Third Party Beneficiaries of the Tolling
           Agreements. ...................................................................................................... 22

    D.    Because They Hold the Pepsi Avoidance Actions That Are the Subject of
           the Tolling Agreements, the Debtors Need Not to Have Been the
           Committee's Successors-in-Interest, Assigns or Legal Representatives to
           Have Initiated this Adversary Proceeding. ......................................................... 28

    E.    Equitable Tolling is Unnecessary in This Case. .................................................. 29

    F.    The Defendants' Motion is Moot as to Counts Five through Twenty-Five
           of the Second Amended Complaint. ................................................................... 30

2761995.1 032596-97802

Table of Contents (continued)

Page

G.    The Court Should Permit the Oversight Committee to Authorize the Debtors' Special Counsel in this Adversary Proceeding to Represent the Committee.................................................................................................. 30

CONCLUSION............................................................................................................ 31

2761995.1 032596-97802

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................... 13

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp.2d 372 (S.D.N.Y. 2010) ....................................................................... 26, 27

*Board of Education of Northport—E. Northport Union Free School Dist. v. Long Island Power Auth.*,
130 AD 3d 953 (2d Dept. 2015) ..................................................................................... 24

*Caguas Central Savings Bank v. United States*,
215 F.3d 1304 (Fed. Cir. 2000) ............................................................................... *passim*

*In re Cavalry Construction, Inc.*,
2013 WL 5682471 (Bankr. S.D.N.Y. Oct. 18, 2013) ............................................... 23, 24

*Cole v. Bd of Trs. of N. Ill. Univ.*,
838 F.3d 888 (7th Cir. 2016) ......................................................................................... 13

*Consolidated Edison, Inc. v. Northeast Utilities*,
426 F.3d 524 (2d Cir. 2005) ................................................................................. 22, 23, 24

*Cutler v. Hartford Life Ins. Co.*,
22 N.Y.2d 245 (1968) ................................................................................................... 23

*In re DPH Holdings Corp.*,
553 B.R. 20 (Bankr. S.D.N.Y. 2016) .............................................................................. 14

*In re Dynegy, Inc., Securities Litigation*,
339 F.Supp 2d 804 (S.D. Tex. 2004) ............................................................................. 18

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3rd Cir. 2001) ......................................................................................... 25

*Fata v. S.A. Healy Co.*,
289 N.Y. 401 (1943) ..................................................................................................... 15

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Corp.*,
66 N.Y.2d 38 (1985) ............................................................................................ 22, 23, 25

*Frazer v. United States*,
49 Fed. Cl. 73 (2001) .......................................................................................... 18, 19, 20

iii

*In re Haggen Holdings, LLC*,
    No. 15-11874 .................................................................................................12

*Keller Foundations, LLC v. Zurich American Ins. Co.*,
    758 Fed. Appx. 22 (2d Cir. 2018)..............................................................23, 25

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
    729 N.Y.S.2d 671 (App. Div. 1st Dept. 2001)..........................................23

*Madeira v. Affordable Hous. Found., Inc.*,
    469 F.3d 219 (2d Cir. 2006)..........................................................................23

*MCC Proceeds, Inc. v. Whitman & Ransom*,
    1997 WL 289470 (S.D.N.Y. May 30, 1997) .................................................15, 16

*Montana v. United States*,
    124 F.3d 1269 (Fed. Cir. 1997).....................................................................23

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998)..............................................................26, 27

*PT. Bank Mizuho Indonesia v. PT. Inda Kiat Pulp & Paper Corp.*,
    25 A.D.3d 470 (1st Dept., 2006)......................................................................24

*Resolution Trust Cor. v. Diamond*,
    45 F.3d 665 (2d Cir. 1995).............................................................................15

*Resolution Trust Corp. v. Cheshire Management, Co., Inc.*,
    18 F.3d 330 (6th Cir. 1993) ..........................................................................19

*Resolution Trust Corp. v. MacKenzie*,
    60 F.3d 972 (2d Cir. 1995).............................................................................19

*Resolution Trust Corporation v. Bonner*,
    848 F.Supp. 96 (S.D. Tex. 1994) ..................................................................15, 16, 17

*Sazerac Co., Inc. v. Falk*,
    861 F.Supp. 253 (S.D.N.Y. 1994) ................................................................28

*Schuerman v. United States*,
    30 Fed. Cl. 420 (1994) ....................................................................................23

*Solus Alt. Asset Mgmt. LP v. Delphi Auto, PLC (In re DPH Holdings Corp.)*,
    533 B.R. 20 ...............................................................................................13, 17

*Strauss v. Belle Realty*,
    469 N.Y.S. 2d 948 (App. Div. 2d Dep't 1983)..........................................23

*Subaru Distributors Corp v. Subaru of America, Inc.*,
    425 F.3d 119 (2d Cir. 2005)..........................................................................22, 23, 25

iv

*In re The Great Atlantic and Pacific Tea Co., Inc., et al.*,
    Case No. 15-23007-rdd. [Bankr. Case Dkt. No. 1] ................................................................3

*Wilson Land Corp. v. Smith Barney, Inc.*,
    1999 WL 1939270 (E.D.N.C. May 17, 1999) ........................................................22

**Statutes**

11 U.S.C. § 101 ................................................................................................................3

11 U.S.C. § 327(e) ..........................................................................................................10

11 U.S.C. § 363(C)(2) ...................................................................................................4, 5

11 U.S.C. § 546 (a)(1)(A) ...............................................................................................1

11 U.S.C. § 547(b) ...........................................................................................................5

11 U.S.C. § 704(a)(1) .....................................................................................................19

11 U.S.C. § 1102 .............................................................................................................4

11 U.S.C. §§ 1107(a), 1108 .....................................................................................14, 16

12 U.S.C. § 1821(d)(2)(A) .............................................................................................19

12 U.S.C. § 1821(d)(2)(E) .............................................................................................19

12 U.S.C. § 1821(d)(2)(G) .............................................................................................19

Bankruptcy Code § 1107(a) .......................................................................................5, 19

**Rules**

Bankruptcy Rule 9019 ....................................................................................................4

Bankruptcy Rule 9019(A) ...............................................................................................4

Fed. R. Bankr. P. 2014 ..................................................................................................10

Fed. R. Bankr. P. 7056 ..................................................................................................13

Fed. R. Civ. P. 56(a) .....................................................................................................13

Local Rule 2014-1 ..........................................................................................................10

2761995.1 032596-97802

The Great Atlantic & Pacific Tea Company, Inc., *et al.* (collectively, "Debtors" or "GAPT"), the Plaintiff in this adversary proceeding ("**Adversary Proceeding**") respectfully submits this Plaintiff's Memorandum of Law in Support of Its Opposition to Defendants' Motion for Summary Judgment on Counts One through Four and Partial Summary Judgment On Counts Five through Twenty-Five ("**Opposition**") of the Debtors' Second Amended Adversary Complaint ("**Second Amended Complaint**") in this Adversary Proceeding.

## PRELIMINARY STATEMENT

The Defendants' Motion for Summary Judgment on Counts One through Four and Partial Summary Judgment on Counts Five through Twenty-Five ("**Pepsi Motion**") of the Second Amended Complaint filed in this Adversary Proceeding on August 17, 2018. [Adv. Proc. Dkt. No.[1] 17] is both a disingenuous ploy (i) by Defendants Frito Lay North America, Inc. ("**Frito**") and Bottling Group, LLC ("**Bottling Group**") to avoid their liability to the Debtors for the preferential transfers they received in the run-up to the Debtors' bankruptcy filings and (ii) by Defendant Frito to muddy the waters in this Adversary Proceeding by making a mountain out of the molehill—that being the $17,196.66 in unpaid invoices for promotional services the Debtors provided prior to April 16, 2014 that are reflected in Frito's proof of claim against GAPT. For the reasons set forth below, the Pepsi Motion must be denied in its entirety.

**A.**    **The Pepsi Motion must be denied as to Counts One through Four of the Second Amended Complaint.**

By virtue of a series of five tolling agreements (collectively, the "**Tolling Agreements**"), the statute of limitations contained in 11 U.S.C. § 546 (a)(1)(A) ("**§ 546 Statute of**

---

[1] References to the "Adv. Proc. Dkt. No." refer to filings on the docket in this Adversary Proceeding.

2761995.1 032596-97802

**Limitations**") for bringing the ***Debtors' bankruptcy estates'*** preference claims against

Defendants Pepsi and Bottling Group was extended to and including April 16, 2018. The

original Complaint ("**Original Complaint**") in this Adversary Proceeding was timely filed on

behalf of the Debtors and the Committee (defined below) on April 16, 2018 within the § 546

Statute of Limitations as that statute had been extended by the Tolling Agreements. For that

reason, the Pepsi Motion must be denied in its entirety as to Counts One through Four of the

Second Amended Complaint.

The fact that the Original Complaint was timely filed on behalf of the Debtors and the

Committee was timely filed ***within the extended § 546 Statute of Limitations*** is a material fact

obfuscated by the Defendants' argument in the Pepsi Motion. Instead, the crux of the Pepsi

Motion is based on the Defendants' assertion that the Debtors are not beneficiaries of the Tolling

Agreements, which were executed by the Defendants and the Committee appointed in the above-

captioned jointly administered Chapter 11 bankruptcy cases. To reach this conclusion, the

Defendants completely disregard (i) clear language in the Tolling Agreements demonstrating the

Committee's extremely limited authority with respect to the subject avoidance claims, (ii) the

context and circumstances in which these agreements were executed, and (iii) the ultimate

beneficiaries of those agreements.

Each of the Tolling Agreements expressly recites that the Committee has authority to

prosecute avoidance actions ***on behalf of the Debtors' estates***. Indeed, the only claims

addressed by the Tolling Agreements are the Debtors' bankruptcy estates' avoidance claims

against Defendants Frito and Bottling Group and certain related parties. Moreover, the Debtors'

avoidance claims were never transferred to the Committee and the Committee's authority to

prosecute those claims is significantly circumscribed. As the holders of the very—and only—

2

claims preserved by those agreements, the Debtors, therefore, are the real parties in interest with respect to the Tolling Agreements. For that reason, the Debtors are the obvious and intended ultimate beneficiaries of the Tolling Agreements. They were, therefore, entitled to enforce the Tolling Agreements by prosecuting this Adversary Proceeding. Aside from the fact that the Debtors and the Committee filed the Original Complaint, which asserts, *inter alia*, the avoidance claims, the Debtors were in a position to prosecute the avoidance claims themselves.

**B.      The Pepsi Motion must be denied as moot in its entirety as to Counts Five through Twenty-Five of the Second Amended Complaint.**

By the Second Amended Complaint, the Debtors also assert claims for unpaid invoices for promotional services. [Adv. Proc. Dkt. No. 17, Counts 5 through 25] Those claims include claims under unpaid invoices identified in the proofs of claim filed by Defendant Frito. In the interest of avoiding litigation over those *de minimis* claims, the Debtors waive that portion of any claims they assert in Counts Five through Twenty-Five of the Second Amended Adversary Complaint in this case, alleging breach of contract, promissory estoppel, and unjust enrichment theories, that accrued before April 16, 2014, which claims aggregate only $17,169.66, a tiny percentage (less than 0.5%) of the recovery the Debtors seek from Defendant Frito on those claims.

## I.      BACKGROUND

### A.      Procedural Background

On July 19, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) They thereby initiated the chapter 11 bankruptcy cases that are currently being jointly administered under captioned *In re The Great Atlantic and Pacific Tea Co., Inc., et al.,* and Case

3

No. 15-23007-rdd. [Bankr. Case Dkt. No. 1][2] On July 20, 2015, this Court entered an order for joint administration of the Debtors' bankruptcy cases (hereafter, collectively, the "**Bankruptcy Case**"). [Bankr. Case Dkt. No. 57] Pursuant to 11 U.S.C. § 1102, William K. Harrington, the United States Trustee for Region 2, appointed the Official Committee of Unsecured Creditors (the "**Committee**") in the Bankruptcy Case on July 24, 2015. [Bankr. Case Dkt. No. 164]

### B. The Global Settlement

Many debtors in bankruptcy are required to resolve contentious disputes with various creditor constituencies as part of the resolution of their bankruptcy cases. The Debtors were no exception. They were faced with numerous such disputes in the Bankruptcy Case. On May 10, 2016, the Debtors and the Committee filed a *Joint Motion of Debtors and Official Committee of Unsecured Creditors for Approval of a Global Settlement Pursuant to Bankruptcy Rule 9019(A) and Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 And 363(C)(2)* ("**GSA Motion**") to resolve a number of significant disputes. [Bankr. Case Dkt. No. 2786] By the GSA Motion, the Debtors and the Committee sought approval of a Global Settlement Agreement ("**GSA**") among the Debtors, the Committee, the Prepetition PIK Notes Trustee, the Prepetition Convertible Notes Trustee, the Unions and the Pension Plans (collectively, the "**GSA Parties**") [Bankr. Case Dkt. No. 2786, Ex. A] (*See also the Declaration of Joseph D. Frank in Support of Motion for Summary Judgment on Counts One Through Four and Partial Summary Judgment on Counts Five through Twenty-Five* ("***Frank Decl.***"), Exh. 7). [Adv. Proc. Dkt. No. 35, Exh. 7] Counsel for the Defendants received notice of the GSA Motion. [Bankr. Case Dkt. No. 2815] The Court granted the GSA Motion and approved the GSA Agreement "pursuant to Bankruptcy Rule 9019" by *Order (A) Approving Global Settlement and*

---

[2] References to "Bankr. Case Dkt. No." refer to filings on the docket in the Bankruptcy Case.

2761995.1 032596-97802

*(B) Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2)* dated June 6, 2016 ("**GSA Approval Order**"). [Bankr. Case Dkt. No. 2868; Frank Decl., Exh. 5]

The GSA defines "Avoidance Actions" to include actions to recover preferential transfers under 11 U.S.C. § 547(b). [Bankr. Case Dkt. No. 2682-2 § 1; Frank Decl., Exh. 9, GSA, § 1]. The GSA Parties agreed that such Avoidance Actions "shall be prosecuted by the . . . Committee, which shall have full standing to do so ***on behalf of the Debtors' estates***." *Id., § 4*(a) (emphasis added). However, the GSA does not assign those Avoidance Actions to the Committee. They remain assets of the Debtors' bankruptcy estates and are possessed by the Debtors as Chapter 11 debtors-in-possession, under Bankruptcy Code §§ 1107(a) and 1108. Moreover, the GSA significantly limits the Committee's freedom of action with respect to the Avoidance Actions. In that regard, the Committee is "subject to the oversight and direction of the Oversight Committee with respect to the prosecution, settlement, abandonment or other decisions regarding the Avoidance Actions." *Id.*, § 4(a). *See also the Declaration of Jeanne M. Boyle, Esq., in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Counts one Through Four and Partial Summary Judgment on Counts Five Through Twenty-Five* ("**Boyle Decl**.") filed contemporaneously herewith at ¶ 7 (recognizing, *inter alia*, the Committee's lack of authority to settle the Pepsi Avoidance Actions unilaterally). The Oversight Committee is comprised of one designee from the Committee, one designee from the Debtors, and one designee from the Prepetition Notes Secured Parties." *Id.*, § 1. Section 4(a) of the GSA also provides that Pachulski, Stang, Ziehl & Jones LLP ("**Pachulski**") shall prosecute the Avoidance Actions but directs that the Oversight Committee shall select alternative counsel "for the prosecution of such matter[s]" if Pachulski has a conflict." *Id.*, § 4(a).

5

Section 4(b) of the GSA provides a formula for dividing the proceeds of Avoidance

Actions between the Prepetition Notes Secured Parties and the Debtors' estates. [Bankr. Case

Dkt. No. 2682-2 § 4(b); Frank Decl., Ex. 9, GSA, § 4(b)].  That formula provides for the

Prepetition Notes Secured Parties to receive a distribution of no more than $11,500,000 from the

proceeds of Avoidance Actions.  *Id.*, §§ 4(b)(ii) and (ii).  The payment of that sum must,

however, be seen in light of the agreement, included in the GSA, by the Prepetition Notes

Secured Parties to permit the Debtors to use $6,250,000 in cash collateral.  *Id.*, § 3(a).

The GSA Approval Order provides that the Committee shall be authorized to prosecute

the Avoidance Actions on behalf of the Debtors' estates, subject to the oversight and direction of

the Oversight Committee, *in accordance with and subject to Sections 4(a) and (b) of the Global

Settlement Agreement.* [Bankr. Case Dkt. No. 2682-1, ¶ 5; Frank Decl. Exh. 8, ¶ 5 (emphasis

added)]

C.      **Negotiations Concerning the Avoidance Actions and Tolling Agreements**

Approximately six months after the entry of the GSA Approval Order, Andrew W. Caine

of Pachulski issued preference demand letters (collectively, "**Avoidance Letters**"), each dated

December 14, 2016, to the following Pepsi-related entities: Frito-Lay, Inc.; Pepsi-Cola Bottling-

Pennsauk; Pepsi-Cola-Hasbrouck Heights; and Pepsi-Cola Bottling Co.  *Declaration of Jeremy

C. Kleinman in Support of Motion for Summary Judgment on Counts One Through Four and

Partial Summary Judgment on Counts Five through Twenty-Five* ("**Kleinman Decl**."),

Consolidated Exh. 1).  In each of the Avoidance Letters, Mr. Caine correctly states that his firm

represents the Committee, but—equally correctly—advises the addressee that, pursuant to the

GSA Approval Order, this Court "granted authority for the Committee to prosecute avoidance

actions *on behalf of the Debtors' estates*."  *Id.* (emphasis added).  Thereafter, Pepsi's counsel,

6

Jeremy C. Kleinman, and Mr. Caine engaged in settlement discussions concerning, *inter alia*, the Avoidance Actions. *See, e.g.,* Kleinman Declaration, Exh. 8, ¶ 3.

On June 9, 2017, Mr. Caine wrote to, *inter alia*, Mr. Kleinman stating that preference complaints were beginning to be prepared "given the upcoming 2 year anniversary of the July 19, 2015 petition dates" in the Debtors' bankruptcy cases. Kleinman Decl., ¶¶ 4-8; Kleinman Decl., Exh. 2. Mr. Caine offered a proposed agreement to toll the statute of limitations for bringing Avoidance Actions on the Debtors' preference claims against, *inter alia*, Defendants Frito and Bottling Group (said Avoidance Actions, as to Defendants Frito and Bottling Group, being, hereafter, collectively, "**Pepsi Avoidance Actions**"). *Id.* On June 19, 2017, the Committee and the Defendants entered into a Stipulation and Tolling Agreement Extending Statutes of Limitations ("**First Tolling Agreement**") tolling the statutes of limitation for bringing suit on the Debtors' Pepsi Avoidance Actions against, *inter alia*, Defendants Frito and Bottling Group from July 17, 2017 through October 16, 2017 *Id.*, Ex. 10, ¶ 2).

Although the Debtors did not execute the First Tolling Agreement, that agreement expressly acknowledged that the Debtors had "continued possession of their property" and that the Committee was granted authority to "prosecute avoidance actions *on behalf of the Debtors' estates* with settlement authority to be determined by the Committee, Debtors and Lenders." *See id,* p. 2. In addition to facilitating negotiations concerning the resolution of the Debtor's bankruptcy estates' Pepsi Avoidance Actions against Defendants Frito and Bottling Group, the First Tolling Agreement prevented the Debtors' bankruptcy estates' loss of those claims to the § 546 Statute of Limitations. Moreover, although the First Tolling Agreement expressly addressed statutes of limitation applicable to "any cause of action brought by the *Committee* against Pepsi"

7

[*id., § 2* (emphasis added)], the only causes of action that were subject to the First Tolling

Agreement were the ***Debtors' bankruptcy estates'*** Pepsi Avoidance Actions.

As noted in the Kleinman Decl. and the Exhibits thereto, after entering into the First

Tolling Agreement, the Committee and the Defendants continued settlement discussions. To

facilitate those discussions the Committee and the Defendants entered into the following

additional Tolling Agreements to toll the § 546 Statute of Limitations on the Debtors'

Bankruptcy estates' Avoidance Actions against, *inter alia*, Defendants Frito and Bottling Group:

| Tolling Agreement | Date of Tolling Agreement | Period Covered |
|---|---|---|
| Second Tolling Agreement | October 3, 2017 | 10/16/2017—12/15/2017 |
| Third Tolling Agreement | December 11, 2017 | 12/15/2017—2/16/2018 |
| Fourth Tolling Agreement | February 5, 2018 | 2/16/2018—3/16/2018 |
| Fifth Tolling Agreement | March 1, 2018 | 3/16/2018—4/16/2018 |

*See* Kleinman Decl. ¶ 4; Exhs. 10 through14.

The Debtors did not execute the Second, Third, Fourth, and Fifth Tolling Agreements.

However, each of the Tolling Agreements expressly acknowledged that the Debtors had

"retained possession of their assets" and that the Committee was granted authority to "prosecute

avoidance actions on behalf of the Debtors' estates with settlement authority to be determined by

the Committee, Debtors and Lenders." Kleinman Decl., Exhs. 10 through 14. As with the First

Tolling Agreement, in addition to facilitating negotiations concerning the resolution of the

Debtor's bankruptcy estates' Pepsi Avoidance Actions against, *inter alia*, Defendants Frito and

Bottling Group, each of the additional Tolling Agreements prevented the Debtors' bankruptcy

2761995.1 032596-97802

estates' loss of those claims to the § 546 Statute of Limitations. Moreover, although each of the Tolling Agreements expressly addressed statutes of limitation applicable to "any cause of action brought by the *Committee* against Pepsi" (*see, Id.*), the only causes of action that were subject to the Tolling Agreements were the *Debtors' bankruptcy estates'* Pepsi Avoidance Actions against Defendants Frito and Bottling Group and certain related parties.

As long as the Committee was negotiating with the Defendants and entering into the Tolling Agreements thereby preserving the Debtors' bankruptcy estates' Pepsi Avoidance Actions from the effect of the § 546 Statute of Limitations, there was no reason for the Debtors to negotiate the Tolling Agreements. Meanwhile, throughout negotiations concerning the Pepsi Avoidance Actions, counsel for the Defendants had numerous reminders of the Committee's limited authority to resolve these Avoidance Actions. By e-mail dated December 6, 2017, Mr. Caine advised Mr. Kleinman that he had "sent an e-mail to the Oversight Committee proposing the approach that we discussed." Kleinman Decl., Exh. 12. By e-mail dated February 28, 2018, Mr. Caine advised Mr. Kleinman that "[t]he Oversight Committee wants to try to get a deal done, and has agreed to further extend the tolling to April 16, 2018. I will send you for [sic] their amended tolling agreements for review. " Kleinman Decl., Exh. 15. In fact, the Committee was required to obtain the approval of the Oversight Committee before agreeing to further extend § 546 Statute of Limitations for the Debtors' bankruptcy estates' Pepsi Avoidance Actions or responding to the Defendants' settlement proposals. *See the Declaration of Andrew W. Caine, Esq. in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Counts one Through Four and Partial Summary Judgment on counts Five Through Twenty-Five* ("**Caine Decl**.") filed contemporaneously herewith, ¶ 9; Boyle Decl., ¶ 8. Finally, once the Oversight Committee had made the decision to pursue litigation on the Pepsi Avoidance Actions

9

and Pachulski could not bring the litigation, Mr. Caine advise Mr. Kleinman that "the Oversight Committee will engage new counsel ***to represent the estates*** (emphasis added)" (Kleinman Decl., Exh. 16), thereby underscoring who, as between the Committee and the Debtors' bankruptcy estates, was the real party in interest to the Pepsi Avoidance Actions and, therefore, to the Tolling Agreements.

### D.    Failure of Negotiations and the Initiation of the Adversary Proceeding

By letters dated January 4, 2018, counsel for the Defendants presented counsel for the Committee with its first formal written proposals to resolve the Pepsi Avoidance Actions asserted against, *inter alia*, Defendants Frito and Bottling Group. Caine Decl., ¶ 10. Pursuant to the GSA, counsel for the Committee submitted the Defendants' proposal to the Oversight Committee for review and analysis. Caine Decl., ¶ 10; Boyle Decl., ¶ 10.

By March 16, 2018, the Oversight Committee rejected the Defendants' settlement proposal and decided to move forward with litigation. *See* Boyle Decl, ¶ 10; *Declaration of Adam Harris, Esq. in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Counts one Through Four and Partial Summary Judgment on counts Five Through Twenty-Five* ("**Harris Decl**.") filed contemporaneously herewith, ¶ 7. *See also* Kleinman Decl., Ex. 16. The Oversight Committee also determined that judicial economy would be served by having both the Pepsi Avoidance Actions and the promotional accounts receivable claims asserted against the Defendants in the same action. Boyle Decl., ¶ 13; Harris Decl. ¶ 9. *See also Supplemental Application of Debtors Pursuant to 11 U.S.C. § 327(e) Fed. R. Bankr. P. 2014 and Local Rule 2014-1 for Authority to Retain and Employ Gibbons P.C. as Special Conflicts Counsel to the Debtors, Nunc Pro Tunc to April 2, 2018* ("**Supplemental Gibbons Retention Application**"), ¶ 21 [Bankr. Case Dkt. No. 4064, p. 8] By e-mail dated March 16, 2018, Mr. Caine advised Mr. Kleinman that, "[a]t PSZJ's request, the Oversight Committee will engage new counsel *to*

10

*represent the estates.*" *Id*. Pachulski was unable to litigate the Avoidance Actions against the Pepsi Defendants. *See* Boyle Decl., ¶ 12; Harris Decl. ¶ 8.

By April 2, 2018, as authorized by § 4(a) of the GSA, the Oversight Committee had authorized Gibbons P.C. to prosecute the Pepsi Avoidance Actions and certain promotional accounts receivable claims against the Defendants on behalf of both the Debtors and the Committee. Boyle Decl., ¶ 14 Harris Decl., ¶ 10. On April 16, 2018, within the § 546 Statute of Limitations for bringing the Pepsi Avoidance Actions as extended by the Tolling Agreement, the Debtors and the Committee filed their Original Complaint. [Adv. Proc. Dkt. No. 1] See also Boyle Decl., ¶ 15; Harris Decl., ¶ 11.

In the Original Complaint, the Debtor's sought to avoid alleged preferential transfers *(id.,* Counts 1-10) and to recover on various contract and contract-related theories. *Id.,* Counts 11-41. Although, as authorized by §4(a) of the GSA, the Oversight Committee had approved Gibbons P.C., to bring this Adversary Proceeding (Boyle Decl. ¶ 15; Harris Decl. ¶ 11), Pachulski subsequently objected to the Original Complaint being filed on behalf of the Committee as well as the Debtors but agreed that the Debtors could prosecute the claims asserted in the Original Complaint. Boyle Decl., ¶ 16; Harris Decl., ¶ 12. In response to Pachulski's objection, on April 23, 2018, the Debtors filed the First Amended Complaint in this Adversary Proceeding, omitting the Committee as a plaintiff, but not adding new claims. [Adv. Proc. Dkt. No. 3] *See also* Boyle Decl., ¶ 17.; Harris Decl., ¶ 13. The Debtors took this action because, neither the Settlement Order nor the GSA affords the Committee sole authority or standing to litigate Pepsi Avoidance Actions on behalf of the Debtors' estates. [Adv. Proc. Dkt. No. 3, ¶ 7.

Additionally, as noted above, the GSA expressly provides for the Oversight Committee to appoint counsel to prosecute Pepsi Avoidance Actions if Pachulski is precluded from doing so

11

because of a conflict of interest. Frank Decl., Exh. 9, 4(a) It also bears noting that the Debtors assert both avoidance claims and contractual claims against the Defendants, and the Committee lacks authority to prosecute the Debtors' contract claims. *See id.*, Exh 9, §4. See also Caine Decl., ¶ 13.

The Debtors filed their Supplemental Gibbons Retention Application on May 8, 2018. [Bankr. Case Dkt. No. No. 4064] By the Supplemental Gibbons Retention Application, the Debtors expressly sought authorization of this Court to retain Gibbons P.C. to prosecute both the avoidance actions and the promotional accounts receivable claims against the Defendants. *Id.,* ¶¶ 12-24. By Order dated May 29, 2018, the Court granted the Supplemental Gibbons Retention Application. [Bankr. Case Dkt. No. 4085].

On August 17, 2018, the Debtors filed the Second Amended Complaint asserting preference claims in Counts One through Four and contract claims in Counts Five through Twenty-Five, and all of these claims were previously asserted in each of the earlier complaints. Adv. Proc. Dkt. No. 17.

### E.    The Defendants and Their Counsel Are Bankruptcy Savvy.

Since before April 20, 2015, Defendants PepsiCo, Inc., Frito, Bottling Group and other Pepsi-related parties have included sophisticated businesspeople with experience in dealing with Chapter 11 debtors in bankruptcy. Indeed, during the pendency of the Bankruptcy Case, Defendant PepsiCo, Inc. served on the Official Committee of Unsecured Creditors (the "**Haggen Committee**") in another significant retail grocery bankruptcy case pending in the United States Bankruptcy Court for the District of Delaware, *In re Haggen Holdings, LLC,* No. 15-11874 (the "**Haggen Case**"). Kleinman Decl., Ex. 15. In connection with the Bankruptcy Case, Defendants Frito and Bottling Group, LLC have been represented by experienced bankruptcy counsel. *See* the Kleinman Decl. at ¶¶25 through 28. Counsel for the Defendants never advised counsel for

12

the Committee that it would enter into the Tolling Agreements only if the Committee were the counter-party. Caine Decl., ¶ 9.

## LEGAL ARGUMENT

Pursuant to Fed. R. Civ. P. 56(a), which is made applicable to this Adversary Proceeding by Fed. R. Bankr. P. 7056, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. BANKR. P. 7056; FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all factual disputes and draw all reasonable inferences in favor of . . . the nonmoving party, *Cole v. Bd of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). Facts are material if they "might affect the outcome of the suit under the governing law[.]" *Solus Alt. Asset Mgmt. LP v. Delphi Auto, PLC* (*In re DPH Holdings Corp.*), 533 B.R. 20, 25 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). When considered in their appropriate context, the facts upon which the Defendants rely in support of the Pepsi Motion amply demonstrate that this Adversary Proceeding was initiated within the § 546 Statute of Limitations for the Debtors' Pepsi Avoidance Actions against Defendants Frito and Bottling Group. Accordingly, the Defendants are not entitled to summary judgment on Counts One through Four of the Second Amended Complaint. Because the Debtors have agreed to limit their contract claims against the Defendants to those accruing after April 16, 2014, the Pepsi Motion is moot as to Counts Five through Twenty-Five of the Complaint.

13

**A.**     **The Debtors *and the Committee* filed their Original Complaint in this Adversary Proceeding on April 16, 2018 within the § 546 Statute of Limitations.**

It cannot be stated enough that the Debtors *and the Committee* filed their Original

Complaint in this Adversary Proceeding on April 16, 2018 within the § 546 Statute of

Limitations as that statute had been extended by the Tolling Agreements. Accordingly, under the

Tolling Agreements, Pepsi is estopped from arguing that the Tolling Agreements are ineffective

to extend the time within which the Committee must commence an action to pursue the Pepsi

Avoidance Actions. *See* Kleinman Decl. ¶ 4; Exhs. 6, 10 and 13 through 15. For this simple

reason, the Pepsi Motion must be denied as to Counts One through Four of the Second Amended

Complaint.

**B.**     **The Debtors Are the Real Parties in Interest to the Tolling Agreements.**

The Debtors are undeniably the real parties in interest to the Tolling Agreements. It

cannot be overemphasized that the only claims that are subject of the Defendant's Motion and

Tolling Agreement are the Pepsi Avoidance Actions. *See* Kleinman Decl., Exhs. 6, 10, 13, 14

and 15. Those claims had not been assigned to the Committee; they remain assets of the

Debtors' bankruptcy estates. *Id*. *See also* 11 U.S.C. §§ 1107(a), 1108. The Committee was

merely authorized to bring those claims "on behalf of the Debtors' bankruptcy estates" and

authority to do so is significantly circumscribed. Kleinman Decl., *id*. To reiterate, the Pepsi

Avoidance Actions do not belong to the Committee and, therefore, are not the claims of the

Committee. *Id*.

14

1.  **The Circumstances under Which They Were Executed and Their Undeniable Purposes Demonstrates That the Debtors were the Real Parties-in-Interest to the Tolling Agreements.**

The Debtors acknowledge that the parol evidence rule precludes the use of extrinsic evidence to vary the terms of an agreement. However, as discussed below, evidence of its purpose or the circumstances surrounding its execution can be used to interpret a contract. As this Court has recognized "'[t]he meaning of particular [contractual] language . . . should be examined *in light of the business purposes sought to be achieved by the parties* and the plain meaning of the words chosen by them to effect those purposes (emphasis added).'" *See, e.g, In re DPH Holdings Corp.*, 553 B.R. 20, 27 (Bankr. S.D.N.Y. 2016) (citations omitted) Additionally, controlling law must always be considered when interpreting a contract. *See, e.g., Resolution Trust Cor. v. Diamond,* 45 F.3d 665, 673 (2d Cir. 1995) ("'[w]hen parties enter into a contract, they are presumed to accept all the rights and obligations imposed on their relationship by state (or federal) law") (citations omitted); *Fata v. S.A. Healy Co.*, 289 N.Y. 401, 406 (1943) ("[i]f the law is valid, it governs the contract, whether actually incorporated into the writing or not, since all contracts are assumed to be made with a view to the existing laws on the subject"). It is submitted that when the purpose of the Tolling Agreements, the circumstances surrounding their execution, and controlling law are taken into consideration, it is evident from the Tolling Agreements that the Debtors are the real parties-in-interest. Indeed, several of the tolling agreement cases on which Defendants rely support that very conclusion.

In *MCC Proceeds, Inc. v. Whitman & Ransom*, 1997 WL 289470 (S.D.N.Y. May 30, 1997), for example, the terms of the tolling agreement purported to bind the individual partners of a law firm. However, those individual partners were not named parties to the agreement and had not signed it. The court in *MCC Proceeds* nevertheless found that a tolling agreement bound those individual partners. 1997 WL 289470 *2. To make that finding, however, the court had to

15

go beyond the four corners of the tolling agreement and consider the requirements of New York partnership law. *Id.*

The court in *Resolution Trust Corporation v. Bonner*, 848 F.Supp. 96 (S.D. Tex. 1994) decided the case on the express language of the tolling agreement. However, the court first looked to the "circumstances surrounding the execution of the tolling agreement" to determine that there was only one reasonable interpretation of the agreement. 848 F. Supp. at 99. The court also considered the "surrounding circumstances" and the express purpose of the tolling agreement in its analysis. *Id.* In *Caguas Central Savings Bank v. United States*, 215 F.3d 1304,1309-10 (Fed. Cir. 2000), the Federal Circuit took into consideration the express terms of the tolling agreement, which preserved certain so-called "Goodwill Claims" of the Resolution Trust Corporation ("**RTC**") against the United States, as well as the purpose of that agreement in determining whether a tolling agreement preserved the derivative claims asserted by third parties arising out of alleged breaches of duty by the RTC.

Consistent with the reasoning in *MCC Proceeds*, the express language of the Tolling Agreements requires the consideration of applicable provisions of bankruptcy law. In that regard, the Tolling Agreements expressly acknowledge the Debtors' retention of their assets as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a), 1108. The Defendants do not—and cannot—adduce any evidence that the Pepsi Avoidance Actions have been transferred to the Committee or any other party. Indeed, the Committee is expressly charged to prosecute Pepsi Avoidance Actions "on behalf of the Debtors' estates," and expressly lacks the authority to unilaterally settle those claims. To reiterate, under bankruptcy law, the Pepsi Avoidance Actions are and remain assets of the Debtors' bankruptcy estate. The Committee's status vis-à-vis the Pepsi Avoidance Actions, including its entry into the Tolling Agreements, therefore, has always

16

been analogous to that of an agent or legal representative charged with preserving an asset of the Debtors' bankruptcy estates.

The reasoning in *Bonner* and *Caguas* requires that any interpretation of the Tolling Agreements considers the circumstances surrounding their execution, as well as their purpose. Such a consideration requires a recognition of the parameters that the GSA and the GSA Approval Order impose on the Committee's prosecution of the Pepsi Avoidance Actions. Those parameters expressly underscore the undeniable facts that (i) the Committee is acting solely on behalf of the Debtors' bankruptcy estates in prosecuting the Pepsi Avoidance Actions and (ii) its leeway in doing so is significantly circumscribed. The existence of those parameters undermines the Defendants' restricted interpretation of the Tolling Agreements as simply an agreement between two private parties to a commercial dispute. Such an interpretation ignores both the communal nature of the Bankruptcy Case and the *Debtors'* fiduciary duty to maximize the recovery on the Avoidance Actions for the benefit of their estates. By doing so, it "disregard[s] common sense in favor of formalistic literalism." *DPH Holdings*, 553 at 27. In sum, a consideration of the circumstances surrounding the execution of the Tolling Agreements, therefore, makes clear that the Committee was doing so only as part of its obligation to prosecute the Debtors' Pepsi Avoidance Actions for the benefit of the Debtors' bankruptcy estates.

Under the reasoning in *Bonner* and *Caguas*, consideration of the circumstances surrounding the execution of the Tolling Agreements leads to a consideration of their purpose. It is beyond cavil that the primary purpose of the Tolling Agreements was the preservation of the Pepsi Avoidance Actions from extinction as a result of the § 546 Statute of Limitations; that was the only reason they were necessary. Another purpose of the Tolling Agreements was to facilitate an amicable resolution of the *Debtors'* Avoidance Actions, a purpose that could not be

17

achieved. In sum, (i) the circumstances surrounding the execution of the Tolling Agreements demonstrates that the Pepsi Avoidance Actions are property of the Debtors' bankruptcy estates, (ii) the purpose of the Tolling Agreements was to preserve those claims; and (iii) the Committee was charged with prosecuting those claims on behalf of the Debtor's bankruptcy estates. Consequently, the Debtors, not the Committee, are the primary beneficiaries of and, therefore, the real parties-in-interest to the Tolling Agreements.

> **2.      The Pepsi Avoidance Actions the Debtors Assert in this Adversary Proceeding are the Same Avoidance Actions Preserved by the Tolling Agreements.**

It is also important to recognize here that the Debtors are asserting the very Pepsi Avoidance Actions that the Tolling Agreements were intended to preserve and they were only asserted after settlement negotiations seemed to fail. Cases such as *Caguas* and *Frazer v. United States*, 49 Fed. Cl. 73 (2001),[3] on which the Defendants rely, are distinguishable on this point. For example, in *Cagaus* and *Frazer,* the "Goodwill" claims asserted by the RTC (and later the Federal Deposit Insurance Corporation ("**FDIC**")) against the United States, which arose out of the United States' enactment of FIRREA and promulgation of enabling regulations (*Caguas*, 215 F.3d at 1307; *Frazer*, 49 Fed. Cl. at 735), were different from the derivative claims the *Caguas* plaintiffs asserted against the RTC and the *Frazer* plaintiffs asserted against the FDIC, which pertained violations of, *inter alia*, fiduciary duties *by the RTC and the FDIC*. *Caguas*, 215 F.3d at 1308. Those latter claims could not have been protected by the tolling agreements between the RTC and the FDIC, on the one hand, and the United States. However, the Debtors here are not

---

[3] *Frazer* was a derivative suit by former shareholders and directors of a failed savings and loan institution. Similar to the situation in *Caguas*, the Frazer plaintiffs attempted to assert what appeared to have been the FDIC's "Goodwill" claims against the United States (*Frazer*, 49 Fed. Cl. at 735) as well as their own claims against the FDIC for the FDIC's alleged breaches of its fiduciary duties to them. *Id*. The plaintiffs tried to avail themselves of the protections of a tolling agreement between the FDIC and the United States (which appears to have resembled the US/RTC Tolling Agreement and preserved the FDIC's own "Goodwill" claims against the United States). Citing *Caguas*, but with no analysis, the court rebuffed their attempt to do so. *Id*., at 736

asserting in this Adversary Proceeding derivative claims that were not preserved by the Tolling Agreements. Rather they are asserting the very claims underlying the Pepsi Avoidance Actions that the Tolling Agreements were intended to preserve and they were only asserted after settlement negotiations seemed to fail, and, for that reason, the Defendants' reliance on *Caguas* and similar case is misplaced.[4]

Additionally, a distinction must be drawn between a Chapter 11 bankruptcy case like the Bankruptcy Case and the RTC/FDIC receivership proceedings in *Caguas* and *Frazer*, cases on which the Defendants place a heavy reliance.[5] An RTC receivership proceeding is more akin to a Chapter 7 bankruptcy proceeding. In a Chapter 7 liquidation, the Chapter 7 trustee becomes the owner of the bankruptcy estate with full authority to administer the bankruptcy estate, including liquidating assets and prosecuting claims. *See* 11 U.S.C. § 704(a)(1). When RTC was appointed as a receiver for a failed financial institution, it enjoyed similar control and authority over the assets of the failed institution's receivership estate. It "succeed[ed] to all of the rights and privileges of the failed institution" and was "authorized to realize on upon the assets of the institution." *Resolution Trust Corp. v. MacKenzie*, 60 F.3d 972, 977 (2d Cir. 1995), *citing* 12 U.S.C. § 1821(d)(2)(A) (superseded) and 12 U.S.C. § 1821(d)(2)(E) (superseded). The RTC generally had the "power to transfer any asset . . . of a failed institution . . . ." *Resolution Trust Corp. v. Cheshire Management, Co.*, Inc., 18 F.3d 330, 335 (6th Cir. 1993), citing 12 U.S.C. § 1821(d)(2)(G) (superseded). In sum, once appointed, a Chapter 7 Trustee and the RTC are deemed to own the claims of their respective estates. Consequently, those claims no longer

---

[4] In *In re Dynegy, Inc., Securities Litigation*, 339 F.Supp 2d 804, 864 (S.D. Tex. 2004), for example, the court found that certain investor plaintiffs could not avail themselves of the protections of a tolling agreement that identified the class of claims it preserved, and the investors' claims were not included in any of those classes.

2761995.1 032596-97802

belong to either (i) the Chapter 7 debtor or the failed financial institution in an RTC receivership

or to (ii) the creditors, members or equity holders of the debtor or failed financial institution.

By contrast, Chapter 11 debtors-in-possession like the Debtors own the estates' claims,

including avoidance claims (*see* 11 U.S.C. §§ 1107(a); 1108), a reality expressly acknowledged

in each of Tolling Agreements.  As Chapter 11 debtors, and in contrast to creditors or

shareholders of a Chapter 7 debtor or a failed financial institution in an RTC receivership (or

even an FDIC receivership), the Debtors are direct and not incidental beneficiaries of the claims

of their bankruptcy estates.  They own the claims.   Vis-à-vis the Pepsi Avoidance Actions,

therefore, the Debtors stand in a position substantively different from that of the plaintiffs in

*Caguas* and the investors in *Frazer*, who did not own and could not assert the claims against the

United States that belonged to the RTC or the FDIC, respectively.  The Debtors are not

precluded merely by their status as Chapter 11 debtors from asserting the very claims that were

the subject of the Tolling Agreements.  For that reason both *Caguas* and *Frazer* are

distinguishable from this Adversary Proceeding.

### 3. It Should Come as No Surprise to the Defendants That They Are Facing the Debtors in the Adversary Proceeding.

Like the Debtors, the Defendants are managed by sophisticated business people, many

with significant experience in bankruptcy.[6]  In addition to having significant bankruptcy

experience, the Defendants have retained experienced bankruptcy counsel to represent them in

the Bankruptcy Case.  These parties have been involved in the Bankruptcy Case for more than

four years now, and have been addressing the Pepsi Avoidance Actions first with the Committee

and now with the Debtors for about three years.

---

[6] Indeed, shortly after the Petition Date in the Bankruptcy Case, Defendant PepsiCo, Inc. was appointed to the Haggen Committee.  Like the Bankruptcy Case, the Haggen case was a significant retail grocery bankruptcy.

2761995.1 032596-97802

Despite their posturing, the Defendants and their counsel have always understood that the Committee was only representing the interests of the Debtors' bankruptcy estates when prosecuting the Pepsi Avoidance Actions. The Defendants' counsel was served with the motion for approval of the GSA, which advises the reader that the Committee was authorized to prosecute the Avoidance Actions "on behalf of the Debtors' estates." Each of the five Tolling Agreements quoted the provision of the GSA Approval Order to the same effect. They also acknowledged the Debtors' retention of their assets, which would have included the Pepsi Avoidance Actions, as debtors-in-position. In his March 26, 2018 e-mail to, *inter alia*, Mr. Kleinman, Mr. Caine advised that the Oversight Committee had rejected the Defendants' settlement offer and had decided to go forward with litigation. He went on further to state that "[a]t [Pachulski's] request, the Oversight Committee will engage new counsel *to represent the estates* (emphasis added)." The Defendants' knowledge that the Committee was acting on behalf of the Debtors' bankruptcy estates could only have been reinforced by the express recognition in the Tolling Agreements on the Committee's lack of authority to settle the Pepsi Avoidance Actions unilaterally. Additionally, in their discussion that the Debtors are not the Committee's successors-in-interest or assigns contained in the Pepsi Brief (defined below), the Defendants repeatedly discuss and acknowledge that the Debtors possess the Pepsi Avoidance Actions and not the Committee. In sum, the Defendants have known for some time that the Pepsi Avoidance Actions belonged to the Debtors' estates and not to the Committee. Harris Decl. ¶ 16.

Although the Defendants maintain in the Pepsi Motion that these Tolling Agreements were only entered into between counsel for the Committee and the bankruptcy savvy Defendants, the Tolling Agreements contain inurement and merger clauses but do not contain any provisions

21

expressly disclaiming third party benefits or enforcement.[7]  Many contracts contain such

provisions if desired.  The failure to include such a provision indicates that the identity of the

party with whom the Defendants were negotiating—or ultimately litigating—the Pepsi

Avoidance Actions was either immaterial or known.  In fact, but for the GSA, which

significantly limits the Committee's ability to prosecute the Pepsi Avoidance Actions the

Defendants would have been negotiating with the parties with whom they are now litigating the

Pepsi Avoidance Actions—the Debtors.

Finally, the Defendants' statement in the Pepsi Brief (defined below) that the Debtors

could have been made parties to the Tolling Agreements by the addition of three little words,

"and the Debtors," is disingenuous.  Those "three little words" do, in fact, appear in the Tolling

Agreements in the form of the express recognition that the Committee is prosecuting the

Avoidance Actions on behalf of the Debtors' bankruptcy estate.   That being the case, the

Defendants cannot deny that, as the owners of the Avoidance Actions, the Debtors are the real

beneficiaries and parties-in-interest to the Tolling Agreements and the assertion of a statute of

limitations defense in the Pepsi Motion is nothing more than a disingenuous attempt to evade

these claims.  The Court should stop that attempt in its tracks.

### C.     The Debtors are Intended Third Party Beneficiaries of the Tolling Agreements.

To the extent that the Debtors are not real parties-in-interest to the Tolling Agreements,

they are intended third party beneficiaries.  *See Wilson Land Corp. v. Smith Barney, Inc.*, 1999

WL 1939270 *8 (E.D.N.C. May 17, 1999) (court provided plan participants who had not

---

[7] The Defendants adduce no evidence that they, in fact, bargained for the right to negotiate only with the Committee. Mr. Caine advises that Defendants' counsel never advised him that they would only negotiate with the Committee.  I

executed tolling agreements the opportunity to prove their status as intended third party beneficiaries).

It is well established that a contract can be enforced by a non-party who is a third party beneficiary. *Consolidated Edison, Inc. v. Northeast Utilities*, 426 F.3d 524, 527 (2d Cir. 2005), *citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Corp.*, 66 N.Y.2d 38, 43-44 (1985); Restatement (Second) of Contracts § 302, Reporter's Note, comment a (1981). A third party right to enforce a contract is created when an agreement clearly evidences the parties' intent to permit such enforcement. *Consolidated Edison*, 426 F.3d at 528 (citations omitted); *Subaru Distributors Corp v. Subaru of America, Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citations omitted); *In re Cavalry Construction, Inc.*, 2013 WL 5682471 *10 (Bankr. S.D.N.Y. Oct. 18, 2013) (citations omitted); *Fourth Ocean*, 66 N.Y.2d at 45; *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (App. Div. 1st Dept. 2001). The intent to create such a right may be expressed or implied. *Caguas*, 215 F.3d at 1309, *citing Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (quoting *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994). An intended third party beneficiary need not be identified in the contract or even be identifiable at the time the contract was made. *Cavalry Construction, id.* (*quoting Strauss v. Belle Realty*, 469 N.Y.S. 2d 948, 950 (App. Div. 2d Dep't 1983). The beneficiary must, however, be an intended and not merely an incidental beneficiary. *Cavalry Construction*, 2013 WL 5682471 * 9, *citing Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251-52 (2d Cir. 2006); *Keller Foundations, LLC v. Zurich American Ins. Co.*, 758 Fed. Appx. 22, 26 (2d Cir. 2018) (applying Delaware law).

"A non-party is an intended third-party beneficiary if (*inter alia*) 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties,'"

23

*Consolidated Edison, id.* (quoting *Fourth Ocean*, 66 N.Y.2d at 45), and ". . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Subaru*, 425 F.3d at 124. When determining whether the parties to a contract intended to create third party benefits, the court should consider the "'circumstances surrounding the transaction as well as the actual language of the contract.'" *Subaru, id.* (quoting Restatement § 302, Reporters note, Comment a (citing *Cutler v. Hartford Life Ins. Co.*, 22 N.Y.2d 245 (1968). *See also Consolidated Edison*, 426 F.3d at 529 (the Second Circuit expressly considered the "context and scheme" of the agreement when determining whether it authorized third-party enforcement). Consequently, "the obligation to perform to the third party beneficiary need not be expressly stated expressly stated in the contract. *Board of Education of Northport—E. Northport Union Free School Dist. v. Long Island Power Auth.*, 130 AD 3d 953, 954-55 (2d Dept. 2015).

It is beyond dispute that none of the Tolling Agreements expressly denies the Debtors the status of third party beneficiaries.[8] Rather, they strongly evidence an intent that the Debtors enjoy third party benefits. The Tolling Agreements expressly acknowledge that the Committee's authority to prosecute Pepsi Avoidance Actions *only on behalf of the Debtors' bankruptcy estates*. The only claims subject to the Tolling Agreements are the Pepsi Avoidance Actions. The Debtors continue to hold the Pepsi Avoidance Actions; they have not been assigned to the Committee or any other party and the Tolling Agreements do not provide otherwise. As the Defendants themselves must admit, the Debtors themselves will directly benefit from any

---

[8] For this reason, the following cases on which the Defendants rely in support of their contention that the Debtors are not third party beneficiaries of the Tolling Agreements is misplaced: *Consolidated Edison*, 426 F.3d at 528-29 (third party beneficiary rights expressly limited); *Cavalry Construction*, 2013 WL 5682741 * 9 (agreement expressly disclaimed the third party beneficiary claims asserted by masonry contractors); *PT. Bank Mizuho Indonesia v. PT. Inda Kiat Pulp & Paper Corp.*, 25 A.D.3d 470, 471 (1st Dept., 2006).

24

recovery on the Pepsi Avoidance Actions, whether by settlement or litigation. Such recoveries will go directly to the Debtors or the Prepetition Notes Secured Parties. The terms and provisions of the Tolling Agreements, therefore, demonstrate that their primary purpose is to preserve the Pepsi Avoidance Actions for the benefit of the Debtors pending settlement negotiations or the commencement of litigation. Indeed, the Tolling Agreements serve no other purpose, and the Defendants' focus on the Covenant Not to Sue provision contained in the Tolling Agreements to the virtual exclusion of their remaining provisions cannot efface that reality. Once Pachulski was conflicted and then objected to the Committee being named a plaintiff in this Adversary Proceeding, it was absolutely necessary for the Debtors to prosecute the Pepsi Avoidance Actions in order to effectuate the very purpose of the Tolling Agreements - which was the preservation of the Pepsi Avoidance Actions pending resolution by compromise or litigation. For that reason alone, the Debtors are at the very least third party beneficiaries of the Tolling Agreements. *Fourth Ocean*, 66 N.Y.2d at 45 (allowing third party enforcement where necessary to effectuate the intention of the parties).

That the Debtors are not identified as parties to the Tolling Agreement is of no moment. In point of fact, they were not unknown or unknowable as beneficiaries of the Tolling Agreement when the Defendants and the Committee exercised those agreements. The Defendants had to know from the plain language of the Agreements for whose benefit the Committee was negotiating with them and entering into the Tolling Agreements. They also had to know that the Debtors—the owners of the Avoidance Actions—were not merely incidental beneficiaries of the Tolling Agreements.[9] Resolution of the Avoidance Actions potentially provide the Debtors with substantial, direct financial benefits.

---

[9] For that reason the Defendant misplace their reliance on cases like *Keller Foundations*, 758 Fed. Appx. at 26-27 (parent corporation was not a third party beneficiary of insurance policies issued to its subsidiaries) and *E.I. DuPont*

2761995.1 032596-97802

The Defendants' position with respect to the Debtors' third party status completely fails to address the "circumstances surrounding the transaction." *Subaru*, 435 F.3d at 124. A review of the circumstances surrounding the execution of the Tolling Agreements requires a consideration of the GSA and the GSA Approval Order, which provide the Committee with limited authority to prosecute the Avoidance Actions and, therefore to enter into the Tolling Agreements. Neither the GSA nor the GSA Settlement Order effectuate a transfer or assignment of the Debtors' Pepsi Avoidance Actions to the Committee. They provide that the Committee was prosecuting those claims expressly for the benefit of the Debtors' bankruptcy estates. Any recoveries on those claims would go directly to the Debtors or to the Prepetition Notes Secured Parties. Consequently, the primary and direct beneficiaries of the Pepsi Avoidance Actions (and, perforce, the Tolling Agreements preserving them) are the Debtors.

The circumstances surrounding the Tolling Agreements details the significant cabining of the Committee's authority with respect to the Pepsi Avoidance Actions by the "direction and oversight" of the Oversight Committee, for which the Debtors designate a member. That "direction and oversight" embraces the "prosecution, settlement, abandonment or other decisions concerning the Avoidance Actions." Mr. Caine's February 28, 2018 e-mail to Mr. Kleinman, demonstrates decisions whether to consent to further extensions of the § 506 Statute of Limitations were subject to Oversight Committee review and consideration. Indeed, the Oversight Committee—not the Committee—has the authority to select alternate counsel to prosecute the Pepsi Avoidance Actions in the event that Pachulski faced a conflict of interest. Moreover, § 4(a) merely provides in the event that Pachulski faced a conflict of interest, "the

---

*de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196-97 (3rd Cir. 2001) (parent corporation was not a third party beneficiary of contracts between its subsidiaries and third parties). In contrast to the situations in *Keller Foundations* and *E.I. DuPont de Nemours*, the benefits the Tolling Agreement provides the Debtors are direct and substantial.

2761995.1 032596-97802

Oversight Committee shall select alternative counsel *for the prosecution of that matter* (emphasis added). Section 4(a) does not explicitly require that the counsel be selected to represent the Committee, implicitly leaving open the possibility that the Debtors could take over the prosecution of the Pepsi Avoidance Actions if necessary to protect its interests in them.

The inclusion of so-called "inurement" clauses in the Tolling Agreement does not preclude third-party reliance on and enforcement of the Tolling Agreements. The Defendants reliance on *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp.2d 372 (S.D.N.Y. 2010) and *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998) to the contrary is misplaced. In *Anwar*, the court rejected the contention that the inclusion of an inurement clause in an agreement precluded third party enforcement. 782 F. Supp.2d at 429-30. The court recognized that the inclusion of inurement clauses have been found to "indicate" that a contract does not evince an intention to provide for third-party enforcement. *Id.*, at 429. However, the court concluded that inurement clauses must be weighed against directives in a contract to render performance to a third party. *Id.* at 431, *citing Subaru Distribs. Corp*, 435 F.3d at 124. Under the reasoning in *Anwar*, the inurement clauses in the Tolling Agreements must be read in light of their recognition that the Debtors retained possession of their assets, including the Avoidance Actions, and that Committee was acting on behalf of the Debtors' bankruptcy estates in prosecuting those claims.

*Piccoli* is similarly inapposite. There, the party seeking status as a third party was no longer a member of one of the classes of persons arguably entitled to a third party beneficiary status at the time of the actions with respect to which it sought such status. 19 F.Supp. 2d at 163, n. 36. Moreover, the agreement in *Piccoli* included a provision licensing intellectual property that incorporated **both** anti-assignment and inurement provisions. *Id.* at 163. After determining

27

that the face of the contract did not evidence an intent to authorize third-party enforcement, the court in *Piccoli* concluded that the inclusion of both an anti-assignment and an inurement clause "suggests" that the parties did not intend that third parties would benefit from the contract. *Id.* at 164. Based on *Piccoli's* reasoning, the Tolling Agreements' express recognition that the Committee was acting on behalf of the Debtors' estates, particularly in light of the failure of sophisticated actors like the Defendants and their counsel to include anti-assignment clauses in those agreements, precludes a conclusion that the Debtors were barred from enforcing the Tolling Agreements by bringing the Adversary Proceeding once it appeared that a voluntary resolution of the claims raised in the Pepsi Avoidance action would not occur without litigation.[10]

The Debtors have amply demonstrated above that the terms and provisions of the Tolling Agreement, their undeniable purpose and the circumstances leading up to their execution irrefutably evidence their status as third party beneficiaries. Consequently, although the Tolling Agreements does not expressly provide for enforcement by the Debtors, the Debtors' status as third party beneficiaries allows them to do so—such as by the initiation of this Adversary Proceedings— and to benefit from the tolling of the § 546 Statute of Limitations.

**D.    Because They Hold the Pepsi Avoidance Actions That Are the Subject of the Tolling Agreements, the Debtors Need Not to Have Been the Committee's Successors-in-Interest, Assigns or Legal Representatives to Have Initiated this Adversary Proceeding.**

The Defendants' contention at pages 17 through 27 of their Memorandum of Law in support of the Pepsi Motion ("**Pepsi Brief**") that the Debtors are not the Committee's successors-in-interest, assigns or legal representatives misses the point. The Debtors' Pepsi Avoidance

---

[10] The Debtors not do not rely on the inurement clauses as evidence of their status as third party beneficiaries. Accordingly, the Defendants reliance on *Sazerac Co., Inc. v. Falk*, 861 F.Supp. 253, 258 (S.D.N.Y. 1994) is misplaced.

2761995.1 032596-97802

Actions were never assigned to the Committee; nor is the Committee, by any stretch of the imagination, the Debtors' successor-in-interest. In point of fact, echoing the express terms of § 4(a) of the GSA and decretal ¶ 5 of the GSA Approval Order, each of the Tolling Agreements expressly recognizes that the Committee is authorized to bring the Pepsi Avoidance Actions "on behalf of the Debtors' [bankruptcy] estates."[11] As demonstrated above, the Debtors are the real parties-in-interest to, or at least intended third party beneficiaries of, the Tolling Agreements. Accordingly, the Committee is serving in a role analogous to a legal representative of the Debtors and the Defendants' contentions at pages 17 through 27 of the Pepsi Brief must be rejected for the red herrings that they are.

**E.**     **Equitable Tolling is Unnecessary in This Case.**

The Defendants' contention at pp. 27 through 29 of the Pepsi Brief that equitable tolling of the § 546 Statute of Limitations is inappropriate with respect to the Pepsi Avoidance Actions similarly misses the point. As demonstrated above, the Debtors are the real parties in interest— or at least intended third party beneficiaries—of the Tolling Agreements. The Original Complaint was filed on April 16, 2018, within the § 546 Statute of Limitations as extended by the Tolling Agreements. So the Debtors need not rely upon on the doctrine of equitable tolling.

Nonetheless, in no way did the Debtors sit on their rights with respect to the Pepsi Avoidance Actions. Because the Debtors were intended third party beneficiaries—if not the real parties-in-interest to the Tolling Agreements, there was no reason to add the "three little words" referenced by the Defendants at p. 29 of the Pepsi Brief. Moreover, as provided by the GSA and the GSA Approval Order, the Committee was acting on behalf of the Debtors' bankruptcy estates

---

[11] It also bears noting that § 4(a) of the GSA and decretal ¶ 5 of the GSA Approval Order expressly subordinate the Committee's standing to prosecute the Avoidance Actions to the "oversight and *direction*" of the Oversight Committee for which the Debtors designate a member (emphasis added).

2761995.1 032596-97802

when negotiating with the Defendants and obtaining extensions of the § 546 Statute of Limitations. The Debtors sought active prosecution of the Pepsi Avoidance Actions only after it became clear that the Defendants' formal, written settlement proposals of January 4, 2018 were unacceptable which raised concerns about the failure to resolve the Pepsi Avoidance Actions. After a thorough review of those proposals, the Debtors along with the Oversight Committee endeavored to promptly file the Original Complaint on April 16, 2018—within the extended § 546 Statute of Limitations. There were no laches or undue delay on the part of the Debtors.

**F. The Defendants' Motion is Moot as to Counts Five through Twenty-Five of the Second Amended Complaint.**

To avoid unnecessary expense and delay, the Debtors agree to waive any accounts receivable claims on which the Debtors seek recovery in Counts Five through Twenty-Five of the Second Amended Complaint that arose before April 16, 2014. These *de minimis* claims which were made evident in Frito's proof of claim, collectively amount to $17,169.66, thereby mooting the Defendants Motion as to those Counts. The Debtors retain the right to present evidence of the substantial payments the Defendants made on invoices for services provided prior to April 16, 2014 because that information is relevant to the Debtors' accounts receivable claims.

**G. The Court Should Permit the Oversight Committee to Authorize the Debtors' Special Counsel in this Adversary Proceeding to Represent the Committee.**

Faced with Pachulski's inability to litigate against the Defendants and as expressly provided by § 4(a) of the GSA, the Oversight Committee selected the Debtors' Special Counsel in this Adversary Proceeding to prosecute the Pepsi Avoidance Actions. It must be noted that § 4(a) does not expressly provide that the "alternative counsel" selected by the Oversight Committee must actually represent the Committee, only that such counsel must prosecute the Pepsi Avoidance Actions. Indeed, in his March 16, 2018 e-mail to Mr. Kleinman, Mr. Caine

30

advised that Pachulski had requested that the Oversight Committee retain alternate counsel "to represent the [Debtors' bankruptcy] estates." The Original Complaint named the Committee as a plaintiff. It was only because of the objection of Pachulski (who has acknowledged that the Pepsi Avoidance Actions belong to the Debtors) that the Committee was removed as a Plaintiff. As amply demonstrated above, the Committee need not be a party to this Adversary Proceeding. However, the Debtors consent to a further amendment of the Second Amended Complaint at the request of the Oversight Committee to name the name the Committee as a Plaintiff.

## CONCLUSION

The Debtors are intended third party beneficiaries of—if not the real parties-in-interest to the Tolling Agreements. The Committee's authority to prosecute Avoidance Actions is subject to the "oversight and direction of the Oversight Committee and the Defendants were aware of those limitations. The Original Complaint was filed within the § 546 Statute of Limitations for the Pepsi Avoidance Actions as extended by the Tolling Agreements. Accordingly, it was timely and, for that reason the Defendants' Motion must be denied as to Counts One Through Four of the Second Amended Complaint. The Debtor has waived accounts receivable claims against the

31

Defendants accruing before April 16, 2014 and, therefore the remainder of the Defendants'

Motion is moot.  Accordingly, the Defendants' motion must be denied in all respects.


Dated: November 4, 2019                         Respectfully submitted,

                                                THE GREAT ATLANTIC & PACIFIC TEA
                                                COMPANY, et al., Plaintiffs


                                                By:    /s/ David N. Crapo
                                                       One of their attorneys

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
Telephone: (973) 596-4821
Facsimile: (973) 639-6219
E-mail: Pduffy@gibbonslaw.com
David N. Crapo, Esq.
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com

*Special Counsel for the Plaintiff,*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

2761995.1 032596-97802