**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
Telephone: (973) 596-4821
Facsimile: (973) 639-6219
E-mail: Pduffy@gibbonslaw.com
David N. Crapo, Esq.
Telephone: (973) 596-4523
Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com

*Special Counsel for the Plaintiff,*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 15-23007 (RDD)<br><br>(Jointly Administered) |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. *et al.*<br><br>        Plaintiff,<br><br>     v.<br><br>PEPSICO, INC; BOTTLING GROUP, LLC (d/b/a PEPSI BEVERAGES COMPANY and f/d/b/a<br><br>THE PEPSI BOTTLING GROUP); FRITO-LAY NORTH AMERICA, INC.; QUAKER SALES AND DISTRIBUTION, INC.;  MULLER QUAKER DAIRY, LLC; STACY'S PITA CHIP COMPANY, INC.; PEPSI BOTTLING GROUP NJ; and PEPSI USA,<br><br>        Defendants. | Adv. Proc. No. 18-08245 (rdd)<br><br>**PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH <u>TWENTY-FIVE</u>** |

**Introduction**

    In accordance with Local Rule 7056-1(c), Plaintiffs The Great Atlantic & Pacific Tea

Company, Inc. and its affiliated debtors (collectively "**GAPT**" or "**Debtors**") submit this

Counter-Statement of Material Facts in support of  its Opposition to Defendants' Motion for

Summary Judgment on Counts One Through Four and Partial Summary Judgment on Counts

Five Through Twenty-Five ("**Opposition**") in opposing the Defendants' Motion for Summary

Judgment on Counts One Through Four and Partial Summary Judgment on Counts Five through

Twenty-Five ("**Motion**") in this adversary proceeding ("**Adversary Proceeding**").  In making

this Counter-Statement, the Debtors rely where indicatedon the: (i) the Declaration of Jeanne M.

Boyle in support of the Opposition, dated November 4, 2019 ("**Boyle Decl.**");  the Declaration of

Adam C. Harris in support of the Opposition, dated November 4, 2019 ("**Harris Decl**."); and

(iii) the Declaration of Andrew W. Caine in support of the Opposition, dated November 4, 2019

(the "**Caine Decl.**").

    The Defendants are not entitled to summary judgment on Counts One through Four of the

Second Amended Adversary Complaint ("**Second Amended Complaint**") the Debtors filed in

this Adversary Proceeding on August 17, 2019. [Adv. Proc. Dkt. No. 17[1]]   Effective June 19,

2017, the Defendants and the Official Committee of Unsecured Creditors ("**Committee**") in the

above-captioned jointly administered bankruptcy cases  had entered into a Stipulation and

Tolling Agreement Extending Statutes of Limitations and four extensions thereof (collectively,

the "**Tolling Agreements**").  *See the Declaration of Jeremy C. Kleinman in Support of Motion*

*for Summary Judgment on Counts One through Four and Partial Summary Judgment on Counts*

*Five Through Twenty-Five* ("**Kleinman Decl.**"), Exh. 6 at pp. 9-13, Exh. 10 at pp. 4-8; Exh. 13

---

[1] As used in this Counter-Statement, "Adv. Proc. Dkt. No." shall to items of the Docket of this Adversary
Proceeding.

1

at pp. 4-8; Exh. 14 at pp. 4-8; and Exh. 15 at pp 4-8. [Adv. Proc. Dkt. Nos. 34-6, 34-10, 34-13,

34-14 and 34-15.]  By virtue of the Tolling Agreements, the statute of limitations contained in 11

U.S.C. § 546(a)(1)(A) ("**§ 546 Statute of Limitations**") for bringing avoidance actions under,

*inter alia*, 11 U.S.C. § 547(b) in the above-captioned jointly-administered Chapter 11 cases was

extended to and including April 16, 2018.  Adv. Proc. Dkt. Nos. 34-6, p. 10-11; 34-10, p. 5-6,

34-13, p. 5-6; 34-14, p. 5-6; and 34-15, p. 5-6.

Each of the Tolling Agreements expressly recited that this Court had granted the

Committee authority to prosecute Avoidance Actions (defined in Statement of Fact No. 8 below)

"on behalf of the Debtors' estates . . . ."  Adv. Proc. Dkt. Nos. 34-6, p. 10; 34-10  p. 5; 34-13, p.

5; 34-14, p. 5; and 34-15,  p. 5.  The Debtors and their estates, therefore, remained the real

parties in interest with respect to preference and other Avoidance Actions against the Defendants

that had been entrusted to the Committee for prosecution—for the benefit of the Debtors'

bankruptcy estates.  Moreover, because one intended effect of the Tolling Agreements was to

preserve those claims from the effect of the § 546 Statute of Limitations, the Debtors and their

estates were obvious, intended and ultimate beneficiaries of the Tolling Agreements.  *Id.*  The

Debtors *and the Committee* filed their original Complaint ("**Original Complaint**") in this

Adversary Proceeding on April 16, 2018 [Adv. Proc. Dkt. No. 1], within the § 546 Statute of

Limitations as that statute had been extended by the Tolling Agreements.

In the Original Complaint and each of the successor complaints, the Debtors asserted

claims for unpaid amounts for promotional services and transactions.   [Adv. Proc. Dkt. No. 17,

Counts 5 through 25]  Those claims include claims for those unpaid amounts identified in the

proof of claim filed by Defendant Frito North America, Inc. ("**Frito**").  [U.S.B.C. Case No.

2759245.1 032596-97802

15POC 4019]   In the interest of avoiding litigation over those *de minimis* claims[2] asserted in the

Second Amended Complaint, the Debtors waive that portion of the claims they assert in Counts

Five through Twenty-Five of the Second Amended Complaint in this case, alleging breach of

contract, promissory estoppel, and unjust enrichment theories, that arise under contracts for sale

and that accrued before April 16, 2014.

**The Bankruptcy Parties**

1.       On July 19, 2015 (the "**Petition Date**"), the Debtors filed their petitions for relief

in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), in

initiating the chapter 11 bankruptcy case captioned *In re The Great Atlantic and Pacific Tea Co.,*

*Inc., et al.,* Case No. 15-23007-rdd (the "**Bankruptcy Case**"). [Bankruptcy Case Dkt. No. 1][3]

> **DEBTORS' RESPONSE:**   Admitted, except to note that, as demonstrated by
> the caption of this pleading, the Bankruptcy Case, in fact, consists of a number of
> jointly administered Chapter 11 bankruptcy cases.

2.       On July 20, 2015, the Court entered an order granting the Debtors' motion for

joint administration of their cases. [Bankruptcy Case Dkt. No. 57]

> **DEBTORS' RESPONSE:**   Admitted.

3.       On July 24, 2015, William K. Harrington, the United States Trustee for District 2,

appointed seven of the Debtors' creditors to the Official Committee of Unsecured Creditors (the

"**Committee**") pursuant to 11 U.S.C. § 1102. [Bankruptcy Case Dkt. No. 164]

> **DEBTORS' RESPONSE:**   Admitted, except to note that William K.

Harrington is the United States Trustee for Region 2.

---

[2] According to Frito's proof of claim, these *de minimis* claims aggregate $17,169.66
[3] References to "Bankruptcy Case Dkt. No." refer to filings on the docket in the Bankruptcy Case.

3

4.      The Debtors were managed by sophisticated businesspeople, some of whom were members of Debtors' management team during the Debtors' prior chapter 11 cases filed in 2010. *(See, e.g.,* Ex. 5, McGarry Declaration, ¶¶ 1-2). [4]

> **DEBTORS' RESPONSE:**    Debtors admit that their management included sophisticated business people, some of whom were members of their management team during the prior Chapter 11 bankruptcy cases filed in 2010, but deny the materiality of the fact to the resolution of the Motion.

5.      The Debtors were (and continue to be) represented by experienced counsel. *(See, e.g.,* Ex. 6, Weil Gotshal Retention Motion, ¶¶ 8-9).[5]

> **DEBTORS' RESPONSE:**    Debtors admit that they are and continue to be represented by experienced counsel, but deny the materiality of the fact to the resolution of the Motion.

**The Global Settlement**

6.      On May 10, 2016, the Debtors and the Committee filed the Joint Motion of Debtors and Official Committee of Unsecured Creditors for Approval of a Global Settlement Pursuant to Bankruptcy Rule 9019(A) and Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 And 363(C)(2) [Bankruptcy Case Dkt. No. 2786], seeking approval of an attached Global Settlement Agreement among the Debtors, the Committee, the Prepetition PIK Notes Trustee, the Prepetition Convertible Notes Trustee, the Unions and the Pension Plans (collectively, the "**GSA Parties**") (Ex. 7).

---

[4] Declaration of Christopher W. McGarry Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District Of New York [Bankruptcy Case Dkt. No. 4] (the "**McGarry Declaration**").

[5] Application of Debtors Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a) and 2016 and Local Rules 2014-1 and 2016-1 for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Commencement Date [Bankruptcy Case Dkt. No. 100] (the "**Weil Gotshal Retention Motion**").

2759245.1 032596-97802

**DEBTORS' RESPONSE:**    Admitted.  The document speaks for itself and also amends the Debtors' authority for use of cash collateral.

7.    The Court granted the motion on June 6, 2016. (Ex. 5, GSA Approval Order).[6]

**DEBTORS' RESPONSE:**    Admitted, except notes that the GSA Approval Order can be found at Ex. 8 and adds that the GSA Approval Order expressly approved the GSA "pursuant to Bankruptcy Rule 9019."

8.    The GSA Parties defined "Avoidance Action" in pertinent part as "an action or other claim of the Debtors' estates arising under sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any other avoidance actions under their state law analogs." (Ex. 9, GSA, § 1).[7]

**DEBTORS' RESPONSE:**    Admitted.

9.    The GSA Parties agreed that the "Avoidance Actions shall be prosecuted by the . . . Committee, which shall have *full standing to do so on behalf of the Debtors' estates*." *(Id., §* 4(a)). They further agreed that "[t]he Committee's prosecution of the Avoidance Actions is subject to the direction of the Oversight Committee, comprised of one designee from the Committee, one designee from the Debtors, and one designee from the Prepetition Notes Secured Parties." *(Id.,* § 4(a)) (emphasis added).

**DEBTORS' RESPONSE:**    Denied.  Section 4(a) actually states as follows:

Following the Effective Date, the Avoidance Action shall be prosecuted by the Creditors' Committee, which shall have full standing to do so on behalf of the Debtors' estates, subject to the oversight and direction of the

---

[6] Order (A) Approving Global Settlement Agreement and (B) Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2) [Bankruptcy Case Dkt. No. 2868] (the "**GSA Approval Order**").

[7] Global Settlement Agreement *(In re Great Atlantic & Pacific Tea Co., Inc.,* 15-23007-rdd, Dkt. No. 2868-2) (the "**GSA**")

Oversight Committee with respect to the prosecution, settlement, abandonment or other decision regarding the Avoidance Actions. Pachulski, Stang, Ziehl & Jones, LLP ("PSZJ") shall prosecute the Avoidance Actions on a contingency fee basis or on such other written terms and conditions acceptable to the Oversight Committee, unless PSZJ has a conflict of interest, in which case the Oversight Committee shall select alternative counsel for the prosecution of such matter.

10.     The GSA Approval Order provides that the Committee shall be authorized to prosecute the Avoidance Actions on behalf of the Debtors' estates, subject to the oversight and direction of the Oversight Committee, *in accordance with and subject to Sections 4(a) and (b) of the Global Settlement Agreement.* (Ex. 8, GSA Approval Order, ¶ 5 (emphasis added)).

**DEBTORS' RESPONSE:**    Admitted.

11.     Section 4(b) of the GSA provides a formula for dividing the proceeds of Avoidance Actions between the Prepetition Notes Secured Parties and the Debtors' estates. (Ex. 9, GSA, § 4(b)).

**DEBTORS' RESPONSE:**    Admitted, except deny the materiality of this fact to the resolution of the Motion.

12.     Section 4(a) of the GSA also provides that Pachulski, Stang, Ziehl & Jones LLP ("**Pachulski**") shall represent the Committee in prosecuting the Avoidance Actions but directs that the Oversight Committee shall select alternative counsel if Pachulski has a conflict. *(Id.* § 4(a)).

**DEBTORS' RESPONSE:**    Denied.  Section 4(a) of the actually states as follows: "Pachulski, Stang, Ziehl & Jones LLP ("PSZJ") shall prosecute the avoidance actions on a contingency fee basis or on such other written terms and conditions acceptable to the Oversight Committee, unless PSZJ has a conflict of

6

interest in which case the Oversight Committee shall select alternative counsel for

the prosecution of such matter."

## Pachulski Contacts Pepsi Regarding Avoidance Actions

13.     On December 14, 2016, Pachulski partner Andrew W. Caine sent form letters

regarding "Potential Avoidance Claim" to multiple Pepsi-related entities (Kleinman Decl. Group

Ex. 1, Avoidance Letters)."[8]

> **DEBTORS' RESPONSE:**    Admitted, except to note that attached to the
> Kleinman Decl. Group Ex. 1 are four, not seven, demand letters dated December
> 14, 2016 from Pachulski partner Andrew Caine to Frito-Lay, Inc.; Pepsi-Cola
> Bottling—Pennsauk; Pepsi Cola—Hasbrouck Heights and Pepsi-Cola Bottling
> Co.

14.     In the Avoidance Letters, Mr. Caine states that his firm represents the Committee.

*(Id.).*

> **DEBTORS' RESPONSE:**    Admitted.

15.     In the Avoidance Letters, Mr. Caine states that "[t]he Committee is interested in

engaging in discussions aimed toward resolving these claims without the attendant time and

expense of litigation. We are willing to openly discuss the matter within the next thirty (30)

days." (*Id.*).

> **DEBTORS' RESPONSE:**    Admitted.

16.     Following Pepsi's receipt of the Avoidance Letters, Pepsi's counsel Jeremy C.

Kleinman and Mr. Caine engaged in prolonged settlement discussions. *(See, e.g.,* Ex. 8,

Kleinman Declaration, ¶ 3; *see also* Kleinman Decl. Ex. 2-16, email messages between A. Caine

and J. Kleinman; Ex. 10-14, Tolling Agreements (as defined below)).

---

[8] December 14, 2016 demand letters from Pachulski partner Andrew Caine to Frito-Lay, Inc.; Pepsi-Cola Bottling-Pennsauk; Pepsi-Cola-Hasbrouck Heights; Pepsi Metro Bottling Co.; Pepsi-Cola of Newburgh; Pepsi-Cola Bottling Co.; and Pepsi-Cola Bottling of New York (the "**Avoidance Letters**")

2759245.1 032596-97802

**DEBTORS' RESPONSE:**    Admitted.

**The Tolling Agreements**

17.    Section 546 provides in pertinent part that an action or proceeding under section 544, 545, 547, 548, or 553 may not be commenced more than 2 years after the entry of the order for relief. 11 U.S.C. § 546.

**DEBTORS' RESPONSE:**    Objection; improper for a statement of facts.

18.    July 19, 2017 was the date two years after the entry of the order for relief in the Debtors' cases. *(See* Bankruptcy Case Dkt. No. 1).

**DEBTORS' RESPONSE:**    Admitted.

19.    On June 9, 2017, Mr. Caine wrote to Pepsi's counsel, stating that the Committee was beginning to prepare preference complaints "given the upcoming 2 year anniversary of the July 19, 2015 petition dates." (Kleinman Decl., ¶¶ 4-8; Kleinman Decl. Ex. 2, email with the subject line "A&P preference/tolling stipulation" from Andrew Caine to Jeremy Kleinman and Cozen O'Connor partner Mark E. Felger, dated June 9, 2017). Mr. Caine stated that "[t]he Committee would prefer to postpone formal litigation with your clients while we continue discussions toward informal resolution." *(Id.).* Mr. Caine also proposed a tolling agreement between Pepsi and the Committee. *(Id.).*

**DEBTORS' RESPONSE:**    The Debtors do not deny the creation of the e-mail referenced above or its contents. However, the e-mail speaks for itself and it is unclear to whom each of Mr. Caine's uses of the pronoun, "we" in the e-mail refers.

20.    On June 19, 2017, the Committee and Pepsi entered into a tolling agreement tolling statutes of limitation from July 17, 2017 through October 16, 2017 (Ex. 10, First Tolling Agreement, ¶ 2).[9] The Debtors were not parties to the First Tolling Agreement. *(See id.).*

---

[9] Stipulation and Tolling Agreement Extending Statutes of Limitation, dated June 19, 2017, between Committee and

8

**DEBTORS' RESPONSE:**   The first sentence is admitted.  The second sentence is denied.  The Debtors acknowledge that they did not execute the First Tolling Agreement.  However, the First Tolling Agreement expressly recognizes that, as debtors in possession, the Debtors "have continued in the possession of their property" and that the Committee was authorized to prosecute Avoidance Actions (as defined in the GSA) *on behalf of the Debtors' estates. Id.*   One of the indisputable and primary purposes and intentions underlying the First Tolling Agreement was to prevent the loss of the Debtors' and their estates' Avoidance Actions against the Defendants as a result of the § 546 Statute of Limitations while the Committee and the Defendants were negotiating resolutions of these claims.  *See, generally, id.*  Neither the GSA nor the First Tolling Agreement provided for the assignment or transfer of the Debtors and their estates' Avoidance Actions to the Committee.  *See generally, id.*; Frank Decl., Exh. 9. § 4(a).  Indeed, the GSA expressly provides that the authority to direct the prosecution, settlement, and to make other decisions with respect to the Avoidance Actions belongs to the Oversight Committee, of which the Debtors collectively designated a member, and was not transferred or assigned to the Committee. *Id.*

21.     In the First Tolling Agreement, Pepsi and the Committee agreed that all statutes of limitations applicable to "any cause of action brought by the ***Committee*** against Pepsi" would be tolled and extended through October 16, 2017. *(Id., § 2 (emphasis added)).*

---

Pepsi (the "**First Tolling Agreement**").

9

2759245.1 032596-97802

**DEBTORS' RESPONSE:**   Denied, because the only causes of action that the Committee could bring against the Defendants that were covered by the First Tolling Agreement were the Avoidance Actions, which belong to the Debtors and their estates and over which the Committee has always lacked sole prosecutory, settlement, and other decision-making authority.   Frank Decl., Exh. 9, § 4(a).

22.    Pepsi and the Committee further agreed that the First Tolling Agreement was their entire agreement and could only be modified by an agreement in writing. *(Id., § 3(e))*.

**DEBTORS' RESPONSE:**   Admitted; the document speaks for itself. However, the only claims subject to the First Tolling Agreement were the Avoidance Actions against the Defendants which belong to the Debtors and their estates and over which the Committee always lacked sole prosecutory, settlement, and other decision-making authority.  Frank Decl., Exh. 9, § 4(a).

23.    Pepsi and the Committee also agreed that the First Tolling Agreement was without prejudice to either of their rights, privileges, and remedies under applicable law and that each of them reserved such rights, privileges, and remedies. *(Id., § 3(f))*.

**DEBTORS' RESPONSE:**    Admitted; the document speaks for itself. However, the only claims subject to the First Tolling Agreement were the Avoidance Actions against the Defendants which belong to the Debtors and their estates and over which the Committee has always lacked sole prosecutory, settlement, and other decision-making authority.  Frank Decl., Exh. 9, § 4(a).

10

24.    The Debtors never asked to be made parties to the First Tolling Agreement. (Ex.

10, Kleinman Declaration, ¶12).

> **DEBTORS' RESPONSE:**    Admitted, because the Committee was acting on
>
> behalf of the Debtors' estates in prosecuting the Debtors' and their estates'
>
> Avoidance Actions and, therefore, tolling the statute of limitations for the
>
> Avoidance Actions.  Kleinman Decl., Exhs. 6, 10, 13-15.

25.    The Debtors never entered into or asked Pepsi to enter into any tolling agreement.

*(Id.)*.

> **DEBTORS' RESPONSE:**    Admitted, because the Committee was acting on
>
> behalf of the Debtors' estates in prosecuting the Debtors' and their estates'
>
> Avoidance Actions and, therefore, tolling the statute of limitations for the
>
> Avoidance Actions.  Kleinman Decl., Exhs. 6, 10, 13-15.

> **DEBTORS' RESPONSE:**

26.    The two-year anniversary of the order for relief passed without any tolling

agreement between Pepsi and the Debtors. *(Id.)*.

> **DEBTORS' RESPONSE:**    Denied.  The Committee was acting on behalf of the
>
> Debtors' estates in prosecuting the Debtors' and their estates' Avoidance Actions
>
> and, therefore, tolling the statute of limitations for the Avoidance Actions.
>
> Kleinman Decl., Exhs. 6, 10, 13-15.

11

27.    After entering into the First Tolling Agreement, the Committee and Pepsi

continued informal settlement discussions *(Id.; see also* Kleinman Decl. Ex. 9-11, email

messages between A. Caine and J. Kleinman; Ex. 11-14, Second through Fifth Tolling

Agreements (as defined below)). On or about October 2, 2017, the Committee proposed an

additional tolling of the statutes of limitations for the Committee. *(See* Kleinman Decl. ¶ 4,

Kleinman Decl. Ex. 10, email chain between A. Caine and J. Kleinman from October 2, 2017

through October 3, 2017).

> **DEBTORS' RESPONSE:**    The first sentence is admitted.  The second sentence
>
> is denied.  On or about October 2, 2017, the Committee proposed an additional
>
> tolling of the statute of limitations on behalf of the Debtors' bankruptcy estates as
>
> the Committee was only authorized to prosecute Avoidance Actions *on behalf of*
>
> *the Debtors' estates.*  Kleinman Decl., Exhs. 6, 10, 13-15.

28.    On October 3, 2017, Pepsi and the Committee entered into an amended

tolling agreement extending the statutes of limitation from October 16, 2017 through

December 16, 2017 for the Committee. (Ex. 11, Second Tolling Agreement, ¶ 2))[10] The

Debtors were not parties to the Second Tolling Agreement. *(Id.).*[11]

> **DEBTORS' RESPONSE:**    Denied.  On October 3, 2017, Pepsi and the
>
> Committee on behalf of the Debtors' bankruptcy estates entered into an amended
>
> agreement extending the statutes of limitation from October 16, 2017 through

---

[10] Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated October 3, 2017, between the Committee and Pepsi. (Ex. 11 (the "**Second Tolling Agreement**").

[11] All the Tolling Agreements are identical except for the time period to be tolled. Because the statute of limitations imposed by II U.S.C. § 546 had already run by the date of the Second Tolling Agreement, in the interests of brevity, Pepsi has omitted "entire agreement" and "no waiver" sections from further iterations with regard to the Third, Fourth, and Fifth Tolling Agreements.

2759245.1 032596-97802

December 15, 2017 for the benefit of the Debtors and their bankruptcy estates.

Kleinman Decl., Exh. 10.   The Debtors acknowledge that they did not execute the

Second Tolling Agreement.   However, the Second Tolling Agreement expressly

recognizes that, as debtors in possession, the Debtors "have continued in the

possession of their property" and the Committee was authorized to prosecute

Avoidance Actions *on behalf of the Debtors' estates*. *Id.*  One indisputable and

primary purpose and intention of the Second Tolling Agreement was to prevent

the loss of the Debtors' and their estates' Avoidance Actions against the

Defendants as a result of the § 546 Statute of Limitations while the Committee

and the Defendants were negotiating resolutions of the Debtors' estates'

Avoidance Actions.  *Id.*  Neither the GSA nor the Second Tolling Agreement

provided for the assignment or transfer of the Debtors and their estates'

Avoidance Actions to the Committee.  *Id.*; Frank Decl., Exh. 9, § 4(a).  Indeed,

the GSA expressly provides that the authority to direct the prosecution,

settlement, and to make other decisions for the Avoidance Actions belongs to the

Oversight Committee, of which the Debtors collectively  designated a member,

and was not transferred or assigned to the Committee.  Frank Decl., Exh. 9 §§ 1,

4(a)/

29.    Pepsi and the Committee continued their discussions and on December 6, 2017,

counsel for the Committee told Pepsi's counsel that he had written to the Oversight Committee.

(Kleinman Decl. Ex. 12, email message with subject line "RE: A&P/2nd amended tolling

stipulation — Pepsi," from A. Caine to J. Kleinman, dated December 6, 2017).

           **DEBTORS' RESPONSE:**    Admitted.

13

30.      By December 11, 2017, Pepsi and the Committee had executed an additional

tolling agreement tolling the statutes of limitation through February 16, 2018 for the Committee.

(Ex. 12, Third Tolling Agreement, ¶ 2; Kleinman Decl. Ex. 13).[12] The Debtors were not parties

to the Third Tolling Agreement. *(See id.).*

> **DEBTORS' RESPONSE:**    Denied.  By December 11, 2017, Pepsi and the
>
> Committee on behalf of the Debtors' bankruptcy estates had executed an
>
> additional tolling agreement tolling the statutes of limitations through February
>
> 16, 2018 for the benefit of the Debtors and their bankruptcy estates. Kleinman
>
> Decl., Exh. 13.  The Debtors acknowledge that they did not execute the Third
>
> Tolling Agreement.  However, the Third Tolling Agreement expressly recognizes
>
> that, as debtors in possession, the Debtors "have continued in the possession of
>
> their property" and the Committee was authorized to prosecute the Avoidance
>
> Actions *on behalf of the Debtors' estates*.  *Id*.  One indisputable and primary
>
> purpose and intention of the Third Tolling Agreement was to prevent the loss of
>
> the Debtors' and their estates' Avoidance Actions against the Defendants as a
>
> result of the § 546 Statute of Limitations while the Committee and the Defendants
>
> were negotiating resolutions of the Debtors' Estates Avoidance Actions.  *Id.*
>
> Neither the GSA nor the Third Tolling Agreement provided for the assignment or
>
> transfer of the Debtors' or their estates' Avoidance Actions to the Committee.  Id..
>
> Frank Decl., Exh. 9, § 4(a). Indeed, the GSA expressly provides that the authority
>
> to direct the prosecution, settlement, and to make other decisions for the
>
> Avoidance Actions belongs to the Oversight Committee, of which the Debtors

---

[12] Second Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated December 11, 2017, between the Committee and Pepsi (the "**Third Tolling Agreement**")

2759245.1 032596-97802

collectively designated a member, and was not transferred or assigned to the

Committee.  Frank Decl., Exh. 9, §§ 1, 4(a).

31.    In the Third Tolling Agreement, Pepsi and the Committee agreed that all statutes

of limitation applicable to "any cause of action brought by the Committee against Pepsi" would

be tolled and extended through February 16, 2018. *(Id., § 2)*.

> **DEBTORS' RESPONSE:**    Denied, because the only causes of action that the
>
> Committee could bring against the Defendants that were covered by the Third
>
> Tolling Agreement were the Avoidance Actions, which belong to the Debtors and
>
> their estates and over which the Committee has always lacked sole prosecutory,
>
> settlement, and other decision-making authority.  Kleinman Decl., Exh. 13; Frank
>
> Decl., Exh. 9, § 4(a).

32.    As Pepsi and the Committee continued their discussions, Pepsi and the Committee

executed another tolling agreement on February 5*, 2018*, this time tolling the statutes of

limitation through March 16, 2018 for the Committee. (Ex. 13, Fourth Tolling Agreement, ¶ 2).[13]

The Debtors were not parties to the Fourth Tolling Agreement *(Id.)*.

> **DEBTORS' RESPONSE:**    Denied.  The Fourth Tolling Agreement is located
>
> at Exh. 14 of the Kleinman Decl.  Moreover by February 15, 2018, Pepsi and the
>
> Committee on behalf of the Debtor's bankruptcy estates executed another tolling
>
> agreement, this time tolling the statute of limitations through March 16, 2018 for
>
> the benefit of the Debtors and their bankruptcy estates.  Kleinman Decl., Exh. 14.
>
> The Debtors acknowledge that they did not execute the Fourth Tolling

---

[13] Third Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated as of February 15, 2018, between the Committee and Pepsi (the "**Fourth Tolling Agreement**").

2759245.1 032596-97802

Agreement.  However, the Fourth Tolling Agreement expressly recognizes that,

as debtors in possession, the Debtors "have continued in the possession of their

property", and the Committee was authorized to prosecute Avoidance Actions *on*

*behalf of the Debtors*.  *Id.*  One indisputable and primary purpose and intention of

the Fourth Tolling Agreement was to prevent the loss of the Debtors' and their

estates' Avoidance Actions against the Defendants as a result of the § 546 Statute

of Limitations while the Committee and the Defendants were negotiating

resolutions of the Debtors' estates' Avoidance Actions.  *Id.*  Neither the GSA nor

the Fourth Tolling Agreement provided for the assignment or transfer of the

Debtors' or their estates' Avoidance Actions to the Committee.  Id., Frank Decl.,

Exh. 9, § 4(a).  Indeed, the GSA expressly provides that the authority to direct the

prosecution, settlement, and to make other decisions for the Avoidance Actions

belongs to the Oversight Committee, of which the Debtors collectively designate

a member, and was not transferred or assigned to the Committee.  Frank Decl.,

Exh. 9, §§ 1, 4(a).

33.     In the Fourth Tolling Agreement, Pepsi and the Committee agreed that all statutes

of limitation applicable to "any cause of action brought by the Committee against Pepsi" would

be tolled and extended through March 16, 2018. *(Id., § 2)*.

**DEBTORS' RESPONSE:**   Denied, because the only causes of action that the

Committee could bring against the Defendants that were covered by the Fourth

Tolling Agreement were the Avoidance Actions which belong to the Debtors and

their estates and over which the Committee lacked sole prosecutory, settlement,

and other decision-making authority.  Frank Decl., Exh. 9, § 4(a).

16

34.   Discussions continued and on February 28, 2018, counsel for the Committee

wrote to Pepsi's counsel:

> I believe that we are making a little progress, but A&P need [sic] more time to
> consider a response. The Oversight Committee wants to try to get a deal done, and
> has agreed to further extend the tolling to April 16. I will send you for [sic] their
> amended tolling agreements for review.

(Kleinman Decl. Ex. 15, email chain with the subject line "A&P," from Andrew Caine to Jeremy

Kleinman, dated February 28, 2018-March 1, 2018, and accompanying message chain).

**DEBTORS' RESPONSE:**   Admitted.

35.   Pepsi and the Committee entered into their fifth and final tolling agreement

effective March 15, 2018. (Ex. 14, Fifth Tolling Agreement).[14] In the Fifth Tolling Agreement,

Pepsi and the Committee agreed that all statutes of limitation applicable to "any cause of action

brought by the Committee against Pepsi" would be tolled and extended through April 16, 2018.

*(Id., § 2).* The Debtors were not parties to the Fifth Tolling Agreement. *(Id.).*

**DEBTORS' RESPONSE:**   The first sentence is admitted.  The second and third

sentences are denied.  The second sentence is denied because the only causes of

action that the Committee could bring against the Defendants that were covered

by the Fifth Tolling Agreement were the Pepsi Avoidance Actions, which belong

to the Debtors and their bankruptcy estates and over which the Committee has

always lacked sole prosecutor, settlement and other decision-making authority.

Frank Decl., Exh. 9, 4(a).  The third sentence is denied because, although the

Debtors did not execute the Fifth Tolling Agreement, the Fifth Tolling Agreement

---

[14] Fourth Amended Stipulation and Tolling Agreement Extending Statutes of Limitation, dated as of March 15,
2018, between the Committee and Pepsi (the "**Fifth Tolling Agreement**" and with the First through Fourth Tolling
Agreements, the "**Tolling Agreements**")

2759245.1 032596-97802

expressly recognizes that the Committee was authorized to prosecute Avoidance

Actions *on behalf of the Debtors and their estates*. Kleinman Decl., Exh. 15.

One indisputable and primary purpose and intention of the Fifth Tolling

Agreement was to prevent the  loss of the Debtors and the Debtors' bankruptcy

estates' Pepsi Avoidance Actions as a result of the § 546 Statute of Limitations

while the Committee and the Defendants were negotiating a resolution of the

Avoidance Actions. *Id.* Neither the GSA nor the Fifth Tolling Agreement

provided for the assignment or transfer of the Debtors and their estates'

Avoidance Actions to the Committee. *Id.*; Frank Decl., Exh. 9, § 4(a). Indeed,

the GSA expressly provides that authority to direct the prosecution, settlement,

and to make other decisions for the resolution of the Avoidance Actions belongs

to the Oversight Committee, of which the Debtors collectively designate a

member, and was not transferred or assigned to the Committee. Frank Decl., Exh.

9, §§ 1, 4(a).

**The Haggen Case**

36.    On September 21, 2015, Pepsi was appointed to the Official Committee of

Unsecured Creditors (the "**Haggen Committee**") in the bankruptcy case captioned *In re Haggen*

*Holdings, LLC,* No. 15-11874 and pending in the United States Bankruptcy Court for the District

of Delaware (the "**Haggen Case**"). (Ex. 15, Haggen Committee Appointment).[15]

> **DEBTORS' RESPONSE:**    The Debtors do not deny this fact as it pertains to
>
> defendant PepsiCo, Inc., but do not concede this as to the other Pepsi Defendants

---

[15] Notice of Appointment of Creditors' Committee *(In re Haggen Holdings, LLC,* 15-11874-kg, Dkt. No. 126) (the
"**Haggen Committee Appointment**").

2759245.1 032596-97802

which were not expressly appointed, and do not concede its relevance or

materiality in this Adversary Proceeding.

37.    In December 2016, when Mr. Caine sent the Avoidance Letters *(see* Kleinman

Decl. Group Ex. 1, Avoidance Letters), Pepsi had been a Haggen Committee member for more

than a year. *(See* Ex. 15.).

>    **DEBTORS' RESPONSE:**    The Debtors do not deny this fact as it pertains to
>
>    defendant PepsiCo, Inc., but do not concede this as to the other Pepsi Defendants
>
>    which were not expressly appointed a Haggen Committee member, and do not
>
>    concede its relevance or materiality in this Adversary Proceeding.  The Debtors
>
>    also note that, even before the expiration of the original § 546 Statute of
>
>    Limitations with respect to the Avoidance Actions, Defendant PepsiCo, Inc. had
>
>    to be aware that Pachulski had been serving simultaneously as counsel for both
>
>    Committee and the Haggen Committee for more than a year.  Kleinman Decl, ¶¶
>
>    25-28.

38.    When Mr. Caine sent the Avoidance Letters, Pachulski had been serving as

counsel to the Haggen Committee for over a year. (Ex. 16, Haggen Retention Order, ¶ 2).[16]

>    **DEBTORS' RESPONSE:**    The Debtors do not deny this fact, but do not
>
>    concede its relevance or materiality in this Adversary Proceeding.  The Debtors
>
>    also note that, even before the expiration of the original § 546 Statute of
>
>    Limitations with respect to the Avoidance Actions, Defendant PepsiCo, Inc. had

---

[16] Order Authorizing and Approving the Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to September 21, 2015 *(In re Haggen Holdings, LLC,* 15-11874-kg, Dkt. No. 670) (the "**Haggen Retention Order**").

19

to be aware that Pachulski had been serving simultaneously as counsel for both

Committee and the Haggen Committee for more than a year.  Kleinman Decl., ¶¶

26-28.

39.    Pachulski represented the Haggen Committee in litigation against the debtors'

lenders and equity holders where Pepsi, as a Haggen Committee member, produced confidential

documents and gave deposition testimony containing proprietary business information that

necessarily became known to Pachulski. *(See* Kleinman Declaration, ¶¶ 27-30).

> **DEBTORS' RESPONSE:**    The Debtors lack sufficient knowledge and
>
> information to permit them to admit or deny this fact.  The Debtors further do not
>
> concede the relevance or materiality of this fact in this Adversary Proceeding.
>
> The Debtors also note that Defendant PepsiCo, Inc., would have had to have
>
> known of Pachulski's contemporaneous representation of the Committee and the
>
> Haggen Committee at the time it produced confidential documents and gave
>
> deposition testimony containing proprietary business information that necessarily
>
> became known to Pachulski.  Kleinman Decl., ¶¶ 25-28.

40.    Due to Pachulski's possession of this information, on March 16, 2018, the day

after Pepsi and the Committee entered into the Fifth Tolling Agreement, Mr. Caine wrote to Mr.

Kleinman:

> I have just been told that the Oversight Committee has decided not to accept your
> clients' most recent offer, and will move forward with litigation. At PSZJ's
> request, the Oversight Committee will engage new counsel to represent the
> estates.
>
> Feel free to call me if you like. I am sorry that we were not able to put together a
> resolution.

20

(Kleinman Decl. Ex. 16, email with the subject line "A&P/Pepsi & Canada Dry" from Andrew

Caine to Jeremy Kleinman and Mark Felger, dated March 16, 2018; *see also,* Kleinman

Declaration, ¶ 20).

>    **DEBTORS' RESPONSE:**    The Debtors do not deny that Mr. Caine sent the e-
>
>    mail referenced at fact no. 40 or the content of the e-mail; the document speaks
>
>    for itself.  However, the Debtors lack sufficient knowledge and information to
>
>    permit them to form a belief as to the reason Mr. Caine sent the referenced e-mail
>
>    to counsel for the Pepsi Defendants.  The Debtors further do not concede the
>
>    relevance or materiality of this fact to the resolution of the Motion.

**The Adversary Proceeding**

41.    On April 16, 2018, almost nine months after the July 19, 2017 limitation date

imposed by § 546, the law firm Gibbons P.C. (**"Gibbons"**), purporting to act on behalf of both

the Committee and the Debtors, filed the complaint signed by David N. Crapo that initiated this

adversary proceeding. (Ex. 1, Original Complaint).

>    **DEBTORS' RESPONSE:**    The Debtors object to this statement to the extent
>
>    that it constitutes a conclusion of law rather than a statement of fact, but admit
>
>    that, on April 16, 2018, the extended limitations date for the Debtors' estates'
>
>    Pepsi Avoidance Action, Special Counsel Gibbons P.C. filed the Original
>
>    Complaint on behalf of the Committee and the Debtors.

42.    In the Original Complaint, the Debtor's sought to avoid alleged preferential

transfers *(id.,* Counts 1-10) and to recover on various contract and contract-related theories. *(Id.,*

Counts 11-41).

2759245.1 032596-97802

**DEBTORS' RESPONSE:**   Admitted; the document speaks for itself.  It is

further admitted that the Debtors also sought by the Original Complaint and as

contemplated by the GSA to continue the Committee's role in prosecuting the

Avoidance Actions on behalf of the Debtors' bankruptcy estates.  Boyle Decl., ¶

12; Harris Decl. ¶ 8.

43.     Without reference to specific transactions, the Debtors also alleged that they were

entitled to recovery on transactions with Pepsi dating back to December 24, 2010. *(See, e.g. id.,*

in ¶¶ 134, 138-42).

**DEBTORS' RESPONSE:**   Denied.  Although Paragraphs 134 and 138-42 of

the Original Complaint state correctly that the Debtors and Defendant Frito

entered into numerous promotional transactions, they do not state that the Debtors

seek to recover for unpaid invoices related to promotional transactions as far back

as 2010.  In fact, the only promotional transactions occurring prior to April 16,

2014 with respect to which the Debtors seek recovery are those few promotional

transactions with respect to which Defendant Frito acknowledges non-payment in

the proof of claim it filed in the Bankruptcy Case.  [Bankuptcy Case Claims Dkt.

POC 4019]

44.     On April 17, 2018, Mr. Caine wrote to Mr. Kleinman that "Gibbons mistakenly

filed the complaint on behalf of the Committee. We have asked that they change the party to the

Debtors." (Kleinman Declaration ¶ 24; Kleinman Decl. Ex. 18, email with the subject line "RE:

A&P," from Andrew Caine to Jeremy Kleinman, dated April 17, 2018, and accompanying email

chain).

22

2759245.1 032596-97802

> **DEBTORS' RESPONSE:**    The Defendants do not deny that Mr. Caine sent the
> e-mail referenced in factual statement no. 44 and that the e-mail says what it says.
> However, Gibbons P.C. filed the Original Complaint on behalf of both the
> Debtors and the Committee with the authorization of the Oversight Committee.
> Boyle Decl., ¶ 14; Harris Decl., ¶ 11.

45.    On April 23, 2018, the Debtors filed the FAC, naming themselves as sole
plaintiffs. (Ex. 2, FAC).[17]  By this time, both the § 546 statute of limitations and the agreed
tolling period for the Committee had passed. *(See* Bankruptcy Case Dkt. No. 1; *see also* Ex. 10-
14, Tolling Agreements).

> **DEBTORS' RESPONSE:**    The Debtors object to this statement to the extent
> that it constitutes a conclusion of law rather than a statement of fact.  Subject to
> that objection, the Debtors admit the first sentence and deny the second sentence,
> because the Committee had always entered into the Tolling Agreements for the
> benefit of the Debtors.  Kleinman Decl., Exhs. 6, 10, 13-15.

46.    In the FAC, the Debtors continued to assert preference claims *(Id.,* Counts 1-8)
and contract and contract-related *claims (Id.,* Counts 9-39) based on transactions with Pepsi
dating back to December 24, 2010 *(See, e.g., id.,* in ¶¶ 119, 123-27).

> **DEBTORS' RESPONSE:**    Admit that the Debtors continued to assert their
> preference claims against Defendants Frito and Bottling Group which were
> initially alleged by both the Committee on behalf of the Debtors and their
> bankruptcy estates and the Debtors in the Original Complaint.  This statement is

---

[17] Debtors' First Amended Complaint [Adv. Proc. Dkt. No. 3] (the "**FAC**").

2759245.1 032596-97802

otherwise denied.  The only promotional transactions occurring prior to April 16,

2014 with respect to which the Debtors seek recovery are those few promotional

transactions with respect to which Defendant Frito acknowledges non-payment in

its proof of claim in the Bankruptcy Case.  [Bankr. Case Proof of Claim No.

4019]

47.    In the FAC, the Debtors state that:

Neither the Settlement Order nor the GSA affords the Committee sole authority or
standing to litigate Avoidance Actions on behalf of the Debtors' estates, and
neither the Settlement Order nor the GSA impacts or limits the Debtors' authority
and standing to prosecute contractual claims on behalf of their bankruptcy
estates[.]

(FAC, ¶ 7).

**DEBTORS' RESPONSE:**    Admitted.  Additionally, as noted above, the GSA

expressly provides for the Oversight Committee to appoint counsel to prosecute

Avoidance Actions if Pachulski has a conflict of interest and reserves authority

for, among other things, prosecution, settlement and other decisions regarding

Avoidance Actions to the Oversight Committee.  Frank Decl., Exh. 9, §§ 1, 4(a).

48.    The Debtors further state that "[b]ecause this adversary proceeding includes both

Avoidance Action [sic] and contractual claims against the Defendant, the Debtors have elected to

prosecute this Adversary Proceeding themselves. Counsel for the Committee and the Lenders

have consented to the Debtors' prosecution of this adversary proceeding." *(Id.,* ¶ 8).

**DEBTORS' RESPONSE:**    Admitted.  The Debtors also note that a conflict

prevented Pachulski from actually litigating the Avoidance Actions against the

Defendants in this Adversary Proceeding.  Boyle Decl., ¶12; Harris Decl., ¶ 8.

24

49.     On August 17, 2018, the Debtors filed the SAC, with identical paragraphs 7 and 8. (Ex. 3, SAC, ¶¶ 7-8).

> **DEBTORS' RESPONSE:**    Admitted except to note that there is one grammatical difference between paragraph 7 in the First Amended Adversary Complaint and paragraph 7 in the Second Amended Compliant, and there are a couple of grammatical differences between paragraph 8 in the First Amended Adversary Complaint and paragraph 8 in the Second Amended Compliant.

50.     In the SAC, the Debtors continued to assert preference claims *(Id.,* Counts 1-4) and contract and contract-related claims *(Id.,* Counts 5-26) based on transactions with Pepsi dating back to December 24, 2010 *(See, e.g., id.,* ¶¶ 84, 88-92).

> **DEBTORS' RESPONSE:**    Admits that the Second Amended Complaint asserts preference claims and promotional accounts receivables claims, but, for the reasons set forth in the Debtors' response to Statement of Fact No. 43 above, denies that the Debtors seek to recover on promotional accounts receivable claims going back to 2010.

51.     On October 4, 2018, Pepsi filed its Answer and Affirmative Defenses, including its Fourth Affirmative Defense, based on the statute of limitations set forth in § 546, and its Fifth Affirmative Defense, based on "the statute of limitations under the laws of the state of New York." (Ex. 4, Answer, Fifth Affirmative Defense).[18]

> **DEBTORS' RESPONSE:**    Admitted.

52.     In its Answer, Pepsi responded to Debtors' allegation that:

_____

[18] Answer [Adv. Proc. Dkt. No. 23] (the "**Answer**").

2759245.1 032596-97802

> Neither the Settlement Order nor the GSA affords the Committee sole authority or
> standing to litigate Avoidance Actions on behalf of the Debtors' estates, and
> neither the Settlement Order nor the GSA impacts or limits the Debtors' authority
> and standing to prosecute contractual claims on behalf of their bankruptcy estates.

*(See* Ex. 3, SAC, ¶ 7) by stating that "[t]he allegations in Paragraph 7 are conclusions of law as

to which no response is required. To the extent a response is required, Defendants lack

knowledge or information sufficient to form a belief about the truth of the allegations in

Paragraph 7." (Ex. 4, Answer, ¶ 7).

**DEBTORS' RESPONSE:**   Admitted.

**Plaintiff's Statement of Additional Relevant and Material Facts**

53.     At least from and after April 20, 2015, Defendants Frito and Bottling Group, LLC

employed sophisticated businesspeople with experience in dealing with Chapter 11 debtors in

bankruptcy.  Kleinman Decl., ¶ 26-28; Statement of facts in Support of Motion for Summary

Judgment on Counts One through Four and Partial Summary Judgment on Counts Five through

Twenty-Five ("**Defendants' SOF**"), ¶¶ 36-40 [Adv. Proc. Dkt No. 33].  In that regard, by e-mail

dated January 11, 2017, Mr. Caine forwarded the Avoidance Letters to Conrad Ragan of Pepsi.

Kleinman Decl., Exh. 15, p. 4.  Similarly, Taylor Ricketts, who was the Debtors' primary contact

at Pepsi, was the designee of Defendant PepsiCo, Inc. on the Haggen Committee.  Frank Decl.,

Exh. 18 (*Notice of Appointment of Committee of Unsecured Creditors* in the Haggen Case).

54.     In connection with the Bankruptcy Case and the Haggen Case, Defendants Frito

and Bottling Group, LLC have been represented by experienced bankruptcy counsel.  *See*

Kleinman Decl. at ¶¶ 1 through 24 and Exhs.  1 through 18 thereto.  [Adv. Proc. Dkt. Nos. 34

through 34-18]

26

55.     Counsel for the Defendants never advised counsel for the Committee that it would enter into the Tolling Agreements only if the Committee were the counter-party. Caine Decl., ¶ 9.

56.     On the first page of the preference demand letters dated December 14, 2016 attached as consolidated Exhibit 1 to the Kleinman Decl., Pachulski expressly advised counsel for the Defendants that the Committee was authorized to "prosecute avoidance actions on behalf of the Debtors' estates."   [Adv. Proc. Dkt. No. No. 34-1, at pp. 2, 4, 6 and 8]

57.     The Oversight Committee was to approve extensions of the § 546 Statute of Limitations with respect to the Pepsi Avoidance Actions. *See* § 4(a) of the GSA (setting out the Committee's limited authority to prosecute Avoidance Actions); Caine Decl. ¶9, and Boyle Decl. ¶ 8.

58.     By e-mail to Jeremy Kleinman dated December 6, 2017, with the subject line reading, "A&P/2d amended tolling stipulation—Pepsi," Andrew Caine states, *inter alia*, "I have sent an e-mail *to the Oversight Committee* proposing the approach we discussed (emphasis added)." Kleinman Decl., Exh. 12, p. 1 [Adv. Proc. Dkt. No. 34-12, p. 2]

59.     By letters dated January 4, 2018, counsel for the Defendants presented counsel for the Committee its proposals to resolve the Avoidance Actions asserted against, *inter alia*, the Defendants.  Caine Decl., ¶ 10.

60.     Pursuant to the GSA, counsel for the Committee submitted the Defendants' proposal to the Oversight Committee for review and analysis.  Caine Decl., ¶ 10; Boyle Decl ¶ 10.

61.     In an e-mail to Jeremy Kleinman dated February 28, 2018, Andrew Caine states, *inter alia*, "[t]he Oversight committee wants to try to get a deal done, and has agreed to further

2759245.1 032596-97802

extend the tolling to April 16.  I will send you for [sic] *their* amended tolling agreements for review."  Kleinman Decl., Exh. 15, p. 1 [Adversary Proceeding Dkt. No. 34-15, p.2]  *See also* Boyle Decl., ¶ 8.

62.    After consideration of the proposals, the Oversight Committee decided to reject the Defendants' offers, with the understanding that the next step would be litigation.  Boyle Decl., ¶ 11; *See also* Harris Decl., ¶ 7.

63.    The Oversight Committee also determined that judicial economy would be served by having both the Avoidance Actions and the promotional accounts receivable claims asserted against the Defendants in the same action.  Boyle Decl., ¶ 13; Harris Decl., ¶ 9.  *See also Supplemental Application of Debtors Pursuant to 11 U.S.C. § 327(e) Fed. R. Bankr. P. 2014 and Local Rule 2014-1 for Authority to Retain and Employ Gibbons P.C. as Special Conflicts Counsel to the Debtors, Nunc Pro Tunc to April 2, 2018* ("**Supplemental Gibbons Retention Application**"), ¶ 21 [Bankruptcy Case Dkt. No. 4064, p. 8]

64.    The Committee was not authorized by either the GSA or the Approval Order to litigate any of the claims of the Debtors other than Avoidance Actions and, therefore was not authorized to prosecute the promotional accounts receivable claims against the Defendants.  *See the Declaration of Joseph D. Frank in Support of Motion for Summary Judgment on Counts One through Four and partial Summary Judgment on Counts Five through Twenty-Five* filed in this Adversary Proceeding, Exh. 7 at pp. 44-45 and Exh 8 at p. 3 [Adv. Proc. Dkt. Nos. 35-7 at pp. 45-46 and 35-8 at p. 4]  *See also* Caine Decl. ¶ 13.

65.    By e-mail to Mark E. Felger and Jeremy Kleinman dated March 16, 2018, Andrew Caine advised as follows:

> I have just been told that the *Oversight Committee* has decided
> not to accept your clients' most recent offer, and will move

2759245.1 032596-97802

> forward with litigation.  At PSZJ's request, the *Oversight Committee* will engage new counsel *to represent the estates* (emphasis added).

Kleinman Decl., Exh. 16.  [Adv. Proc. Dkt. No. 34-16, p.2]

66.     The Committee was required to obtain the approval of the Oversight Committee before agreeing to further extend the statute of limitations for the Avoidance Actions against the Defendants or responding to the Defendants' settlement proposals. Caine Decl., ¶ 9; Boyle Decl., ¶ 8; Kleinman Decl., Exs. 6, p.10; 10, p. 5; 13, p. 5; 14, p. 5; and 15, p. 5. [Adv. Proc. Dkt. Nos. 34-6, p. 10; 34-10, p. 5; 34-13, p. 5; 34-14, p. 5; and 34-15, p. 5]

67.     Pachulski was unable to litigate the Avoidance Actions against the Pepsi Defendants.  Boyle Decl. ¶ 12; Harris Decl. ¶ 8.  *See also* Kleinman Decl., Ex. 16 [Adv. Proc. Dkt. 34-16].

68.     By April 2, 2018, as authorized by § 4(a) of the GSA, the Oversight Committee had approved the retention of Gibbons P.C. to prosecute the Avoidance Actions and the promotional accounts receivable claims against the Defendants.  Boyle Decl., ¶ 14; Harris Decl., ¶ 10.

69.     On April 16, 2018, with the authorization of the Oversight Committee as provided by §4(a) of the GSA, Gibbons P.C. filed the Original Complaint in this Adversary Proceeding. Boyle Decl. ¶15; Harris Cert., ¶ 11.

70.     Although the GSA expressly provides that ***the Oversight Committee*** shall select counsel to prosecute Avoidance Actions in the vent that Pachulski had a conflict, Pachulski, on behalf of the Committee, subsequently objected to the Original Complaint being filed on behalf of the Committee as well as the Debtors and agreed that the Debtors could prosecute the claims asserted in the Original Complaint.  Boyle Decl., ¶ 16; Harris Decl. ¶ 12.

2759245.1 032596-97802

71.    It was always clear that, in light of the express terms of the GSA, the Committee

was prosecuting the Pepsi Avoidance Actions on behalf of the Debtors' bankruptcy estates, and,

therefore, when dealing with the Committee, the Defendants knew or had to have known that

they were dealing with a representative of those estates.  Harris Decl. ¶ 14.

72.    The Original Complaint was subsequently amended to eliminate the Committee as

a party to this Adversary Proceeding.  Boyle Decl. ¶ 17; Harris Decl. ¶ 13.

73.    On May 8, 2019, the Debtors filed the Supplemental Gibbons Retention

Application.  [Bankruptcy Case Dkt. No. 4064]

74.    By the Supplemental Gibbons Retention Application, the Debtors expressly

sought authorization of this Court to retain Gibbons P.C. to prosecute both the Avoidance Action

and the promotional accounts receivable claims against the Defendants.  *Id.,* ¶¶ 12-24.

75.    By Order dated May 29, 2018, the Court granted the Supplemental Gibbons

Retention Application.  [Bankruptcy Case Dkt. No. 4085].

Dated: November 4, 2019                           Respectfully submitted,

                                                  THE GREAT ATLANTIC & PACIFIC TEA
                                                  COMPANY, et al., Plaintiffs


                                                  By:    /s/ David N. Crapo
                                                         One of their attorneys

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Philip J. Duffy, Esq.
Telephone: (973) 596-4821; Facsimile: (973) 639-6219
E-mail: Pduffy@gibbonslaw.com
David N. Crapo, Esq.
Telephone: (973) 596-4523; Facsimile: (973) 639-6244
E-mail: Dcrapo@gibbonslaw.com
*Special Counsel for the Plaintiff,*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

30

2759245.1 032596-97802