Jeffrey Chubak
AMINI LLC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 497-8247
jchubak@aminillc.com
- and -
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
FRANKGECKER LLP
1327 West Washington Boulevard, Suite 5G-H
Chicago, Illinois 60607
(312) 276-1400
jfrank@fgllp.com
jkleinman@fgllp.com
*Attorneys for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007-rdd<br><br>Jointly Administered |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC., *et al.*,<br><br>Defendants. | Adv. Proc. No. 18-08245-rdd<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE THROUGH FOUR AND PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH TWENTY-FIVE** |

---

[1] The Debtors are: 2008 Broadway, Inc.; The Great Atlantic & Pacific Tea Company, Inc.; A&P Live Better, LLC; A&P Real Property, LLC; APW Supermarket Corporation; APW Supermarkets, Inc.; Borman's, Inc.; Delaware County Dairies, Inc.; Food Basics, Inc.; Kwik Save Inc.; McLean Avenue Plaza Corp.; Montvale Holdings, Inc.; Montvale-Para Holdings, Inc.; Onpoint, Inc.; Pathmark Stores, Inc.; Plainbridge LLC; Shopwell, Inc.; Super Fresh Food Markets, Inc.; The Old Wine Emporium of Westport, Inc.; Tradewell Foods of Conn., Inc.; and Waldbaum, Inc. (collectively, the "**Debtors**").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.    THE DEBTORS IMPROPERLY CONFLATE SEVERAL ENTITIES TO JUSTIFY
     THEIR LATE FILING ............................................................................................ 2

     A.    Who the Entities Are .......................................................................... 3

     B.    The Rights and Duties of the Debtors, Committee, and Oversight Committee ...... 4

     C.    Conditions on the Rights of Each Entity to Retain Counsel in a Bankruptcy
         Case ..................................................................................................... 6

II.   THE ORIGINAL COMPLAINT WAS NOT FILED BY, AND IS A NULLITY
     AS TO, THE COMMITTEE ................................................................................... 7

III.  THE DEBTORS HAD AN INDEPENDENT RIGHT TO PURSUE THE
     AVOIDANCE ACTIONS BUT FAILED TO DO SO IN A TIMELY FASHION ........ 11

IV.  THE DEBTORS WERE NOT PARTIES TO, AND CANNOT ENFORCE, THE
     TOLLING AGREEMENTS TO RENDER THEIR COMPLAINT TIMELY ................ 12

V.   THE TOLLING AGREEMENTS SHOULD NOT BE CONTORTED TO INCLUDE
     THE DEBTORS ...................................................................................................... 14

VI.  THE DEBTORS' REMAINING ARGUMENTS FAIL TO OVERCOME THE
     SUMMARY JUDGMENT MOTION ........................................................................ 16

     A.    The Debtors Are Not the "Owners" of the Avoidance Action Claims Against
         Pepsi ................................................................................................... 16

     B.    The Debtors are Not Third-Party Beneficiaries to the Tolling Agreements ......... 17

     C.    The Committee is not the Debtors' Legal Representative ...................................... 18

VII. PEPSI IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE
     THROUGH TWENTY-FIVE .................................................................................... 19

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Contracting Solutions, Inc. v. Metallic Lathers and Reinforcing Ironworkers Local 4 (In re Advanced Contracting Solutions, Inc.)*,
   582 B.R. 285 (Bankr. S.D.N.Y. 2018) ........................................................................... 4

*Bell v. Bell (In re Bell)*,
   225 F.3d 203 (2nd Cir. 2000) ...................................................................................... 3

*C.K. Indus. Corp. v. C.M. Indus. Corp.*,
   623 N.Y.S.2d 410 (N.Y. App. Div. 1995) ................................................................. 10

*Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Const., Inc.)*,
   2013 WL 5682741 (S.D.N.Y. Oct. 18, 2013) ............................................................ 18

*Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A.*,
   773 F.3d 110 (2d Cir. 2015) ...................................................................................... 15

*Consol. Edison, Inc. v. Northeast Utils.*,
   426 F.3d 524 (2nd Cir. 2005) .................................................................................... 18

*CTS Corp. v. Waldberger*,
   573 U.S. 1 (2014) ...................................................................................................... 13

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, Ltd.*,
   726 F.3d 62 (2nd Cir. 2013) ...................................................................................... 19

*Hill v. Day (In re Today's Destiny, Inc.)*,
   2009 WL 1232108 (Bankr. S.D. Texas, May 1, 2009) ................................................ 8

*In re Cyberco Holdings, Inc.*,
   431 B.R. 404 (Bankr. W.D. Mich. 2010) .................................................................... 3

*In re Daig Corp.*,
   17 B.R. 41 (Bankr. D. Minn.1981) .............................................................................. 5

*In re Quality Truck & Diesel Serv., Inc.*,
   251 B.R. 682 (S.D.W.V. 2000) .................................................................................... 3

*In re Refco, Inc.*,
   336 B.R. 187 (Bankr. S.D.N.Y. 2006) ........................................................................ 5

*In re Sillerman*,
   605 B.R. 631 (Bankr. S.D.N.Y. 2019) ........................................................................ 4

*In re W.A.R. LLP*,
  2012 WL 3023431 (Bankr. D.D.C., July 24, 2012) ................................................... 9

*Indian Harbor Ins. Co. v. Zucker*,
  860 F.3d 373 (6th Cir. 2017) ........................................................................... 3

*Irving Trust Co. v. Climax Rubber Co. (In re Retail Chemists Corp.)*,
  66 F.2d 605 (2d Cir. 1933) ............................................................................. 8

*Kese Indus. v. Roslyn Torah Found.*,
  15 N.Y.3d 485 (N.Y. 2010) ........................................................................... 19

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  597 F.3d 84 (2d Cir. 2010) ........................................................................... 13

*Merck Eprova AG v. ProThera, Inc.*,
  670 F. Supp. 2d 201 (S.D.N.Y. 2009) ......................................................... 9, 10

*Meredith v. The Ionian Trader*,
  279 F.2d 471 (2d Cir. 1960) ...................................................................... 7, 8, 9

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
  342 B.R. 416 (S.D.N.Y. 2006) ......................................................................... 5

*Official Comm. of Equity Security Holders of Adelphia Communications Corp. v.
  Official Comm. of Unsecured Creditors of Adelphia Communications Corp.
  (In re Adelphia Communicatio*ns Corp.),
  544 F.3d 420 (2d Cir. 2005) ........................................................................... 5

*Official Comm. of Unsecured Creditors v. Stern (In re SPM Mfg. Corp.)*,
  984 F.2d 1305 (1st Cir. 1993) ......................................................................... 5

*Police & Fire Retirement Sys. of City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013) ........................................................................... 13

*Pryor v. Rodriguez (In re Rodriguez)*,
  283 B.R. 112 (Bankr. E.D.N.Y. 2001) ........................................................... 13

*Pueblo of Santa Rosa v. Fall*,
  273 U.S. 315 (1927) ....................................................................................... 9

*Richardson v. Michigan Bell Tel. (In re Lucre)*,
  434 B.R. 807 (Bankr. W.D. Mich. 2000) ......................................................... 4

*Smart World Technologies, LLC v. Juno Online Services, Inc.
  (In re Smart World Technologies, LLC)*,
  423 F.3d 166 (2d Cir. 2005) ........................................................................... 4

*Solus Alt. Asset Mgmt. LP v. Delphi Auto. PLC (In re DPH Holdings Corp.)*,
  553 B.R. 20 (Bankr. S.D.N.Y. 2016) ....................................................... 14

*Sutherland v. Int'l Ins. Co. of New York*,
  43 F.2d 969 (2d Cir. 1930) ..................................................................... 8

*Wilson Land Corp. v. Smith Barney, Inc.*,
  1999 WL 1939270 (E.D.N.C. May 17, 1999) ........................................ 17

*Wolf v. Weinstein,*
  372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) ............................... 4

## **Statutes**

11 U.S.C. § 101 ........................................................................................ 3

11 U.S.C. § 323 ........................................................................................ 4

11 U.S.C. § 327 ........................................................................................ 6

11 U.S.C. § 541 ........................................................................................ 3

11 U.S.C. § 546 .................................................................................. passim

11 U.S.C. § 1101 ...................................................................................... 3

11 U.S.C. § 1102 ...................................................................................... 3

11 U.S.C. § 1103 ...................................................................................... 6

11 U.S.C. § 1107 .................................................................................. 4, 16

11 U.S.C. § 1108 .................................................................................. 4, 16

## **Rules**

Fed. R. Bankr. P. 2014 ............................................................................. 6

# INTRODUCTION

The Plaintiff's Memorandum of Law in Support of its Opposition to Defendants' Motion for Summary Judgment on Counts One Through Four and Partial Summary Judgment on Counts Five Through Twenty-Five (the "Response"),[2] demonstrates that this Court should grant the Motion in its entirety and enter summary judgment in Pepsi's favor. The Debtors mistake the fundamental differences between a debtor-in possession and a creditors' committee in a chapter 11 case and conflate several separate entities that have different identities, rights, and duties. (*See, e.g.* Response, at 2-3, 8-10). Neither of the Debtors' primary arguments can alter the plain facts: (1) the Debtors filed their untimely complaint almost nine months after the § 546 statute of limitations had run as to them (*See* Bankr. Dkt. No. 1);[3] and (2) the Debtors were not parties to the Tolling Agreements executed solely by and between Pepsi and the Official Committee of Unsecured Creditors (the "Committee"). (*See* Declaration of Joseph D. Frank [Dkt No. 35] (the "Frank Decl." at Ex. 10-15). Contrary to the Debtors' statements that the original complaint was "timely filed on behalf of the Debtors and the Committee" (*see* Response, at 2), that filing is a nullity because, although it was filed in the Committee's name, it was filed without the Committee's authority, by an attorney who did not represent the Committee. *See* Bankr. Dkt. No. 1; Declaration of Jeremy Kleinman [Dkt. No. 34] ("Kleinman Decl."), Ex. 18. The Debtors also have been unable to dispute that the Tolling Agreements are anything other than plain-language, unambiguous contracts between only two parties and signatories, Pepsi and the Committee.

---

[2] Capitalized, but undefined, terms in this Reply shall have the meanings ascribed to them in Pepsi's Memorandum of Law in Support of Motion for Summary Judgment [Dkt. No. 36] (the "Opening Brief").

[3] References to "Dkt. No. ___" shall refer to items docketed in this proceeding. References to the docket in the Debtors' bankruptcy case (Case No. 15-23007-rdd) will be made to "Bankr. Dkt. No. __".

The Debtors' third argument, that Pepsi's request for partial summary judgment on Counts Five through Twenty-Five should be denied as moot, is not really an argument, but rather a "waiver" by the Debtors of the claims on which Pepsi seeks summary judgment. To maintain a clear record, and given that Pepsi has fully briefed a valid motion for summary judgment on the statute of limitations governing Counts Five through Twenty-Five, the only satisfactory and easily enforceable resolution is for the Court to grant summary judgment on those counts as to any claim based on a contract arising before April 16, 2014.

## ARGUMENT

### I. THE DEBTORS IMPROPERLY CONFLATE SEVERAL ENTITIES TO JUSTIFY THEIR LATE FILING

In their Response, the Debtors either misunderstand, or strategically disregard, the distinctions between the different entities involved in these bankruptcy cases. They conflate the Committee and the Debtors (Response, at 8, 11). They assert that the Oversight Committee can act for and bind its individual member-constituents (Response, at 11), and that the Debtors "own" the bankruptcy estates and that such "ownership" makes them the "real parties in interest" to contracts to which they are not parties and that they did not execute (Response, at 20-22).

In addressing Pepsi's argument for summary judgment, the Debtors' Response raises only two real questions: (1) Whether the original complaint, purportedly filed by the Debtors and the Committee, was properly filed by the Committee within the tolled periods set forth in the Tolling Agreements between Pepsi and the Committee; and (2) whether the Tolling Agreements tolled the § 546 statute of limitations *for the Debtors*, who are neither signatories nor named parties. Because each entity's identity, rights, and duties are outcome-determinative for these questions, this section addresses those discrete identities, rights, and duties.

### A.     Who the Entities Are

In a chapter 11 case, "debtor" means the entity "concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). "Debtor in possession" means the debtor, unless a trustee has been appointed. 11 U.S.C. § 1101(1). In this case, the Great Atlantic and Pacific Tea Company, Inc. and its affiliated debtors are the debtors and debtors in possession.

The Committee is an unsecured creditors' committee. Such committees are appointed by the U.S. trustee and consist of creditors holding unsecured claims. *See* 11 U.S.C. § 1102(a). Here, the Committee includes some of the Debtors' largest prepetition unsecured creditors. *See* Bankr. Dkt. Nos. 1, 164.

The commencement of a case creates an "estate," which, with exceptions not applicable here, is "comprised of all legal and equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1). A bankruptcy estate is a separate legal entity, with its own assets, independent of the debtor. *See, e.g.*, *Indian Harbor Ins. Co. v. Zucker*, 860 F.3d 373, 378 (6th Cir. 2017) (explaining that bankruptcy filing created estate as new entity distinct from the debtor); *In re Cyberco Holdings, Inc.*, 431 B.R. 404, 428 (Bankr. W.D. Mich. 2010) ("The Bankruptcy Code is unequivocal that a separate, legally recognizable entity—i.e., the bankruptcy estate—is created whenever a bankruptcy case is filed."). Upon filing of the petition, "property of the estate is distinct from property of the debtor." *Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2nd Cir. 2000). Contrary to the Debtors' assertions (*see* Response, at 22, 25), a debtor does not own a bankruptcy estate. *See In re Quality Truck & Diesel Serv., Inc.*, 251 B.R. 682, 686 (S.D.W.V. 2000) (explaining that the estate holds its own assets until a plan of reorganization is confirmed, revesting the assets in the reorganized debtor). Rather, "[a] bankruptcy estate is a legal entity that exists separate and apart from the petitioning debtor. As for the estate's trustee or debtor-in-

possession, they are simply the representatives through which this fictional entity is able to act." *Richardson v. Michigan Bell Tel. (In re Lucre)*, 434 B.R. 807, 832 n. 57 (Bankr. W.D. Mich. 2000).

The Oversight Committee, on whose authority the Debtors rely to justify their attorney's filing of a complaint in the name of the Committee (*see* Response, at 11), was not formed pursuant to statute. The Oversight Committee, comprised of one member representing each of the Debtors, the Committee, and certain of the Debtors' secured lenders, was formed by agreement among the Debtors, the Committee, and certain secured lenders, to perform the duties set forth in section 4(a) of the GSA. (*See* GSA, §§ 1, 4(a)). The agreement was approved by the Bankruptcy Court.

### B. The Rights and Duties of the Debtors, Committee, and Oversight Committee

Just as the Debtors, the Committee and the Oversight Committee are separate entities, each has separate rights and duties. A debtor in possession may operate the debtor's business. 11 U.S.C. § 1108. A debtor in possession may sue or be sued. *See* 11 U.S.C. §§ 323, 1107(a). A debtor in possession owes fiduciary duties to the bankruptcy estate and all its creditors. *Smart World Technologies, LLC v. Juno Online Services, Inc. (In re Smart World Technologies, LLC)*, 423 F.3d 166, 175 (2d Cir. 2005) (citing *Wolf v. Weinstein*, 372 U.S. 633, 649–50, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963); *In re Sillerman*, 605 B.R. 631, 640 (Bankr. S.D.N.Y. 2019). "As fiduciaries, the debtor[s]-in-possession . . . are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." *Advanced Contracting Solutions, Inc. v. Metallic Lathers and Reinforcing Ironworkers Local 4 (In re Advanced Contracting Solutions, Inc.)*, 582 B.R. 285, 304 (Bankr. S.D.N.Y. 2018) (citations and quotations omitted). Here, the Debtors owe these duties to their estates and to ***all*** creditors, including unsecured creditors, such as those represented by the Committee, and secured creditors, such as the noteholders who have a seat on the Oversight Committee.

On the other hand, a creditors' committee may not operate the debtor's business. *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 423 (S.D.N.Y. 2006). Unlike a debtor in possession, a committee has no automatic, statutory right to sue on behalf of a bankruptcy estate. *Official Comm. of Equity Security Holders of Adelphia Communications Corp. v. Official Comm. of Unsecured Creditors of Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 544 F.3d 420, 423 (2d Cir. 2005). Nor is a committee a fiduciary to the debtors or the bankruptcy estate. *G-I Holding*, 342 B.R. at 423 (S.D.N.Y. 2006). A committee is not required to consider the best interests of the estate but must pursue "whatever lawful course best serves the interests of the class of creditors represented." *Official Comm. of Unsecured Creditors v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1315-16 (1st Cir. 1993). A creditors' committee owes fiduciary duties only to its constituents, a group of similarly-situated creditors. *G-I Holding*, 342 B.R. at 423; *see also SPM Mfg.*, 984 F.2d at 1315. A committee's duties include monitoring and supervising the debtor in possession as a partisan in support of its constituents' interests. *In re Refco, Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006). Therefore, a committee's duties to its constituents may cause a committee to be adversarial to a debtor or its estate. *Id.* (citing *In re Daig Corp.,* 17 B.R. 41, 43 (Bankr. D. Minn.1981); *SPM Mfg.*, 984 F.2d. at 1316 (same).

The contractually created Oversight Committee has the limited duties of overseeing and directing the "prosecution, settlement, abandonment or other decisions regarding the Avoidance Actions." (GSA, § 4(a)). The GSA directs that the Avoidance Actions "shall" be pursued by the Committee and its counsel, Pachulski, and further provides that the Oversight Committee will select alternative counsel to Pachulski for the prosecution of Avoidance Actions if Pachulski has a conflict of interest. (*Id.*).

**C.     Conditions on the Rights of Each Entity to Retain Counsel in a Bankruptcy Case**

Subject to court approval, a debtor may retain attorneys. 11 U.S.C. § 327(a). The Debtors have filed three applications to employ Gibbons, P.C., first as an "ordinary course" professional, then as "special counsel," and finally as "special conflicts counsel" to pursue the "Debtors' litigation of their Avoidance Action and contractual claims against the PepsiCo entities." *See* Supplemental Application of Debtors Pursuant to 11 U.S.C. § 327(e), Fed. R. Bankr. P. 2014 and Local Rule 2014-1 for Authority to Retain and Employ Gibbons P.C. as Special Conflicts Counsel to the Debtors *Nunc Pro Tunc* to April 2, 2018 [Bankr. Dkt. No. 4064], ¶ 22).  In connection with their retention of Gibbons, the Debtors further stated:

> the Oversight Committee has determined that it is in the best interest of the Debtors, their creditors and their bankruptcy estates: (i) for the ***Debtors*** to bring an action asserting both Avoidance Action claims (which the Debtors are not prohibited from pursuing) and contractual claims (which the Committee is not authorized to bring) against the PepsiCo Entities; and (ii) for Gibbons to represent the ***Debtors*** in that action.

(*Id.*, ¶ 21 (emphases added)).

Subject to court approval, a committee may also retain attorneys. 11 U.S.C. § 1103(a). However, a committee's selection of attorneys is subject to additional conditions not imposed on a debtor in possession—it must be made at a scheduled committee meeting at which a majority of committee members are present. *Id.* An attorney retained by a committee may not "while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b).

The Oversight Committee was not created by statute and has no statutory right to retain counsel. The Oversight Committee is the product of a Court-approved agreement among the parties to the GSA. The GSA makes no provision for the Oversight Committee to ***retain*** its own

attorneys; it merely provides that the Oversight Committee "shall select alternative counsel" if the Committee's counsel of record, Pachulski, has a conflict of interest. (GSA, § 4(a)).

These important distinctions demonstrate that the parties, their rights, and their retained counsel are not interchangeable at the convenience of the Debtors.

## II. THE ORIGINAL COMPLAINT WAS NOT FILED BY, AND IS A NULLITY AS TO, THE COMMITTEE

In their Response, the Debtors argue that "the Debtors *and the Committee* filed their Original Complaint in this Adversary Proceeding on April 16, 2018 within the § 546 Statute of Limitations as that statute had been extended by the Tolling Agreements." (Response, at 14) (original emphasis). In fact, the Committee never filed any complaint against Pepsi. Rather, the Debtors' attorneys filed the Original Complaint in the Committee's name, apparently without the Committee's knowledge (*See* Declaration of Andrew W. Caine, Esq. in Support of Debtors' Opposition to Defendants' Motion for Summary Judgment [Dkt No. 42] (the "Caine Decl."), ¶¶ 15-16) and certainly without its consent (*see id.*, ¶ 16 (stating that "Pachulski noted to the Oversight Committee and Gibbons that the Gibbons firm had previously been retained in the chapter 11 cases as special counsel to the *Debtors*, and Gibbons thereafter *corrected* the complaint accordingly") (emphases added)). To that end, the Original Complaint was signed by David Crapo of the Gibbons firm, retained special counsel to the Debtors, as "Attorneys for Plaintiffs The Official Committee of Unsecured Creditors for the Bankruptcy Estates of The Great Atlantic & Pacific Tea Company, Inc., et al., and The Great Atlantic & Pacific Tea Company, Inc.," (*see* Frank Decl., Ex. 1 p. 69), even though Mr. Crapo never has represented the Committee in these bankruptcy cases. As a result, putting aside the fact that filing the Original Complaint on behalf of the Committee constituted an apparent willful or reckless misrepresentation to this Court, the Original Complaint is a nullity having no legal effect as to the Committee. *See Meredith v. The*

*Ionian Trader*, 279 F.2d 471, 473-74 (2d Cir. 1960) ("A suit initiated without authority from the party named as plaintiff is a nullity and any judgment obtained in such a suit is void."); *see also Irving Trust Co. v. Climax Rubber Co. (In re Retail Chemists Corp.)*, 66 F.2d 605, 608 (2d Cir. 1933) (collecting cases and stating that "[t]he Supreme Court has consistently treated a judgment based upon an unauthorized appearance for a [party] by an attorney as a nullity"); *Sutherland v. Int'l Ins. Co. of New York*, 43 F.2d 969, 972 (2d Cir. 1930) (modifying a lower court's dismissal of a complaint "on the ground that the suit was brought by solicitors without authority"); *Hill v. Day (In re Today's Destiny, Inc.)*, 2009 WL 1232108 at *5 (Bankr. S.D. Texas, May 1, 2009) (questioning the authority of an attorney who purported to represent an entire group of intervenors).

Indeed, the Declaration from the Committee's ***actual*** attorney, Andrew Caine, demonstrates that the Committee was unaware that Mr. Crapo intended to file the original complaint on its behalf and immediately objected upon learning that Mr. Crapo had purported to act as its attorney. (*See* Caine Decl. ¶¶ 14-16). Mr. Caine's April 17, 2018 email explaining that "Gibbons mistakenly filed the complaint on behalf of the Committee. We have asked that they change the party to the Debtors," supports the same conclusion. *See* Kleinman Decl., Ex. 18. The Debtors themselves repeatedly concede that the Committee was not aware that Mr. Crapo intended to file a complaint on its behalf and that Mr. Crapo had no authority from the Committee to do so. *See* Response, at 2 (stating that "the ***Oversight Committee*** had authorized Gibbons P.C. to prosecute the Pepsi Avoidance Actions and certain promotional accounts receivable claims against the Defendants on behalf of both the Debtors and the Committee" (emphasis added) and that the Committee's actual attorneys "subsequently objected to the Original Complaint being filed on behalf of the Committee as well as the Debtors but agreed that the Debtors could prosecute the

claims asserted in the Original Complaint"); *see also id.*, at 25 (claiming that "[o]nce Pachulski was conflicted and then objected to the Committee being named a plaintiff in this Adversary Proceeding, it was absolutely necessary for the Debtors to prosecute the Pepsi Avoidance Actions in order to effectuate the very purpose of the Tolling Agreements—which was the preservation of the Pepsi Avoidance Actions pending resolution by compromise or litigation"). The Debtors further admit that "the Debtors along with the Oversight Committee endeavored to promptly file the Original Complaint on April 16, 2018." (*Id.*, at 30).

A suit brought by counsel without authority is void. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927). The question of an attorney's authority to represent a purported client may be raised at any point in the proceedings. *Meredith*, 279 F.2d at 475 (*Pueblo of Santa Rosa*, 273 at 319 (1927); *see also In re W.A.R. LLP*, 2012 WL 3023431 at *1 (Bankr. D.D.C., July 24, 2012) (same). A court always has the power to require an attorney to show his authority to appear. *Pueblo of Santa Rosa*, 273 U.S. at 319.

To show such authority, Gibbons, the ***Debtors'*** attorney, would have to establish that it had formed an attorney-client relationship with the ***Committee***. "The formation of an attorney-client relationship hinges upon the client's [reasonable] belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 210 (S.D.N.Y. 2009).[4] In other words, Gibbons would have

---

[4] Courts in the Southern District of New York generally rely on a six-factor test to determine whether an attorney-client relationship exists:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of [the] litigation in order to protect another (or a) client's interest; 6) whether the

to show that the **Committee** had asked Gibbons to represent it.[5]  Here, Gibbons could not have any reasonable belief that it represents the **Committee**—Gibbons represents the **Debtors**. **Pachulski** represents the Committee. Mr. Caine's declaration and email message make it evident that the Committee never entered into a retainer agreement with Gibbons, was surprised to discover that Gibbons had filed a complaint purporting to represent the Committee, and that Gibbons' doing so was a "mistake." *See* Caine Decl, ¶¶ 15-16; Kleinman Decl, Ex. 18.

Further, the **Debtors** have filed ***three*** separate applications to employ Gibbons, each application accompanied by declarations from Gibbons attorneys. Gibbons attorneys must therefore understand the statutory requirements prerequisite to retention. Nevertheless, the Committee has never filed an application to employ Gibbons, so if any retainer agreement exists between Gibbons and the Committee, the Court has never approved it. As of the date of this Reply, Gibbons has filed twenty-six Monthly Fee Statements seeking compensation as counsel for ***the Debtors***. (*See* Bankr. Dkt. No. 4479).   On the other hand, Gibbons has never requested compensation for representing the **Committee** and would be ineligible to receive such compensation because it has never been retained by the Committee and approved by the Court. *See In re Jones*, 2013 WL1558088 at *2 (Bankr. M.D. Ala., April 12, 2013) (holding that if a professional is not employed pursuant to statute, "he does not get paid"). The *Jones* court further

purported client believes that the attorney was representing him and whether this belief is reasonable.

*Merck Eprova*, 670 F. Supp. 2d at 210. (citation omitted).

[5] Under New York law, an attorney-client relationship arises "when a contract is formed between an attorney and client for the performance of legal services or the rendition of legal advice." *C.K. Indus. Corp. v. C.M. Indus. Corp.*, 623 N.Y.S.2d 410, 412 (N.Y. App. Div. 1995). A court must look to the words and actions of the alleged attorney and client to ascertain whether an attorney-client relationship was actually formed. *Id.* at 412-13 (finding that no attorney-client relationship was formed where, among other things, the purported client had not consulted the alleged attorney and had, in fact, consulted his own attorney).

stated that "the Bar Association may take a dim view of a lawyer who purports to act on behalf of another who is not a client." *Id.* at *4, n. 6.

Nor can the ***Oversight*** Committee's selection of Gibbons to prosecute this case create an attorney-client relationship with the ***Creditors'*** Committee. The Debtors' request that the Court allow the Oversight Committee to force counsel on the Committee (*see* Response, at 30-31) demonstrates that no such relationship was ever created. The Debtors ultimately concede that "[i]t was only because of the objection of Pachulski . . . that the Committee was removed as a Plaintiff," (Response, at 31), reinforcing that there was never any attorney-client relationship between Gibbons and the Committee and that Gibbons acted without authority by purporting to file the Original Complaint on the Committee's behalf.

## III. THE DEBTORS HAD AN INDEPENDENT RIGHT TO PURSUE THE AVOIDANCE ACTIONS BUT FAILED TO DO SO IN A TIMELY FASHION

In their Response, the Debtors argue that they possessed an independent right to pursue the Avoidance Actions against Pepsi. (*See* Response, at 28-29). Indeed, in the Second Amended Complaint, the Debtors allege that "[n]either the Settlement Order nor the GSA affords the Committee sole authority or standing to litigate Avoidance Actions on behalf of the Debtors' estates, and neither the Settlement Order nor the GSA impacts or limits the Debtors' authority and standing to prosecute contractual claims on behalf of their bankruptcy estates," and "[b]ecause this adversary proceeding includes both Avoidance Action and contractual claims against the Defendant, the Debtors have elected to prosecute this Adversary Proceeding themselves." (SAC, ¶¶ 7-8). Nevertheless, even as the deadline imposed by section 546 of the Bankruptcy Code approached, the Debtors neither: (i) filed a complaint against Pepsi; (ii) requested a tolling agreement from Pepsi; nor (iii) sought to join, or otherwise be included in the Tolling Agreement that Pepsi was negotiating with the Committee.

Although, as discussed below, the Debtors now seek to claim the benefits of the Tolling Agreements to salvage their untimely complaint, it is important to note that the Tolling Agreements included a specific covenant not to sue that restricted *only* the ***Committee's*** "right to commence, file or initiate any Cause(s) of Action against Creditors . . . for the period beginning on the Commencement Date through [an agreed-upon future date]." *See e.g.,* Frank Decl., Ex. 10 at § 1 (emphasis supplied). Had the Debtors exercised their independent right to pursue the Avoidance Actions against Pepsi on or before July 19, 2017, Pepsi would have had no basis to enforce against the ***Debtors***, the ***Committee's*** covenant not to sue Pepsi.

Having failed to timely file the Original Complaint against Pepsi and being unable to include the Committee as a plaintiff and sign as its counsel, without its knowledge and consent, the statute of limitations under section 546 of the Bankruptcy Code, untolled as to the Debtors, bars the Debtors from belatedly bringing the Avoidance Actions against Pepsi, warranting summary judgment on Counts One Through Four.

## IV. THE DEBTORS WERE NOT PARTIES TO, AND CANNOT ENFORCE, THE TOLLING AGREEMENTS TO RENDER THEIR COMPLAINT TIMELY

The Debtors do not argue that they were actual parties to the Tolling Agreements, but, once again conflating themselves with the estates, argue that "as the holders of the very—and only— claims preserved by those agreements, [they] are the real parties in interest with respect to the Tolling Agreements." (Response, at 2-3). The Debtors' argument boils down to a claim that they should be considered parties to agreements to which they are neither signatories nor otherwise named as parties because the bankruptcy estates would benefit from any recovery. This argument blurs not only the distinctions among the entities in these bankruptcy cases, but the differences between the existence of a cause of action and a given entity's right to sue on it. The Debtors, by conflating themselves, their estates, and the Committee, equate the tolling of an entity's right to

bring a cause of action with the existence of that cause of action, but they offer no legal basis for this argument.[6]

The Debtors, the Committee, and the Oversight Committee were all aware that the estates might benefit by avoiding transfers to Pepsi from June 9, 2017, when the Committee first suggested a tolling period, through the April 16, 2018 expiration of the Fifth Tolling Agreement. Nevertheless, the Tolling Agreements tolled only the statutes of limitations applicable to "any Cause(s) of Action brought by the ***Committee*** against [Pepsi]." (*See, e.g.,* Frank Decl., Ex. 10, § 2 (emphasis added)). This limitation is knowing, unambiguous, and unequivocal.

The Debtors also mistake the effect of a statute of limitations and the purpose of a tolling agreement. Section 546 is a true statute of limitations. *See, e.g. Pryor v. Rodriguez (In re Rodriguez)*, 283 B.R. 112, 120 (Bankr. E.D.N.Y. 2001). Statutes of limitations may be tolled, either equitably or by agreement. *Police & Fire Retirement Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013). Although both statutes of repose and statutes of limitations impose time limits on potential plaintiffs, only a statute of repose extinguishes a cause of action and the defendant's liability. *See, e.g.*, *CTS Corp. v. Waldberger*, 573 U.S. 1, 7-9 (2014) (discussing the differences between statutes of repose and statutes of limitations). In contrast, a statute of limitations does not extinguish a cause of action but provides an affirmative defense if a plaintiff does not bring the cause of action within a specified time. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n. 4 (2d Cir. 2010). While the statute of limitations was extended by agreement as to the Committee, the Debtors and Pepsi had no such agreement. Although the Debtors now protest that "Counsel for the Defendants never advised counsel for the Committee that it would enter into the Tolling Agreements only if the Committee were the counter-

---

[6] Pepsi's Opening Brief cites ample contrary precedent. (*See* Brief at 7-13).

party," (*See* Response, at 12-13), there was no need or opportunity for Pepsi to do so. The Committee *was* the counter-party, and no other was ever suggested (*See* Kleinman Decl., ¶¶ 4-9, Ex. 2-6. In short, Debtors allowed their rights to bring Avoidance Actions against Pepsi to expire. (*See* Response, at 9).

## V.    THE TOLLING AGREEMENTS SHOULD NOT BE CONTORTED TO INCLUDE THE DEBTORS

The Debtors simply were not parties to the Tolling Agreements and under these circumstances, where they were well informed and could easily have requested inclusion, they should not be allowed to torture the language of the Tolling Agreements out of its plain meaning. Despite their remarkable assertions "[t]hat the Debtors are not identified as parties to the Tolling Agreement is of no moment," (*see* Response, at 25), and that they nevertheless are the "obvious and intended beneficiaries of the Tolling Agreements," (*id.*, at 3), the Debtors should be held to same legal standards as any other entity appearing before this Court. When an agreement is unambiguous on its face it should be enforced according to the plain meaning of its terms. *Solus Alt. Asset Mgmt. LP v. Delphi Auto. PLC (In re DPH Holdings Corp.)*, 553 B.R. 20, 27 (Bankr. S.D.N.Y. 2016).

> The language of a contract is not made ambiguous simply because the parties urge different interpretations in the litigation, nor does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning, or where "ambiguity" emanates not from the language used in the contract but, rather, from a party's subjective perception of its terms. If the agreement on its face is reasonably susceptible to only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity. This is especially apt if the contract "was negotiated between sophisticated, counseled business people negotiating at arm's length." In such circumstances, courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.

*Id.* (citations and quotations omitted). "When the terms of a written contact are clear and unambiguous, the intent of the parties must be found within the four corners of the contract." *Id.* (citing *Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2015).

The Debtors "acknowledge that the parol evidence rule precludes the use of extrinsic evidence to vary the terms of an agreement." (Response, at 15). That should end the discussion. Nevertheless, the Debtors still ask the Court to consider the "evidence of [the Tolling Agreements'] purpose or the circumstances surrounding [their] execution" to ***interpret*** them. (*Id.* (emphasis added)). While the Debtors attempt to use this Court's decision in *DPH Holdings* to write themselves retroactively into the Tolling Agreements, that decision, addressing efforts to interpret the defined term "Distribution" in a confirmed chapter 11 plan (*see DPH Holdings Corp.*, 553 B.R. at 25-36), does not stand for the proposition that the Court should substitute parties to an unambiguous contract because the Debtors waited too long to file a lawsuit.

No further interpretation is necessary or even permissible. The four corners of the Tolling Agreements contain clear and unambiguous terms. The Tolling Agreements on their faces are reasonably susceptible to only one meaning—that Pepsi and the Committee agreed to toll the statute of limitations on actions brought by the ***Committee***, while also agreeing that the ***Committee*** would not sue for a fixed period. The Tolling Agreements expressly toll "Cause(s) of Action brought by the Committee against [Pepsi]." (*See e.g.* Frank Decl., Ex. 10). The Debtors admit that "they are not identified as parties to the Tolling Agreement" (Response, at 25), and that the Tolling Agreements "were executed by [Pepsi] and the Committee appointed in the above-captioned jointly administered Chapter 11 bankruptcy cases." (Response, at 2). They acknowledge repeatedly that they did not execute the Tolling Agreements. (*See id.*, at 2, 8). They admit that

"each of the Tolling Agreements expressly addressed statutes of limitations applicable to 'any cause of action brought by the *Committee* against Pepsi.'" (*Id.*, at 9) (emphasis in original). By themselves and by the Debtors' own admissions, the Tolling Agreements are facially unambiguous and by their plain meaning toll the § 546 statute of limitations only on actions brought by the Committee.

## VI. THE DEBTORS' REMAINING ARGUMENTS FAIL TO OVERCOME THE SUMMARY JUDGMENT MOTION

The Tolling Agreements should be read as written and no interpretation should be used to make a new contract immunizing Debtors' untimely causes of action. Nevertheless, the Debtors argue that: (1) the **Debtors** own the **estate's** claims and should thus be made party to the Tolling Agreements through construction and interpretation of those agreements (*see* Response, at 18-22); (2) the Debtors were third-party beneficiaries to the Tolling Agreements (*see* Response, at 23-27); and (3) the Committee was acting as the Debtors' legal representative (*see* Response, at 29). Each argument illustrates the Debtors' fundamental misunderstanding of the identities, rights, and duties of the individual entities involved in this case, as discussed above.

### A. The Debtors Are Not the "Owners" of the Avoidance Action Claims Against Pepsi

On the issue of ownership, the Debtors argue that Pepsi recognized this ownership of the Avoidance Actions against Pepsi because Pepsi acknowledged in the Tolling Agreements that the Debtors "have continued in the possession of their property and have continued to operate and manage its businesses as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code." (*See* Response, at 7, 16, 21). While Pepsi recognizes that this formalistic recital (which also identifies the Petition Date and defines the term "Bankruptcy Code") is contained in the Tolling Agreements, this language concerning "possession" does not conflict with

the estates' **ownership** of the Avoidance Actions, and is followed by a statement as to the *Committee's* authority to prosecute the Avoidance Actions. *See* e.g., Frank Decl., Ex. 10, at p. 2.

The Debtors also misread the Tolling Agreements. The Debtors state that they are "asserting the very Pepsi Avoidance Actions that the Tolling Agreements were intended to preserve." (Response, at 18). However, the Tolling Agreements are not agreements to preserve causes of action—a statute of limitations does not extinguish a cause of action but merely allows a defendant to assert the passage of time as an affirmative defense. The Tolling Agreements are exactly what they say they are—agreements to toll "all statutes of limitation that have not otherwise already run including but not limited to those set forth in Section 546 of the Bankruptcy Code, applicable to any Cause(s) of Action that the Committee may bring against [Pepsi]." (*See* e.g., Frank Decl., Ex. 10, at § 2). In other words, it was not the causes of action that the Tolling Agreement preserved—it was the Committee's right to bring them free from a time-based affirmative defense and that agreement came with the **Committee's** agreement not to sue Pepsi during the tolling period. The Tolling Agreements simply do not grant the same rights or impose the same obligations on the Debtors.

### B. The Debtors are Not Third-Party Beneficiaries to the Tolling Agreements

Nor are the Debtors third-party beneficiaries to the Tolling Agreements. The Debtors cite *Wilson Land Corp. v. Smith Barney, Inc.*, 1999 WL 1939270 *8 (E.D.N.C. May 17, 1999) to support their argument that they should be considered as such, but all that the *Wilson* court held, in considering motions to dismiss and applying North Carolina law, was that the contracts at issue were ambiguous and parol evidence was required. *Id.*

Unlike the *Wilson* agreements, the Tolling Agreements are not ambiguous, as the Debtors concede. Rather, the Debtors ask the Court to ignore the plain language and construe the Tolling Agreements to include the Debtors as unnamed third-party beneficiaries. (*See* Response, at 23

("It is beyond dispute that none of the Tolling Agreements expressly denies the Debtors the status of third party beneficiaries")). However, "[t]o create a third party right to enforce a contract, the language of the contract must *clearly* evidence an intent to permit enforcement by the third party." *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 528 (2nd Cir. 2005) (emphasis in original). That clear intention must be shown on the face of the agreement. *Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Const., Inc.)*, 2013 WL 5682741 at *10 (S.D.N.Y. Oct. 18, 2013). The Debtors admit that the Tolling Agreements do "not expressly provide for enforcement by the Debtors." (*See* Response, at 28). The Debtors once again rely on their alleged "ownership" of the causes of action to write themselves into contracts that include only the Committee and Pepsi. Indeed the Debtors recognize the express merger and inurement clauses in the Tolling Agreement (*see* Response, at 21), neither of which support their position that they are the true parties in interest or otherwise entitled to enforce the Tolling Agreements. However, the Debtors argue that the Tolling Agreements do not contain an explicit paragraph disclaiming third party beneficiaries and that the absence of such a provision entitles them to enforce the Tolling Agreements. That is simply not the law, as set forth in Pepsi's Opening Brief (*See* Opening Brief at 13-17). In addition, the Debtors' arguments that Pepsi and the Committee intended the Debtors to be beneficiaries when they drafted and executed the Tolling Agreements is further undercut by the Debtors' arguments that Pepsi was aware of the Debtors' relationship to the Avoidance Actions (*see, e.g.*, Response, at 24). If, despite that knowledge, Pepsi and the Committee chose not to include the Debtors in the plain language of the Tolling Agreements, they did so intentionally.

## C. The Committee is not the Debtors' Legal Representative

The Debtors' third argument, that the Committee acted as the ***Debtors'*** legal representative (*see* Response, at 29), completely misses the mark. The Committee was authorized by this Court to bring the ***estates'*** avoidance actions, and as repeatedly asserted by the Debtors, had concurrent

standing with the Debtors to bring those actions. A "legal representative" acts on behalf of a party that cannot act for itself. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, Ltd.*, 726 F.3d 62, 80-82 (2nd Cir. 2013). As also repeatedly asserted by the Debtors, the estates did not assign the Avoidance Actions to the Committee and had the separate right to pursue them. (*See* Section 3, above). A legal representative is "a principal who has been assigned the rights and obligations of the party." *Kese Indus. v. Roslyn Torah Found.*, 15 N.Y.3d 485, 490 (N.Y. 2010). Indeed, as the record is clear, to get authorization to enter into the Tolling Agreements, the Committee looked to the *Oversight Committee*, not the Debtors. (*See* Response, at 9). Accordingly, there is no basis on which to conclude that the Committee was the Debtors' legal representative.

## VII. PEPSI IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNTS FIVE THROUGH TWENTY-FIVE

Finally, the Debtors' argument opposing partial summary judgment on Counts 5 through 25 provides every reason to grant Pepsi's requested relief. In their complaint, the Debtors asserted multiple claims against each Defendant for promotions at the Debtors' stores, on the same basic factual allegations:

- Between December 24, 2010 and [a date between November 25, 2015 and January 28, 2016] the named Defendant initiated numerous promotion transactions with the Debtors and conducted promotions at their stores;

- The Defendant paid for certain of those promotions;

- The Defendant has not fully paid the Debtors for all of the promotions conducted during that time period.

*See, e.g.,* Second Amended Adversary Complaint at ¶¶ 84-85, 88-91, 104, 108, 110, 111.

Consequently, in an effort to narrow issues for trial and obtain some certainty as to the specific relief sought by the Debtors, Pepsi moved for summary judgment on any contract claims outside of the two statutes of limitations that might apply. The Debtors take the remarkable position that Pepsi should have known from Frito's proof of claim, rather than from the Debtors'

complaint, that the Debtors were only seeking relief with respect to one contract claim outside of the statute of limitations. (Response, at 30).

The Debtors propose to address their untimely claim by waiving "any accounts receivable claims on which the Debtors seek recovery in Counts Five through Twenty-Five of the Second Amended Complaint that arose before April 16, 2014." (Response, at 30). While the Debtors' proposed waiver demonstrates the merit of Pepsi's motion, it provides none of the certainty that Pepsi seeks via summary judgment. Given that Pepsi has fully briefed a manifestly valid motion for summary judgment on the statute of limitations governing Counts Five through Twenty-Five and the Debtors have abandoned the time-barred claims, the only satisfactory and easily enforceable resolution is for the Court to grant summary judgment on those counts as to any claim based on a contract arising before April 16, 2014.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Pepsi's Memorandum of Law in Support of Summary Judgment, the Court should grant summary judgment in Pepsi's favor on Counts One through Four of the Second Amended Complaint and partial summary judgment on Counts Five through Twenty-Five.

Dated: November 26, 2019                        Respectfully submitted,

                                        /s/ Jeffrey Chubak
                                        Jeffrey Chubak
                                        AMINI LLC
                                        140 East 45th Street, 25th Floor
                                        New York, New York 10017
                                        (212) 497-8247
                                        jchubak@aminillc.com
                                        - and -
                                        Joseph D. Frank (admitted pro hac vice)
                                        Jeremy C. Kleinman (admitted pro hac vice)
                                        FRANKGECKER LLP
                                        1327 West Washington Boulevard, Ste. 5G-H
                                        Chicago, Illinois 60607
                                        (312) 276-1400
                                        jfrank@fgllp.com
                                        jkleinman@fgllp.com
                                        *Attorneys for the Defendants*